Michael A. McShane (CA #127944)
mmcshane@audetlaw.com
S. Clinton Woods (CA #246054)
cwoods@audetlaw.com
Ling Y. Kuang (CA #296873)
lkuang@audetlaw.com
AUDET & PARTNERS, LLP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102-3275
Telephone:    (415) 568-2555
Facsimile:    (415) 568-2556

*Attorneys for Plaintiff Jeff Young, on behalf of
himself and all others similarly situated*

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JEFF YOUNG, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>      vs.<br><br>Cree, Inc.,<br><br>                    Defendant. | Case No:        4:17-cv-06252-YGR<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT CREE, INC.'S MOTION TO DISMISS**<br><br>Date:        April 3, 2018<br>Time:        2:00 p.m.<br>Place:       Courtroom 1, 4th Floor<br>Judge:       Hon. Yvonne Gonzalez Rogers<br><br>Complaint Filed:      October 27, 2017<br>Trial Date:           N/A |

## <u>TABLE OF CONTENTS</u>

**I.   INTRODUCTION** ...................................................................................... ii

**II.  RELEVANT FACTUAL HISTORY** ......................................................... 1

**III. ARGUMENT** .............................................................................................. 2

    **A.  Standard of Review** ............................................................................... 2

    **B.  The Energy Policy and Conservation Act (EPCA) does not preempt Young's claims.** ...................................................................................... 2

        **1.  Preemption is a disfavored affirmative defense, and the Court's analysis of Cree's motion must begin with a "presumption against the preemption of state police power regulations** ...................................................... 2

        **2.  Young's claims do not rely on a federally-mandated label and are grounded on laws of general application that create a duty not to deceive; as such, they are outside the preemptive scope of the EPCA** ................................. 3

        **3.  The authority Cree cites is distinguishable and inapposite** ................... 10

    **C.  Not All of Young's Claims Are Governed by Fed. R. Civ. P. 9(b)** ............. 11

    **D.  Plaintiff Meets and Exceeds the Rule 9 Pleading Standard** .......................... 12

    **E.  Young's Labeling Claims Are Not Disguised Warranty Claims** ................... 13

    **F.  Unjust Enrichment is Properly Alleged** .................................................... 15

    **G.  Negligent Failure to Warn is a Viable Claim in California, and is Not Barred by the Economic Loss Rule** .................................................................... 16

    **H.  Negligent Misrepresentation has been adequately alleged** ......................... 17

    **I.   Plaintiff has Adequately Alleged his Breach of Express Warranty Claims** ............... 17

    **J.   Plaintiff has Adequately Alleged that Cree was Aware of the Defect** ......................... 18

    **K.  Plaintiff has Standing to Assert Claims for Substantially Similar Products** .............. 19

    **L.  Privity Is Not A Bar To Plaintiff's Breach Of Implied Warranties Claim** ................. 22

    **M.  The CLRA Authorizes Punitive Damages** ................................................. 22

**IV. CONCLUSION** ............................................................................................ 24

## **TABLE OF AUTHORITIES**

**Cases**

*Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n,*

    410 F.3d 492 (9th Cir. 2005) ............................................................................. 7

*Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133 (C.D. Cal. 2005) ................................ 23

*Astiana v. Dreyer's Grand Ice Cream, Inc.,*

    No. C-11-2910, 2012 WL 2990766 (N.D. Cal. July 20, 2012) ...................... 20

*Bates v. Dow Agrosciences L.L.C.*, 544 U.S. 431 (2005) ......................................... 3

*Bietsch v. Sergeant's Pet Care Products, Inc.,*

    15 C 5432, 2016 WL 1011512 (N.D. Ill. Mar. 15, 2016) .............................. 21

*Brod v. Sioux Honey Ass'n*, 927 F. Supp. 2d 811 (N.D. Cal. 2013) ............................. 3

*Brown Hain Celestial Grp., Inc.*, 913 F.Supp.2d (N.D. Cal. 2012) ............................. 21

*Brown v. Hain Celestial Grp., Inc.*, 913 F.Supp.2d 881 (N.D. Cal. 2012) .................... 20

*Burton v. Hodgson Mill, Inc.,*

    16-CV-1081-MJR-RJD, 2017 WL 1282882 (S.D. Ill. Apr. 6, 2017) ............ 21

*California Federal Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272 (1987) ...................... 3

*Cardenas v. NBTY, Inc.*, 870 F.Supp.2d 984 (E.D. Cal. 2012) ................................... 21

*Centeno v. Bayer HealthCare Pharm. Inc.,*

    No. 3:14-cv-75-DRH-DGW, 2014 U.S. Dist. LEXIS 136234 (S.D. Ill. Sep. 26, 2014) ............... 16

*Chavez v. Blue Sky Natural Bev. Co.*, 268 F.R.D. 365 (N.D. Cal. 2010) ..................... 3

*Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992) ......................................... 2, 7

*Dupnik v. United States*, 848 F.2d 1476 (9th Cir. 1988) ....................................... 3

*Elias v. Ungar's Food Products, Inc.,* 252 F.R.D. 233 (D. N.J.2008) ........................ 21

*English v. General Elec. Co.*, 496 U.S. 72 (1990) ................................................. 4

*ergeant's Pet Care Products, Inc.,*

    15 C 5432, 2016 WL 1011512 (N.D. Ill. Mar. 15, 2016) .............................. 21

*Espinoza v. Hyundai Motor Am.,*

    No. CV 12-800-GW(FFMx), 2012 U.S. Dist. LEXIS 191088 (C.D. Cal. Apr. 23, 2012) ............... 9

*Fieldstone Co. v. Briggs Plumbing Prod., Inc.*,

   54 Cal. App. 4th 357, 62 Cal. Rptr. 2d 701 (1997) ........................................................ 22

*General Motors Corp. v. Abrams*, 897 F.2d 34 (2d Cir. 1990) ........................................... 3

*Gerawan Farming, Inc. v. Rehrig Pac. Co.*,

   2012 U.S. Dist. LEXIS 28017 (E.D. Cal. Mar. 2, 2012) ................................................ 16

*Ghirardo v. Antonioli*, 14 Cal. 4th 39 (Cal. 1996) ............................................................ 15

*Gordon v. Aztec Brewing Co.*, 33 Cal. 2d 514 (Cal. 1949) ................................................ 16

*Grimm v. APN, Inc.*,

   No. 817CV00356JVSJCG, 2017 WL 6398148 (C.D. Cal. Aug. 31, 2017) .................................. 22

*Hannibal Pictures Inc. v. Sonja Prods. LLC*, 432 Fed. Appx. 700 (9th Cir. 2011) ........................... 17

*Hernandez v. Lopez*, 180 Cal. App. 4th 932 (Ct. App. 2009) .............................................. 15

*Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. 707 (1985) ...................... 4

*Holmes v. Merck & Co.*, 697 F.3d 1080 (9th Cir. 2012) ..................................................... 4

*In re Ford Fusion & C-Max Fuel Econ. Litig.*,

   No. 13-MN-2450 (KMK), 2015 U.S. Dist. LEXIS 155383 (S.D.N.Y. Nov. 12, 2015) .......... passim

*In re GlenFed, Inc., Sec. Litig.*, 42 F.3d 1541 (9th Cir. 1994) ............................................. 12

*In re HP Inkjet Printer Litig.*,

   No. C 05-3580 JF, 2006 WL 563048 (N.D. Cal. Mar. 7, 2006) ...................................... 22

*In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867 (E.D. Pa. 2012) ...................... 15

*In re Silicone Gel Breasts Implants Prods. Liab. Litig.*,

   318 F. Supp. 2d 879 (C.D. Cal. 2004) ......................................................... 16

*Janney v. Mills*, 944 F.Supp.2d 806 (N.D. Cal. 2013) ...................................................... 11

*Kalitta Air, L.L.C. v. Central Texas Airborne Sys. Inc.*,

   315 Fed. Appx. 603 (9th Cir. 2008) .......................................................... 17

*Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091 (S.D. Cal. 2015) ............................... 23

*Keilholtz v. Superior Fireplace Co.*,

   No. C 08-00836 CW, 2009 WL 839076 (N.D. Cal. Mar. 30, 2009) .............................. 13

*Keith v. Buchanan*, 220 Cal.Rptr. 392 (Cal. Ct. App. 1985) .............................................. 18

- iii -

*Koh v. S.C. Johnson & Son, Inc.*, 2010 WL 94265 (N.D. Cal. Jan. 6, 2010) ...................................... 21

*Kowalsky v. Hewlett–Packard Co.*,

    No. 10–CV–02176–LHK, 2011 WL 3501715 (N.D. Cal. Aug. 10, 2011) .............................. 18, 19

*Lanagan v. Johnson & Johnson Consumer Cos., Inc.*, 95 F. Supp. 3d 284 (D. Conn. 2015) ............. 3

*Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723 (Ct. App. 2000) ...................................................... 15

*Lee v. City of L.A.*, 250 F.3d 668 (9th Cir. 2001) ............................................................................... 2

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) ............................................................................... 2, 4

*Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097 (9th Cir. 2008) ........................................ 2

*Metrophones Telecomm, Inc. v. Global Crossing Telecomm., Inc.*,

    423 F.3d 1056 (9th Cir. 2005) ............................................................................................. 4

*Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861 (N.D. Cal. 2012) .................................... 20

*N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578 (9th Cir. 1983) .................................................... 2

*Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082 (N.D. Cal. 2006) ........................................... 16

*North Dakota ex rel. Stenehjem v. Simple.net, Inc.*,

    No. 1:08-cv-002, 2008 U.S. Dist. LEXIS 16228 (D.N.D. Mar. 3, 2008) ........................................ 3

*Oppenheimer v. Sw. Airlines Co.*,

    No. 13-CV-260-IEG-BGS, 2013 WL 3149483 (S.D. Cal. June 17, 2013) ................................... 23

*Paduano v. American Honda Motor Co., Inc.*, 169 Cal. App. 4th 1453 (Cal. Ct. App. 2009) ............. 9

*Paramount Farms Int'l LLC v. Ventilex B.V.*, 500 F. App'x 586 (9th Cir. 2012) ............................. 22

*Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580 (C.D. Cal. 2008) ............................................... 23

*Peterson v. Cellco Partnership*, 164 Cal. App. 4th 1583 (Ct. App. 4th Dist. 2008) ........................ 15

*PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011) ................................................................................. 2

*Plumley v. Massachusetts*, 155 U.S. 461 (1894) .............................................................................. 3

*Punian v. Gillette Co.*,

    No. 14-CV-0528-LHK, 2016 U.S. Dist. LEXIS 34164 (N.D. Cal. Mar. 15, 2016) ...................... 14

*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947) ..................................................................... 3

*Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979 (Cal. 2004) ...................................... 17

*Sanchez v. Ford Motor Co.*,

No. 13-cv-01924-RBJ, 2014 U.S. Dist. LEXIS 73195 (D. Colo. May 29, 2014) ........................... 9

*Schwartz v. Vizio*,

No. SACV 16-01883 JVS (DFMx), 2017 U.S. Dist. LEXIS 8794 (C.D. Cal. May 23, 2017) ...... 10

*Semegen v. Weidner*, 780 F.2d 727 (9th Cir. 1985) ........................................................... 12

*Shimy v. Wright Med. Tech., Inc.*,

No. 2-14-CV-04541-CAS, 2014 WL 3694140 (C.D. Cal. July 23, 2014) ..................................... 22

*Sloan v. 1st Am. Auto. Sales Training*,

No. 2:16-cv-05341-ODW (SK), 2017 WL 1395479 (C.D. Cal. Apr. 17, 2017) ........................... 24

*Sonner v. Schwabe North America, Inc.*, 231 F.Supp.3d 502 (C.D. Cal. 2017) ................................. 20

*Sprietsma v. Mercury Marine*, 537 U.S. 51 (2002) ............................................................. 4

*T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855 (N.D. Cal. 2015) .... 22

*True v. Am. Honda Motor Co.*, 520 F. Supp. 2d 1175 (C.D. Cal. 2007) .......................................... 10

*Tsan v. Seventh Generation, Inc.*,

No. 15-CV-00205-JST, 2015 WL 6694104 (N.D. Cal. Nov. 3, 2015) ............................................. 23

*Valentine v. Baxter Healthcare Corporation*, 68 Cal. App. 4th 1467 (Ct. App. 1999) ..................... 16

*Ventura Cnty. Nat. Bank. v. Macker*, 57 Cal. Rptr. 2d 418 (Cal. App. 4th 1996) ............................. 11

*Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ........................................... 11, 12

*W. Reserve Oil & Gas Co. v. New*, 765 F.2d 1428 (9th Cir. 1985) ........................................... 2

*Waldrup V. Countrywide Financial Corp.*,

No. 2:13–cv–08833–CAS, 2014 WL 1463881 (C.D. Cal. Apr. 14, 2014) ...................................... 11

*Weyand v. Union Cent. Life Ins. Co.*,

2016 Cal. App. Unpub. LEXIS 1422 (Ct. App. 4th Dist. Feb. 26, 2016) ...................................... 15

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) ............................................... 15

*Williams v. Yamaha Motor Co. Ltd.*, 2014 WL 12597039 (C.D. Cal. Aug. 19, 2014) ..................... 15

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012) ............................................. 19

*Wool v. Tandem Computers, Inc.*, 818 F.2d 1433 (9th Cir. 1987) ...................................... 12, 13, 18

*Yung Kim v. GM, LLC*, 99 F. Supp. 3d 1096, (C.D. Cal. Mar. 9, 2012) .......................................... 9

- v -

*Zapata Fonseca v. Goya Foods Inc.*,

   Case No. 16-CV-02559-LHK, 2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) ......................... 11, 21

**Statutes**

16 C.F.R. § 301.15 ............................................................................................................. 11

16 C.F.R. § 305.15 ...................................................................................................... 6, 8, 11

16 C.F.R. § 305.2 ................................................................................................................ 6

42 U.S.C. § 6291 ................................................................................................................ 5

42 U.S.C. § 6297 ............................................................................................................. 5, 8

49 U.S.C. § 32908 .............................................................................................................. 9

Cal. Civ. .P. § 1710(2) ...................................................................................................... 20

Cal. Civ. Code § 3294(a) .................................................................................................. 28

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 27

Fed. R. Civ. P. 9(b) ..................................................................................................... passim

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS          4:17-CV-06252-YGR

## I.   INTRODUCTION

Defendant Cree, Inc. (hereinafter "Cree") designs, markets, and manufacture a series of LED light bulbs and makes express marketing statements about the durability and quality of the product. Cree's marketing statements are almost entirely uniform, varying mainly in the advertised lifespan of each bulb, in hours, and the potential energy savings as a result. The rest of the marketing statements are uniform, pervasive and appear several different places on both the packaging and marketing materials. These statements are *not limited* to representations contained within a federally mandated energy label, but rather are targeted representations regarding the quality of the light bulbs which are intended to and do induce consumers to purchase Cree's products.

Unfortunately for Plaintiff Jeff Young (hereinafter "Plaintiff" or "Young") he relied on Cree's false marketing statements to his detriment when he purchased Cree's LED bulb products, and was injured as a result when the product failed well before its advertised life. Accordingly, Plaintiff filed the instant Class Action Complaint (Dkt. No. 1, hereinafter "Complaint"), seeking relief on behalf of himself and all other similarly-situated consumers.

Cree now tries to escape liability for its faulty product by claiming federal preemption bars the relief Plaintiff seeks. Cree misapplies the relevant standards on preemption, and Young's complaint meets all applicable pleading requirements. Young is not required to meet the Rule 9 pleading standard for his non-fraud claims. Cree's Motion to Dismiss (Dkt. No. 31, hereinafter "Motion") should be denied *in toto*. In the alternative, Plaintiff requests leave to amend.[1]

## II.   RELEVANT FACTUAL HISTORY

Plaintiff Jeff Young is a resident of Guerneville, California who purchased three Cree 100 Watt Standard A-Type bulbs on or around April of 2015 from Walmart. Complaint at ¶ 32. Young paid approximately $15-20 for each bulb. *Id*. The bulbs were marketed as having a lifetime of "13+ years (15,000 hours), up to 3x as long as the cheap LED bulbs." *Id*. at ¶ 19. These marketing representations are substantially identical in type to the marketing representations Cree makes for its other LED bulbs. *Id*. at ¶¶ 17-27. For example, Cree markets bulbs as having a lifetime as high as 22+ years, saving a

---

[1] Plaintiff concedes that his claim for Breach of the Covenant of Good Faith and Fair Dealing (Count IV) should be dismissed, and hereby abandons that claim.

1  purchaser as much as $177 in energy costs over the lifetime of the bulb. *Id.* Within months, all three

2  bulbs burned out even though Mr. Young used them according to Cree's instructions. *Id.* at ¶ 32.

3  Young's experience was very similar to hundreds of other purchasers of Cree bulbs. *Id.* at ¶ 31.

4          Plaintiff filed the instant Complaint on October 27, 2017, on behalf of himself and a California

5  class of purchasers of Cree LED bulbs. Complaint, *generally*. Cree's Motion to Dismiss was filed on

6  January 9, 2018.

7  **III.   ARGUMENT**

8  **A.  Standard of Review**

9          Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient

10  facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097,

11  1104 (9th Cir. 2008). The court may consider material submitted as part of the complaint or relied

12  upon in the complaint, and may also consider material subject to judicial notice. *See Lee v. City of*

13  *L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001). Courts must accept as true all allegations of material fact

14  offered by the non-moving party and draw all justifiable inferences in the light most favorable to the

15  non-moving party. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983). Because

16  of the drastic nature of a motion to dismiss, "to affirm this type of dismissal, it must appear to a

17  certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved."

18  *W. Reserve Oil & Gas Co. v. New*, 765 F.2d 1428, 1430 (9th Cir. 1985).

19  **B.  The Energy Policy and Conservation Act (EPCA) does not preempt**
20  **Young's claims**

21          **1.      Preemption is a disfavored affirmative defense, and the Court's analysis**
           **of Cree's motion must begin with a "presumption against the preemption**
22          **of state police power regulations."[2]**

23          Cree's primary argument is that all of Plaintiff's claims are preempted. Not so. Preemption is

24  an affirmative defense upon which Cree bears the burden of proof. *PLIVA, Inc. v. Mensing*, 564 U.S.

25  604, 619 (2011). In considering whether it has carried that burden, it is important to remember that

26  "Congress does not cavalierly preempt state-law causes of action,"[3] and preemption therefore "is not

27

28  ――――――――――――――
   [2] *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 518 (1992).
   [3] *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).

lightly to be presumed." *California Federal Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 281 (1987). In fact, it is a disfavored defense,[4] particularly in areas of health and safety, which are historically subject to the police powers of the States. Indeed, as the United States Supreme Court has recognized for over a century, "[i]f there be any subject over which it would seem the States ought to have plenary control, and the power to legislate in respect to which it ought not to be supposed was intended to be surrendered to the general government, it is the protection of the people against fraud and deception. . ." *Plumley v. Massachusetts*, 155 U.S. 461, 472 (1894); *see also Chavez v. Blue Sky Natural Bev. Co.*, 268 F.R.D. 365, 372 (N.D. Cal. 2010) (confirming that "state consumer protection laws" are "traditionally within the realm of state police power"). Accordingly, "[c]onsumer protection laws enjoy a **great presumption** against preemption,"[5] and Cree is therefore obligated to provide "compelling evidence of an intention to preempt" in order to prevail on its motion. *General Motors Corp. v. Abrams*, 897 F.2d 34, 41 (2d Cir. 1990) (emphasis added); *Brod v. Sioux Honey Ass'n*, 927 F. Supp. 2d 811, 824 (N.D. Cal. 2013) (holding that in certain areas " 'a presumption against preemption' exists") (citation omitted); *Lanagan v. Johnson & Johnson Consumer Cos., Inc.*, 95 F. Supp. 3d 284, 291 (D. Conn. 2015) (explaining that the "presumption against preemption applies with particular force" when Congress legislates in "a field within the 'historic police powers of the states;'" including "[t]he advertising and labeling of consumer products") (citation omitted).

In order to overcome the presumption against preemption, Cree must prove that displacement of state law was "the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). This is no easy task given the fact that if there are two equally "plausible" readings of a statute, courts "have **a duty** to accept the reading that disfavors preemption." *Bates v. Dow Agrosciences L.L.C.*, 544 U.S. 431, 449 (2005) (emphasis added).

     **2.**     **Young's claims do not rely on a federally-mandated label and are grounded on laws of general application that create a duty not to deceive; as such, they are outside the preemptive scope of the EPCA**

---

[4] *See Dupnik v. United States*, 848 F.2d 1476, 1480 (9th Cir. 1988) (confirming that "[p]reemption of state law by federal statute or regulation is not favored").

[5] *North Dakota ex rel. Stenehjem v. Simple.net, Inc.*, No. 1:08-cv-002, 2008 U.S. Dist. LEXIS 16228, at *12 (D.N.D. Mar. 3, 2008) (emphasis added).

Federal law can preempt state law claims in three ways: First, "Congress can define explicitly the extent to which its enactments pre-empt state law." *English v. General Elec. Co.*, 496 U.S. 72, 78-79 (1990). Second, "in the absence of explicit statutory language, state law is preempted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively." *Id.* at 79. And third, "state law is pre-empted to the extent that it actually conflicts with federal law;" *i.e.*, "where it is impossible for a private party to comply with both state and federal requirements." *Id.* These concepts are known as express, field, and conflict preemption, and they must be considered with due regard for the following well-settled legal principles: (1) "[t]he purpose of Congress is the ultimate touchstone in every preemption case;"[6] (2) when a federal statute contains an express preemption clause – as the EPCA does – the inquiry into Congressional intent must begin with the Act's "'plain wording,' as this 'necessarily contains the best evidence of Congress' pre-emptive intent;' "[7] (3) "[t]he presence of an express preemption provision supports an inference that Congress did not intend to preempt matters beyond the reach of that provision;"[8] and (4) the existence of a detailed federal regulatory or enforcement scheme "does not by itself imply preemption of state remedies." *English v. General Electric Co.*, 496 U.S. 72 (1990). Indeed, as the Supreme Court has long cautioned:

> To infer pre-emption whenever an agency deals with a problem comprehensively is virtually tantamount to saying that whenever a federal agency decides to step into a field, its regulations will be exclusive. Such a rule, of course, would be inconsistent with the federal-state balance embodied in our Supremacy Clause jurisprudence.

*Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 717 (1985).

Cree does not specify its preemption theory, but appears to contend that Young's claims are expressly preempted by the EPCA;[9] specifically 42 U.S.C. § 6297(g), which provides as follows:

> No warranty. Any disclosure with respect to energy use, energy efficiency, or estimated annual operating cost which is required to be made under the provision of this part [42

---

[6] *Medtronic v. Lohr*, 518 U.S. 470, 485 (1996).

[7] *Holmes v. Merck & Co.*, 697 F.3d 1080, 1085 (9th Cir. 2012) (quoting *Sprietsma v. Mercury Marine*, 537 U.S. 51, 62-63 (2002)).

[8] *Metrophones Telecomm, Inc. v. Global Crossing Telecomm., Inc.*, 423 F.3d 1056, 1072 (9th Cir. 2005)

[9] *See* Motion at 5 (urging that "Congress expressly preempted any state laws or regulations that conflict with the disclosure requirements imposed by the EPCA . . .")

- 4 -

U.S.C. §§ 6291 et seq.] shall not create an express or implied warranty under State or Federal law that such energy efficiency will be achieved or that such energy use or estimated annual operating cost will not be exceeded under conditions of actual use.

As to the "disclosures" Cree is required to make "with respect to energy use, energy efficiency, or estimated annual operating cost" under the EPCA, it cites – but does not quote – 16 C.F.R. § 305.15, which provides, in relevant part:

(i)    The ***principal display panel*** of the product package shall be labeled clearly and conspicuously with the following information consistent with the Prototype Labels in Appendix L:

   (A)    The light output of each lamp included in the package, expressed as "Brightness" in average initial lumens rounded to the nearest five;

   (B)    The estimated annual energy cost of each lamp included in the package, expressed as "Estimated Energy Cost" in dollars and based upon usage of 3 hours every per day and 11 cents ($0.11) per kWh; and

   (C)    The life, as defined in § 305.2(w),[10] of each lamp in the package, expressed in years rounded to the nearest tenth (based on 3 hours operation per day.

16 C.F.R. § 305.15 (c)(2)(i).

Cree's omission of the full text of this regulation is unsurprising given that its plain language limits the regulation's application to information set forth on a product's "principal display panel," an illustrative example of which looks like this:



| Lighting Facts | Per Bulb |
|---|---|
| **Brightness** | **820 lumens** |
| **Estimated Yearly Energy Cost $7.23** | |
| Based on 3 hrs/day, 11¢/kWh | |
| Cost depends on rates and use | |
| **Life** | |
| Based on 3 hrs/day | **1.4 years** |
| **Light Appearance** | |
| Warm | Cool |
| 2700 K | |
| **Energy Used** | **60 watts** |

---

[10] 16 C.F.R. § 305.2(w) provides that "Life and lifetime for lamps mean length of operating time of a statistically large group of lamps

However, Young's claims are not based on the alleged falsity of any information in the principal display panel of any Cree bulb. Indeed, throughout his Complaint, Young cites myriad examples of Cree's deceptive labeling, marketing, and advertising that exist *independently* from any representation set forth on the principal display panels. For example, Young explains that:

> Many of Cree's LED bulbs are sold with packaging which indicates that the product comes with a 10 Year Warranty. . . These representations signal to the consumer that the useful life of the product will be at least 10 years or more. Complaint ¶ 15.

> Furthermore, Cree packaging boasts that their products have a life of '27+ years' or more depending on the bulb. *Id.* at ¶ 16

> . . . On its website, Cree claims with respect to each type of LED Lightbulb that "the Cree LED bulb is . . . designed to last more than 22 years (25,000 hours), [and] the Cree LED bulb "is a worry-free choice backed by a 100% performance satisfaction guarantee." *Id.* at ¶ 17.

> \*\*\*

> **Defendant's Label Misrepresentations[11]**

> Defendant's misrepresentations within advertisements and marketing include, but are not limited to, the following:

> - Defendant's labels advertise that the products have a 13-32+ years useful lifetime.

> - Defendant's labels indicate that the products have a 10 Year Warranty.

> - Defendant's labels indicate that the products carry a 100% Satisfaction Guarantee.

> \*\*\*

> **Defendant's Advertising and Marketing Misrepresentations**

> - "Long LED lifetime lasts 13+ years (15,000 hours), up to 3x as long as the cheap LED bulbs."

> - "Long LED lifetime lasts 22+ years (25,000 hours), up to 6x as long as the cheap LED bulbs."

---

[11] Each of the representations cited in Paragraph 27 of the Complaint appear in places other than the "principal display panel."

- "Long LED lifetime lasts 32+ years (35,000 hours), up to 3x as long as the cheap LED bulbs."

- "[D]esigned to last more than 22 years (25,000 hours), the Cree LED bulb is a worry-free choice backed by a 100% performance satisfaction guarantee. The LED general purpose bulbs "last up to 25,000 hours, equal to 25 incandescents."

- 25,000-hour lifetime compared to about 1,000 hours for a typical incandescent."

- "Most Cree LED bulbs are rated to last 25,000 hours. So you'll be happy to have beautiful Cree LED light in your home for decades." *Id*. at ¶ 27

\*\*\*

Through the advertisements described above and others, Cree represented, directly or indirectly, expressly or by implication, that the LED Lightbulbs would last ***for specified periods or lifespans.*** These representations are false. . . *Id*. at ¶ 29 (emphasis added).

In light of the foregoing, it is evident that Young's claims do not, as Cree contends, "derive from supposed misrepresentations included on Cree's federal-mandated" principal display panel. Motion at 3-4. Accordingly, they fall comfortably outside the parameters of 16 C.F.R. § 305.15 and the preemptive reach of the EPCA;[12] this conclusion is confirmed by the fact that courts across the country have refused to find EPCA preemption in cases where the plaintiffs, like Young, alleged misrepresentations made via sources other than federally-mandated labels.

Illustrative of such cases is *In re Ford Fusion & C-Max Fuel Econ. Litig.*, a class action in which the plaintiffs: (a) purchased certain vehicles in reliance on Ford's assurances that they would realize specific fuel economy savings; and (b) filed suit alleging violations of the CLRA, UCL, and FAL (among other state consumer protection statutes) when those representations turned out to be false. *In re Ford Fusion & C-Max Fuel Econ. Litig.*, No. 13-MN-2450 (KMK), 2015 U.S. Dist. LEXIS 155383, at \*2, 27 (S.D.N.Y. Nov. 12, 2015). Ford filed a motion to dismiss, arguing there, as Cree

---

[12] Like all other express preemption provisions, 42 U.S.C. § 6297(g) "should be given a narrow interpretation." *Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*, 410 F.3d 492, 496 (9th Cir. 2005); *see also Cipollone*, 505 U.S. at 518.

does here, that any claim based on labels "that contain federally-mandated disclosure language" is preempted by the ECPA. *Id*. at *65-66. In support of its position, Ford noted that the testing and disclosure of estimated fuel economy for new vehicles is governed by the EPCA's "comprehensive federal regulatory scheme," and went on to explain that the applicable regulations mandated each new vehicle "be labeled with a sticker (a 'Monroney Sticker')[13] indicating estimated fuel economy." *Id*. at *14. The plaintiffs opposed, explaining that their consumer protection claims "were not based on the disclosure of fuel economy or fuel operating costs, but rather [were] based on the more general duty not to deceive," which Ford violated by "portraying a false impression about the 'superior' fuel economy of the [Vehicles], ***beyond the mere disclosure of the EPA estimates***." *In re Ford*, 2015 U.S. Dist. LEXIS 155383, at *66-67 (emphasis added). In other words, the plaintiffs' claims were "rooted in an extrinsic duty not to deceive, one that is not equivalent to disclosure obligations under the EPCA." *Id*. at *70.

The court denied Ford's motion in part, explaining that "the EPCA 'and the regulations issued pursuant to it do not purport to regulate advertising of fuel economy beyond the requirements of the Monroney Sticker and the dealer booklet," and concluding that therefore, "state false advertising claims 'are not preempted'" by the Act. *In re Ford*, 2015 U.S. Dist. LEXIS 155383, at *71-72 (citation omitted). In so holding, the court reasoned that:

> . . . Congress did not intend to protect car manufacturers that may have falsely advertised facts about their vehicles—including facts that might go beyond merely reporting the EPA-estimated MPG. . . Indeed, as Defendant admits, Congress' intent in regulating EPA fuel economy disclosures was not to prevent false advertising but rather was to "provid[e] consumers with uniform and comparable fuel economy information."

*Id*. at *72-73

---

[13] Specifically, automobile manufacturers are required to place a label on each new vehicle that states the fuel economy of the automobile; the estimated annual fuel cost of operating the automobile; the range of fuel economy of comparable automobiles of all manufacturers; a statement that a booklet is available from the dealer to assist in making a comparison of fuel economy of other automobiles; the amount of the automobile fuel efficiency tax imposed on the sale of the automobile under the Internal Revenue Code; and other information required or authorized by the Administrator that is related to the foregoing subjects. *See* 49 U.S.C. § 32908(b)(1)(A)-(F).

- 8 -

1    The court also noted that Ford's advertisements functioned to "guarantee real-world fuel

2    economy," and it "concur[ed] with holdings of other courts" – including those in California, both state

3    and federal – "that considered similar allegations, namely that advertisements functioned to guarantee

4    specific, real world performance, and conclude[d] that such claims are not preempted." *In re Ford*,

5    2015 U.S. Dist. LEXIS 155383, at *72-73; *see also Yung Kim v. GM, LLC*, 99 F. Supp. 3d 1096, 1104

6    (C.D. Cal. Mar. 9, 2012) (EPCA did not preempt plaintiffs' UCL and CLRA claims alleging

7    defendants' advertisements "could lead a reasonable consumer to believe [its] vehicle is capable of

8    achieving these EPA [label] estimates under real world conditions" because plaintiff's claims "did not

9    challenge the disclosure of the EPA estimate itself," but rather "challeng[ed] GM's <u>use</u> of the EPA

10   estimates in a way that may give consumers the mistaken impression that they are able to achieve real-

11   world mileage and tank range derived from these figures") (emphasis in original); *Espinoza v. Hyundai*

12   *Motor Am.*, No. CV 12-800-GW(FFMx), 2012 U.S. Dist. LEXIS 191088, at *6-7 (C.D. Cal. Apr. 23,

13   2012) (plaintiffs' UCL, FAL, and CLRA not preempted by the EPCA "to the extent [those] claims

14   rest on allegations that Hyundai 'voluntarily made assertions, beyond the disclosure of mileage

15   estimates, that are untrue or misleading'"); *Sanchez v. Ford Motor Co.*, No. 13-cv-01924-RBJ, 2014

16   U.S. Dist. LEXIS 73195, at *18 (D. Colo. May 29, 2014) (ECPA did not preempt plaintiffs' state law

17   consumer protection claims based on allegations that Defendant misrepresented the vehicle he

18   purchased "would match the fuel economy estimates he had viewed from Ford's advertising");

19   *Paduano v. American Honda Motor Co., Inc.*, 169 Cal. App. 4th 1453, 1478 (Cal. Ct. App. 2009)

20   (holding that EPCA did not preempt plaintiff's UCL and CLRA claims because: (a) he "is not claiming

21   that disclosing the EPA mileage estimates is, by itself, deceptive," but rather "maintains that Honda

22   has voluntarily made additional assertions, beyond the disclosure of the mileage estimates, that are

23   untrue or misleading;" and (b) neither the UCL nor the CLRA is a law that is based on disclosure of

24   fuel economy or fuel operating costs; rather, [they] are both laws of general application that create a

25   duty not to deceive").

26   As explained at length above, the EPCA and its attendant regulations do not purport to regulate

27   the advertising of light bulbs beyond the requirements of the principal display panel. In this case, as

28   in those cited above, Young's claims do not rely on the alleged falsity of Cree's federally mandated

disclosures. Instead, he is alleging that Cree voluntarily made additional representations beyond those required by 16 C.F.R. § 305.15, and that those representations are deceptive, misleading, or ultimately untrue. As such, his claims are "rooted in an extrinsic duty not to deceive," which is "not equivalent to disclosure obligations under the EPCA," and thus are not subject to preemption thereunder. *In re Ford*, 2015 U.S. Dist. LEXIS 155383, at *70. Not only is this conclusion consistent with the plain wording of the EPCA and 16 C.F.R. § 301.15, it is in direct conformity with the courts' recognition of the fact that "no clear and manifest Congressional intent to regulate advertising," and that "allowing the States to regulate false advertising and unfair business practices perhaps may further the goals of the EPCA." *True v. Am. Honda Motor Co.*, 520 F. Supp. 2d 1175, 1181 (C.D. Cal. 2007). Accordingly, the Court should reject Cree's preemption argument and deny its motion.

### 3. The authority Cree cites is distinguishable and inapposite

In support of its preemption argument Cree relies almost entirely on *Schwartz v. Vizio*, a case in which the plaintiffs alleged that Vizio misrepresented its televisions as being "among the most energy efficient" on the market when, in fact, they were not. *Schwartz v. Vizio*, No. SACV 16-01883 JVS (DFMx), 2017 U.S. Dist. LEXIS 8794, at *1-2 (C.D. Cal. May 23, 2017). In that case, the plaintiffs claimed that Vizio made its misrepresentations in two ways: (1) by displaying an EnergyGuide label, which was required by the FTC; and (2) by displaying an Energy Star logo, which likewise conveyed that Vizio's televisions were "among the most energy efficient of similar products available in the marketplace." *Id*. at *2-3.

The court granted Vizio's motion to dismiss the plaintiffs' claims but only "to the extent that they rely on the Energy Guide label," finding such claims to be preempted because they "allege that the televisions did not perform as promised on a federally-required label." *Schwartz*, 2017 U.S. Dist. LEXIS 87954, at *11. More importantly, however, the *Vizio* court, like its brethren in each of the cases cited above, refused to dismiss claims based on misrepresentations set forth in locations other than the federally-mandated label; for example the Energy Star logo, which also "misrepresent[ed] the televisions' energy consumption," and thus had the potential to mislead reasonable consumers. *Id*. at *14. In so holding, the court noted that "the Energy Star program is voluntary," and that the disclosures of energy efficiency made in connection therewith are not "'required to be made' by statute." *Id*. at *13.

1    In this case, as in *Schwartz*, Young is alleging that Cree voluntarily made representations (or,

2    more accurately, misrepresentations) with respect to the durability and functionality of its light bulbs.

3    Those disclosures are not "required to be made by federal statute" and, as the *Schwartz* court

4    recognized, claims based thereon cannot be preempted by the EPCA. Thus, rather than supporting

5    Cree's contentions, *Schwartz* actually demonstrates the fallacy of its position, and mandates the

6    rejection of Cree's arguments based thereon.

7    **C.  Not All of Young's Claims Are Governed by Fed. R. Civ. P. 9(b)**

8    In its Motion, Cree insists that all of Young's claims sound in fraud and are thus governed by

9    the heightened pleading requirement of Rule 9(b).  While Plaintiff contends that any fraud-based

10   claims are pled with sufficient specificity, Defendant's argument should be rejected insofar as the non-

11   fraud claims were pled under the correct legal standard.

12   As an initial matter, Plaintiff's breach of warranty claims do not sound in fraud and, thus, are

13   not governed by Rule 9(b)'s heightened pleading requirements. *Zapata Fonseca v. Goya Foods Inc.*,

14   Case No. 16-CV-02559-LHK, 2016 WL 4698942, at *8 (N.D. Cal. Sept. 8, 2016) (finding claims for

15   "breach of express warranty, breach of the implied warranty of merchantability, and breach of the

16   implied warranty of fitness do not sound in fraud."). Plaintiff's claims for negligence, negligent

17   misrepresentation, unjust enrichment, violation of the UCL, violation of the CLRA, and violation of

18   FAL are likewise not governed by Rule 9(b).  *See Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097,

19   1103–04 (9th Cir. 2003) (a claim does not sound in fraud where it is premised on negligent conduct);

20   *Ventura Cnty. Nat. Bank. v. Macker*, 57 Cal. Rptr. 2d 418, 418 (Cal. App. 4th 1996) (finding a claim

21   of negligent misrepresentation implicates the two-year statute of limitations for negligence, rather than

22   the three-year statute of limitations for fraud); *Waldrup V. Countrywide Financial Corp.*, No. 2:13–

23   cv–08833–CAS, 2014 WL 1463881, at *8 (C.D. Cal. Apr. 14, 2014) (finding unjust enrichment claims

24   are not governed by Rule 9(b)); *Vess*, 317 F.3d at 1104-1105 (fraud is not an essential element either

25   of a CLRA or a UCL claim); *Janney v. Mills*, 944 F.Supp.2d 806, 817 (N.D. Cal. 2013) (FAL claims

26   are only subject to Rule 9(b) pleading requirements where they are premised on fraud allegations).

27   It is only where such claims allege "a unified course of fraudulent conduct and rely entirely on

28   that course of conduct as the basis of a claim," that such claims become subject to Rule 9(b)'s

heightened pleading requirement. *Vess*, 317 F.3d at 1103–04.  A review of the allegations made in support of each of these claims makes it clear that such claims do not rely entirely on a unified course of fraudulent conduct.  Complaint at ¶¶ 48, 59 (the FAL claims allege that Cree knew or should have known that the statements were and are misleading), 71 (the CLRA claims allege that Cree's misleading statements were at minimum made without the use of reasonable procedures adopted to avoid such errors), 81 (breach of covenant of good faith and fair dealing alleges that Cree intentionally or negligently failed to disclose material facts), and 94 (negligent misrepresentation claim alleges that Cree made misleading statements without a reasonable basis to believe they were true); 108 (unjust enrichment claim alleges that it would be inequitable for Cree to retain the benefits conferred by Plaintiff and class members).  Thus, Plaintiff's claims for negligence, negligent misrepresentation, unjust enrichment, violation of the UCL, violation of the CLRA, and violation of FAL are not governed by Rule 9(b).

### D.  Plaintiff Meets and Exceeds the Rule 9 Pleading Standard

While the majority of Plaintiff's claims are not subject to Rule 9(b)'s heightened pleading requirement, his fraudulent misrepresentation and concealment claims are .  Regardless, Young has adequately met the heightened pleading standards of Rule 9(b) for purposes of his fraudulent misrepresentation and concealment claims.

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The allegations must be "specific enough to give the defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Statements of the time, place and nature of the alleged fraudulent activities are sufficient provided the plaintiff sets forth "what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc., Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1101, 1106. Scienter may be averred generally, simply by saying that it existed. *In re GlenFed, Inc., Sec. Litig.*, 42 F.3d at 1547; Fed.R.Civ.P. 9(b) (malice, intent, knowledge, and other mental states may

be averred generally). As to matters peculiarly within the opposing party's knowledge, pleadings based on information and belief may satisfy Rule 9(b) if they also state the facts on which the belief is founded. *Wool*, 818 F.2d at 1439.

Plaintiff has adequately alleged his fraudulent misrepresentation and concealment claims. One need not look any further than the first allegation of the complaint for purposes of demonstrating that Plaintiff has met his burden of pleading Cree's fraudulent conduct.  In this allegation, Plaintiff specifically alleges that Cree's misleading representations are prominently featured on the product labeling and packaging and are viewed by every consumer at the point of purchase.  In this same paragraph, Plaintiff further alleges that consumers overpay for Cree's lightbulbs based on these misrepresentations.  Thus, to the extent Cree contends that the complaint fails to allege what misleading information Plaintiff specifically relied upon, this argument fails since the complaint clearly alleges that Mr. Young, like other consumers, relied on the misleading statements specifically listed on the bulbs he purchased.  Complaint at ¶ 1.  The complaint then goes on to identify Cree's misleading statements contained in marketing materials, on Cree's website, and on the packaging of its various bulbs (including those not purchased by named plaintiff).  Complaint at ¶ 27 (identifying labeling, advertising, and marketing misrepresentations by Cree); *id.* at ¶¶ 19-21, 23-25.  Thus, the complaint adequately alleges and identifies the misleading statements that Plaintiff specifically relied upon.[14]

## E.  Young's Labeling Claims Are Not Disguised Warranty Claims

Cree argues that Young's claims alleging misrepresentations found outside the federally-required principal display panel (EnergyGuide label) should be dismissed because, per Cree, they are "disguised warranty claims." Motion at 11. The fallacy of Cree's contention in this regard is conclusively confirmed by: (a) the previous discussion of preemption, which established that Young's claims are "rooted in an extrinsic duty not to deceive,"[15] and that such claims can exist alongside any

---

[14] To the extent the Court determines any of Plaintiff's other claims must meet the pleading standard of Rule 9(b), such claims have been adequately alleged for the same reasons discussed with respect to Plaintiff's fraudulent misrepresentation and concealment claim.  Should the Court disagree, Plaintiff's claims should be dismissed with leave to amend.  *See Keilholtz v. Superior Fireplace Co.*, No. C 08-00836 CW, 2009 WL 839076, at *6 (N.D. Cal. Mar. 30, 2009).

[15] *In re Ford*, 2015 U.S. Dist. LEXIS 155383, at *70.

warranty claims; and (b) a review of the authority Cree cites in alleged support of its position, which actually confirms its argument to be untenable.

In its brief, Cree relies primarily (if not entirely) on *Punian v. Gillette Co.*, a case in which the plaintiffs took issue with Gillette's Duralock Batteries, which included the following language on their labels: "GUARANTEED for 10 YEARS in storage." *Punian v. Gillette Co.*, No. 14-CV-0528-LHK, 2016 U.S. Dist. LEXIS 34164, at \*3 (N.D. Cal. Mar. 15, 2016). In that case, the plaintiff claimed that the foregoing language constituted an affirmative representation that the batteries would not leak or otherwise fail for a period of ten years. Id. at \*17. When they did leak, Punian filed suit alleging violations of the California consumer protection statutes (i.e., the CLRA, UCL, and FAL). *Id*. at \*17-18. Gillette moved for dismissal, arguing that its foregoing "guarantee" was "an express warranty, not a promise that Duralock Batteries have absolutely no potential to leak." *Punian*, 2016 U.S. Dist. LEXIS 34164, at \*19. The court granted the motion, focusing exclusively on Gillette's use of the word "guarantee." Specifically, the court explained that "[i]n California the use of the term 'guarantee' generally creates an express warranty," which "is not a representation that a product has no defects, but rather a promise to repair, replace or refund a failed product." *Id*. at \*20. It went on to note that both the common understanding and dictionary definition of the term "guarantee" confirm it to be "'a written promise by a company to repair or change a product that develops a fault within a particular period of time.'" *Id*. at \*20-21 (quoting Cambridge Dictionaries Online). Given the foregoing, the court concluded that a reasonable consumer would understand Gillette's use of the term "guarantee" to simply convey "a promise to repair, replace, or refund", and "not as a promise that Duralock have no potential to leak." *Id*. at \*20. Thus, the court held that Punian "fail[ed] to allege an affirmative representation based on the Duralock ***guarantee***." *Id*. at \*26 (emphasis added).

Unlike the plaintiff in *Punian*, Young ***is not*** basing his non-warranty claims on Cree's use of the term "guarantee" in touting the expected life of its bulbs. Indeed, as set forth at length above, Cree has not couched its representations in terms of a "guarantee," but instead has unequivocally represented (or, more accurately misrepresented) to consumers in its advertising materials and on its packaging that its "products have a life of '27+ years' or more depending on the bulb;" that "the Cree LED bulb is . . . designed to last more than 22 years (25,000 hours);" that Cree bulbs have a "25,000-hour lifetime

compared to about 1,000 hours for a typical incandescent;" and that "[m]ost Cree LED bulbs are rated to last 25,000 hours. So you'll be happy to have beautiful Cree LED light in your home for decades." These critical factual distinctions reveal that Cree's reliance on *Punian* is misplaced, and confirm that its arguments based thereon should be rejected. Whether those representations are capable of misleading a reasonable consumer is "a question of fact not appropriate for decision on demurrer." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008). Accordingly, its motion should be denied.

### F.  Unjust Enrichment is Properly Alleged

Recent California appellate authority has clarified that "an unjust enrichment claim [fails only] where the parties have an *enforceable* express contract."  *Weyand v. Union Cent. Life Ins. Co.*, 2016 Cal. App. Unpub. LEXIS 1422, *28 (Ct. App. 4th Dist. Feb. 26, 2016) (italics in original) (allowing an unjust enrichment claim to go forward in the presence of a non-enforceable express contract). There is no evidence that such an enforceable contract existed. Indeed, Cree cannot have it both ways by claiming that an enforceable contract exists here between the parties, yet, claiming elsewhere that there is no privity of contract. If lack of privity must bar some of Plaintiff's claims then the unjust enrichment claim necessarily must survive.

More importantly, Cree's notion that "unjust enrichment is not a cause of action in California" is false. Motion at 12 (citing *Williams v. Yamaha Motor Co. Ltd.*, 2014 WL 12597039 at *16 (C.D. Cal. Aug. 19, 2014)). Defendant's position contradicts the weight of California state authority on the subject. *See, e.g.*, *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (Ct. App. 2000) (to state claim for unjust enrichment, Plaintiff must plead "receipt of a benefit and the unjust retention of the benefit at the expense of another."); *Ghirardo v. Antonioli*, 14 Cal. 4th 39 (Cal. 1996) (recognizing a cause of action for unjust enrichment upon a showing that the defendant received benefit through another's known mistake, fraud, coercion or other tortious conduct); *see also*, *Hernandez v. Lopez*, 180 Cal. App. 4th 932, 938 (Ct. App. 2009) (same); *Peterson v. Cellco Partnership*, 164 Cal. App. 4th 1583, 1593 (Ct. App. 4th Dist. 2008) (same). Courts outside of California also recognize the viability of a California unjust enrichment claim. *See, e.g.*, *In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 913 (E.D. Pa. 2012)

1   At best, Defendant's argument is an exercise in semantics. *Gerawan Farming, Inc. v. Rehrig*

2   *Pac. Co.*, 2012 U.S. Dist. LEXIS 28017, at *30 (E.D. Cal. Mar. 2, 2012) ("It appears, however, that

3   the split is largely a dispute in semantics. Those courts concluding that unjust enrichment is not a

4   stand-alone cause of action have typically recharacterized the claim as one for restitution.... Therefore,

5   for all relevant purposes, unjust enrichment appears to be 'synonymous' with restitution, which is a

6   viable cause of action under California law.") (citations omitted); *see also*, *Nordberg v. Trilegiant*

7   *Corp.*, 445 F. Supp. 2d 1082, 1100 (N.D. Cal. 2006) (same). Cree's arguments against the viability of

8   an unjust enrichment claim fails.

9   **G.   Negligent Failure to Warn is a Viable Claim in California, and is Not Barred by the**

10  **Economic Loss Rule**

11  As discussed *supra*, preemption does not bar Plaintiffs' causes of action.[16] Nor does

12  Defendant's nitpicking of the "Negligence – Failure to Test" claim mean the claim is unviable.

13  Young's allegations concerning the failure to test is directly tied to the liability associated with

14  Defendant's manufacture, design, and failure to warn – and as such, a negligence claim survives.

15  *Centeno v. Bayer HealthCare Pharm. Inc.*, No. 3:14-cv-75-DRH-DGW, 2014 U.S. Dist. LEXIS

16  136234, at *8-9 (S.D. Ill. Sep. 26, 2014) (applying California law and denying dismissal of a

17  negligence claim by finding that "failure to test" is a factual allegation supporting a claim that

18  defendants were negligent and brings it "within the ambit of *Valentine*, which recognizes that testing

19  and inspection duties may be tied to liability for manufacture, design, and failure to warn, even if they

20  are not maintainable as an independent duty."); *accord*, *Valentine v. Baxter Healthcare Corporation*,

21  68 Cal. App. 4th 1467, 1485 (Ct. App. 1999) ("The duty to test is a subpart of the other three duties

22  [to safely manufacture, adequately design, and appropriately warn]"); *see also*, *Gordon v. Aztec*

23  *Brewing Co.*, 33 Cal. 2d 514, 520 (Cal. 1949) ("[H]ere was present in this case a strong showing of

24  negligence in the defendant's failure to test the bottles."). As such, Plaintiffs' "***Negligence –*** Failure

25  to Test" claim must be construed as and survive as a negligence claim at minimum. The economic loss

26  _____

27  [16] A threshold issue exists whether Defendant's challenge to allegations of negligent testing is appropriate at the early motion to dismiss stage. *In re Silicone Gel Breasts Implants Prods. Liab.*

28  *Litig.*, 318 F. Supp. 2d 879, 903 (C.D. Cal. 2004) ("the question of whether Defendants breached a duty of care by not testing...would be an issue for the jury.")

rule also does not bar a negligence claim where, as here, Defendant has failed to adequately test its LED lightbulbs and deceived Plaintiff about the product's characteristics. *Hannibal Pictures Inc. v. Sonja Prods. LLC*, 432 Fed. Appx. 700, 701 (9th Cir. 2011) (holding that a jury verdict, in favor of a claim grounded in tort and negligence, was not precluded by the economic loss rule where "one party has lied to the other").

### H. Negligent Misrepresentation has been adequately alleged

As discussed *supra*, the economic loss rule does not bar this cause of action because it sounds in fraud. *See*, *e.g.*, *Hannibal Pictures Inc. v. Sonja Prods. LLC*, 432 Fed. Appx. 700, 701 (9th Cir. 2011) (holding a jury verdict, in favor of a claim grounded in tort and negligence, was not precluded by the economic loss rule where "one party has lied to the other"); *see also*, *Kalitta Air, L.L.C. v. Central Texas Airborne Sys. Inc.*, 315 Fed. Appx. 603, 607 (9th Cir. 2008) (holding negligent misrepresentation is a "species of fraud" under California law, for which "economic loss is recoverable"). As articulated by the California Supreme Court in *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979 (Cal. 2004), torts of "deceit" fall within an exception to the economic loss rule. *Id.* at 989. California Civil Code § 1710(2), which defines deceit as "[t]he assertion, as a fact, of that which is not true, by one who has ***no reasonable ground*** for believing it to be true," contemplates negligent statements to fall within the ambit of exclusion from the economic loss rule. As such, negligent misrepresentation is a viable claim. To the extent Defendant contends reliance has not been adequately alleged, it is an argument without merit. Complaint at ¶¶ 1, 50, 67, 90, 96.

### I. Plaintiff has Adequately Alleged his Breach of Express Warranty Claims

Cree's challenge to Plaintiff's breach of express warranty claims demonstrates that Cree has misperceived the nature of the claim entirely. While Cree's challenge suggests that Plaintiff is alleging that Cree breached its five-year or ten-year limited warranties, it is clear from a review of the complaint that Plaintiff is *actually alleging* that Cree's misrepresentations concerning product life and energy savings created express warranties that the products would perform at these standards. Complaint at ¶ 115 ("Defendant's written affirmations of fact, promises and/or descriptions constitute a 'written warranty …'").  Accordingly, since Cree makes no challenge to Plaintiff's express warranty claims so

- 17 -

far as they are predicated on Cree's misleading statements on its products' labeling and packaging, in its marketing statements and on its website, there is no basis for dismissing Plaintiff's breach of express warranty claims.[17]

### J. Plaintiff has Adequately Alleged that Cree was Aware of the Defect

So far as Young's claims are premised on fraudulent conduct, Young must allege that Cree was aware of the defect and hence was aware of the falsity of its claims.  However, for Plaintiff's non-fraud claims, *see* section III.C *supra*, there is no requirement that Plaintiff must allege that Cree had knowledge of the defect. Thus, Cree's argument about the adequacy of Plaintiff's allegations regarding notice is only applicable to Plaintiff's fraudulent misrepresentation and concealment claims.  As set forth in detail below, Plaintiff has properly alleged that Cree had notice of the defect.

Under Rule 9(b), malice, intent, knowledge, and other mental states may be averred generally. As matters peculiarly within the opposing party's knowledge, pleadings based on information and belief may satisfy Rule 9(b) if the complaint also states the facts on which the belief is founded.  *Wool*, 818 F.2d at 1439. As part of the Energy Guide Label Program, Cree was required to conduct specific testing of the life expectancy of its light bulbs.  In addition to this, Cree also operates limited warranty programs for consumers who experience problems with Cree light bulbs.  Although Plaintiff makes no allegation that Cree was on notice of the defect by virtue of its testing and warranty programs, at bare minimum there is a reasonable inference that Cree had notice of the defect by virtue of these programs. *See Kowalsky v. Hewlett–Packard Co.*, No. 10–CV–02176–LHK, 2011 WL 3501715 (N.D. Cal. Aug. 10, 2011) (plaintiff adequately alleged notice of defect where the complaint alleged that the defendant performed testing that should have revealed the defect).  Although Plaintiff does not know

---

[17] It is well-established that statements made in promotional materials, advertisements, and brochures can create express warranties. *See, e.g., Keith v. Buchanan*, 220 Cal.Rptr. 392, 396 (Cal. Ct. App. 1985) ("It is clear that statements made by a manufacturer or retailer in an advertising brochure which is disseminated to the consuming public in order to induce sales can create express warranties.").

what either of these programs revealed concerning the defect (*i.e.*, since such information is peculiarly within the possession of Cree), Young may plead upon information and belief that Cree learned of the defect through testing and/or warranty claims.[18]

While Cree heavily relies upon *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012), for purposes of arguing that Plaintiff has failed to adequately allege notice, that reliance is misplaced. In *Wilson* the plaintiff tried to show notice of a defect based on the defendant's access to aggregate performance data and customer complaints (some of which were dated after the plaintiff had purchased the product in question).   Here, it is known that Cree had to perform significant testing on the life expectancy of its bulbs as part of the federal government's Energy Guide Label program. This testing concerned a topic central to Plaintiff's claims that Cree made misrepresentations (known or unknown) to Plaintiff and the class he seeks to represent and serves as a basis for alleging, upon information and belief, that Cree had notice of the defect.  *See Kowalsky*, 2011 WL 3501715 (plaintiff adequately alleged notice of defect where the complaint alleged that the defendant performed testing that should have revealed the defect). As noted above, Cree also acquired notice of its bulbs failing prematurely by virtue of its warranty program.  Thus, Cree had notice of the defect through sources not at issue in the *Wilson* case, and the motion should be denied.

### K.  Plaintiff has Standing to Assert Claims for Substantially Similar Products

Plaintiff's complaint alleges that Cree manufactured and sold various LED lightbulbs all of which contain similar misrepresentations regarding the longevity and energy saving attributable to the bulbs.  Because the allegations involve the same type of product and also involve the same type of misrepresentations, Plaintiff has standing to assert claims on behalf of absent class members for products he did not purchase. "[A] Plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Brown v. Hain Celestial Grp., Inc.*, 913 F.Supp.2d 881,

---

[18] If necessary, Plaintiff will file an amended complaint to include these allegations should the Court deem it appropriate.

890 (N.D. Cal. 2012); *see also Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910, 2012 WL 2990766, at \*11 (N.D. Cal. July 20, 2012) (noting that, in cases that decide whether individual plaintiffs have standing to represent purchasers of other products, "the critical inquiry seems to be whether there is sufficient similarity between the products purchased and not purchased").  As the court explained in *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012), "[t]he majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." The Miller court went on to note that "substantial similarity" could be ascertained by examining "product composition" and "whether the alleged misrepresentations are sufficiently similar across product[s]." *Id*.

Here, Plaintiff has standing to assert claims on behalf of all purchasers of Cree LED lightbulbs since the products are of the same kind and include nearly identical misrepresentations concerning longevity and energy savings amongst other things.  *See* Complaint at ¶¶ 17 (identifying the three types of LED lightbulbs manufactured by Cree – Standard A-Type, Reflector (Flood/Spot), and Specialty), 18 (identifying the six types of Standard A-Type LED bulbs manufactured by Cree), 22 (identifying the eight variations of Cree Reflector (Flood/Spot) products manufactured by Cree), 24 (identifying the two varieties of Cree LED "Specialty" line manufactured by Cree); *see also* ¶ 27 (identifying labeling, advertising, and marketing misrepresentations by Cree); *see also id*. at ¶¶19-21 and 23-25 (specifying the misrepresentations that Cree made as it each variety of the Standard A-Type, Reflector (Flood/Spot), and Specialty type products).  Plaintiff's complaint supports an inference that the products are substantially similar (LED lightbulbs) and that Cree made similar misrepresentations as to each of these products (*i.e.*, overestimating the useful lifetime of its LED lightbulbs, that the lightbulbs have a 10 Year Warranty, that the products carry a 100% satisfaction guarantee, and that the products will save hundreds of dollars per bulb over its useful lifetime).

Courts have made a finding of substantial similarity in comparable cases.  For instance, in *Sonner v. Schwabe North America, Inc.*, 231 F.Supp.3d 502, 507 (C.D. Cal. 2017), the court determined that the named plaintiff who had purchased Ginkgold had standing to pursue claims on behalf of class members who had purchased Ginkgold Max.  In so ruling, the court observed that both

- 20 -

products are marketed under the same contested benefit—that they are for "Mental Sharpness," "Memory" and "Concentration"—and feature the same active ingredient, EGb 761.  *Id*.  Although Ginkgold and Ginkgold Max contained different amounts of EGb 761, the court determined this was a distinction without a difference and, thus, found the named plaintiff had standing to pursue claims on behalf of both groups of purchasers since the products were substantially similar.  Likewise, the instant lawsuit is analogous regardless of distinctions such a wattage and whether the bulb is intended for indoor or outdoor use since all bulbs are LED bulbs and all bulbs were marketed using similar misrepresentations.[19]

Importantly, however, even if the Court were to ultimately consider whether Plaintiff has standing as to unpurchased products, Cree's standing argument is premature and should be reserved until class certification.  *Koh v. S.C. Johnson & Son, Inc*., No. C-09-00927 RMW, 2010 WL 94265, at *3 (N.D. Cal. Jan. 6, 2010) (denying defendants motion to dismiss plaintiff's claims relating to products he did not purchase, noting "this is not a case in which plaintiff is asserting claims against defendants that never harmed him," and "defer[ing] ruling on the issue until the class certification stage").  *See also Cardenas v. NBTY, Inc*., 870 F.Supp.2d 984, 992 (E.D. Cal. 2012); *Brown Hain Celestial Grp., Inc.*, 913 F.Supp.2d at 890–92 (N.D. Cal. 2012); *Burton v. Hodgson Mill, Inc*., 16-CV-1081-MJR-RJD, 2017 WL 1282882, at *5 (S.D. Ill. Apr. 6, 2017); *Bietsch v. Sergeant's Pet Care Products, Inc.,* 15 C 5432, 2016 WL 1011512, at *9 (N.D. Ill. Mar. 15, 2016); *Quinn v. Walgreen Co*., 958 F. Supp. 2d 533, 542 (S.D.N.Y. 2013); *Elias v. Ungar's Food Products, Inc.,* 252 F.R.D. 233, 243 (D. N.J. 2008) (granting in part motion for class certification and noting, "the fact that the named plaintiffs did not purchase some of the products at issue does not render plaintiffs' claims atypical from the potential class members nor does it defeat commonality").  Cree's standing arguments regarding unpurchased products are thus without merit and should be denied.

---

[19] *See also Zapata Fonseca*, 2016 WL 4698942, at *4 (finding plaintiff had standing to pursue claims on behalf of all purchasers of Defendant's Octopus Products [Octopus in Garlic, Octopus in Olive Oil, Octopus in Pickled Sauce, and Octopus in Hot Sauce] where the product packing was substantially similar, where the plaintiff alleged the defendant had implemented a common scheme to use squid rather than octopus).

1

**L.  Privity Is Not A Bar To Plaintiff's Breach Of Implied Warranties Claim**

2        Privity of contract is generally required in order to sustain an implied warranty claim under

3   California law.  *Paramount Farms Int'l LLC v. Ventilex B.V.*, 500 F. App'x 586, 588–89 (9th Cir.

4   2012).  However, there is an exception where the plaintiff's decision to purchase the product was made

5   in reliance on the manufacturers' written representations in labels or advertising materials. *Fieldstone*

6   *Co. v. Briggs Plumbing Prod., Inc.*, 54 Cal. App. 4th 357, 369, 62 Cal. Rptr. 2d 701, 708 (1997)

7   (citations omitted); see also *In re HP Inkjet Printer Litig.*, No. C 05-3580 JF, 2006 WL 563048, at *6

8   (N.D. Cal. Mar. 7, 2006) (relying on *Fieldstone* for proposition that there is an exception to the privity

9   requirement for breach of implied warranty claims where the plaintiff relies on the manufacturer's

10  promotional materials; dismissing implied warranty claim because plaintiffs had failed to allege

11  reliance on the defendant's advertisements or promotional materials);   *T & M Solar & Air*

12  *Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 874–75 (N.D. Cal. 2015) ("There are

13  'particularized exceptions' to this privity requirement, such as 'when the plaintiff relies on written

14  labels or advertisements of a manufacturer'…"  Holding that the breach of express and implied breach

15  of warranty claims were actionable because the pleading sufficiently alleged that the plaintiffs relied

16  on the defendant's representations.)

17        This case falls squarely within the reliance exception to the privity requirement for breach of

18  implied warranty claims.  Plaintiff alleges that Cree made numerous misrepresentations concerning

19  the quality and longevity of the Lightbulbs.  Complaint at ¶¶15-27.  And, Plaintiff alleges that he relied

20  to his detriment on those materials. *Id.* at ¶¶ 1, 50, 67, 90, 96. Accordingly, lack of privity—the only

21  challenge made to the sufficiency of the breach of implied warranties claim—is not a bar to this cause

22  of action.

23  **M. The CLRA Authorizes Punitive Damages**

24        Defendant's request that Plaintiff's claims for punitive damages under the CLRA and for

25  negligent misrepresentation should be denied because "a request for damages is not a claim and not

26  subject to a Rule 12(b)(6) motion to dismiss." *Grimm v. APN, Inc.*, No. 817CV00356JVSJCG, 2017

27  WL 6398148, at *8 (C.D. Cal. Aug. 31, 2017) (citing *Shimy v. Wright Med. Tech., Inc.*, No. 2-14-CV-

28  04541-CAS, 2014 WL 3694140, at *4 (C.D. Cal. July 23, 2014); *see also Oppenheimer v. Sw. Airlines*

*Co.*, No. 13-CV-260-IEG-BGS, 2013 WL 3149483, at *4 (S.D. Cal. June 17, 2013) (collecting cases)). However, the CLRA explicitly authorizes the award of punitive damages.  Cal. Civ. Code § 1780 (West) ("(a) Any consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person to recover or obtain any of the following:… (4) Punitive damages."); *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1137 (C.D. Cal. 2005) ("A plaintiff suing under the CLRA may recover actual and punitive damages…"); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 597 (C.D. Cal. 2008) (same).

*Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091 (S.D. Cal. 2015), the case relied on by Defendant for the proposition that the punitive damages under the CLRA must fail because of a failure to allege that an "officer, director, or managing agent of the corporation" must have consciously disregarded, authorized, or ratified each act of "oppression, fraud, or malice" is not at all to the contrary.[20]  Indeed, in *Kanfer* the court rejected the defendant's position, holding that allegations that the defendant continued to sell the production at issue despite having been notified of the CLRA violation were sufficient to state a claim for punitive damages.  *Kanfer*, 142 F. Supp. 3d. at 1108.

Here, too, Plaintiff alleges that he notified Defendant of the CLRA violation, Complaint at ¶ 75, but Defendant "concealed… the material facts that the LED Lightbulbs would not actually last for the period or lifespan represented and that Plaintiff and Class members would not realize the promised cost savings."  *Id*. at ¶ 48.  Further, Cree falsely "represented, directly or indirectly, expressly or by implication, that the LED Lightbulbs would last for specified periods or lifespans… [and] should have disclosed this information because it was in a superior position to know the true facts related to the LED Lightbulbs, was aware of the nature, qualities, reliability, durability and lifespan of the LED Lightbulbs at the time it sold the Lightbulbs to consumers..."  Complaint at ¶¶ 29, 49.   These allegations illustrate that Defendant acted with malice and/or engaged in fraud, thereby confirming

---

[20] For punitive damages, a plaintiff only need to allege one of the three elements of oppression, fraud, or malice under Cal. Civ. Code § 3294(a). *Tsan v. Seventh Generation, Inc.*, No. 15-CV-00205-JST, 2015 WL 6694104, at *7 (N.D. Cal. Nov. 3, 2015) (citing *Allen v. Hyland's Inc.*, No. CV 12–01150 DMG (MANx), 2013 WL 1748408, at *2 (C.D. Cal. Apr. 11, 2013)).

1  that punitive damages constitute an appropriate remedy. *See e.g. Sloan v. 1st Am. Auto. Sales Training*,

2  No. 2:16-cv-05341-ODW (SK), 2017 WL 1395479, at *3 (C.D. Cal. Apr. 17, 2017) ("Punitive

3  damages are potentially available here because Plaintiff has alleged that Defendants acted with

4  malice.").

5  **IV.     CONCLUSION**

6      The instant Motion should be denied. In the alternative, Plaintiff seeks leave to amend.

7  Dated: February 22, 2018                          By:    *s/ S. Clinton Woods*

8                                                          S. Clinton Woods (CA #246054)

9                                                          cwoods@audetlaw.com
                                                           Michael McShane (CA #127944)

10                                                         mcshane@audetlaw.com

11                                                         Ling Y. Kuang (CA #296873)
                                                           lkuang@audetlaw.com

12                                                         AUDET & PARTNERS, LLP

13                                                         711 Van Ness Avenue,
                                                           Suite 500

14                                                         San Francisco, CA 94102-3275

15                                                         Phone (415) 568-2555

16                                                         Fax (415) 568-2556

17                                                         Charles J. LaDuca
                                                           Alexandra C. Warren

18                                                         awarren@cuneolaw.com

19                                                         CUNEO GILBERT & LADUCA, LLP

20                                                         4725 Wisconsin Avenue NW
                                                           Suite 200

21                                                         Washington, DC 20016

22                                                         Phone: 202-789-3960 \
                                                           Fax: 202-589-1813

23

24                                                         Melissa S. Weiner
                                                           wiener@halunenlaw.com

25                                                         HALUNEN LAW

26                                                         1650 IDS Center, 80 S Eighth St.
                                                           Minneapolis, Minnesota 55402

27                                                         Phone: (612) 605-4098 \

28                                                         Fax: (612)605-4099

1
2
3
4
5

Jason P. Sultzer
sultzerj@thesultzerlawgroup.com
Adam R. Gonnelli
gonnellia@thesultzerlawgroup.com
THE SULTZER LAW GROUP, PC
14 Wall Street, 20th Floor
New York, NY 10005

6
7

*Attorneys for Plaintiff Jeff Young*

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS          4:17-CV-06252-YGR