UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFF YOUNG,<br><br>   Plaintiff,<br><br> v.<br><br>CREE, INC.,<br><br>   Defendant. | Case No. 17-cv-06252-YGR (TSH)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STRIKE DEPOSITION ERRATA**<br><br>Re: Dkt. No. 70 |

The parties filed a joint discovery letter concerning corrections Plaintiff Jeff Young made to the transcript of his September 18, 2018 deposition pursuant to Federal Rule of Civil Procedure 30(e). Defendant Cree, Inc., moves to strike eight of the corrections. Young opposes the motion, contending the corrections are appropriate.

Rule 30(e)(1) provides:

> On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:
>
> (A) to review the transcript; and
>
> (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

In a footnote, Cree argues that Young fails the procedural requirement that there be a "request by the deponent or a party before the deposition is completed." However, while the colloquy on page 131 of the transcript is not a model of clarity, Young's counsel does appear to request that the transcript be emailed to him so he can send it to Young to review. ECF No. 70-1. That's good enough.

Turning to the content of the changes, on its face Rule 30(e) provides no limitation on what

1  "changes in form or substance" are permitted.  However, the Ninth Circuit has held that "Rule

2  30(e) is to be used for corrective, and not contradictory, changes." *Hambleton Bros. Lumber Co.*

3  *v. Balkin Enterprises, Inc.*, 397 F.3d 1217, 1226 (9th Cir. 2005).  *Hambleton* arose in the summary

4  judgment context.  In that case, "[t]he magistrate judge was troubled by the deposition corrections'

5  seemingly tactical timing – the corrections were submitted only after Ballinger's motion for

6  summary judgment was filed – and by their extensive nature." *Id*. at 1225.  "The absence of any

7  stated reasons for the changes supports the magistrate judge's concern that the 'corrections' were

8  not corrections at all, but rather purposeful rewrites tailored to manufacture an issue of material

9  fact regarding Ballinger and to avoid a summary judgment ruling in his favor." *Id*.  The Court of

10 Appeals explained that "[u]nder our 'sham' affidavit rule, a party cannot create an issue of fact by

11 an affidavit contradicting his prior deposition testimony." *Id*. (citation and quotation marks

12 omitted).  The Ninth Circuit analogized "this type of 'sham' correction [as] akin to a 'sham'

13 affidavit." *Id*.; *accord Mullins v. Premier Nutrition Corp*., 178 F. Supp. 3d 867, 889 (N.D. Cal.

14 2016) ("A deposition is not a take home examination.") (citation and quotation marks omitted).

15 Young argues that because *Hambleton* arose in the summary judgment context and

16 analogized the corrections at issue to a sham affidavit, the ability to strike errata that contradict

17 deposition testimony should be limited to the context of a summary judgment motion.  However,

18 the weight of authority holds that "'[e]ven where changes to a deposition transcript are not used as

19 a sham to create an issue of fact [in the context of a motion for summary judgment], Rule 30(e)

20 may only be used for corrective, and not contradictory, changes.'" *Lee v. The Pep Boys-Manny*

21 *Moe & Jack of California*, No. 12-cv-5064 JCS, 2015 WL 6471186, *2 (N.D. Cal. Oct. 27, 2015)

22 (quoting *Lewis v. The CCPOA Ben. Trust Fund*, No. 08-cv-3228 VRW (DMR), 2010 WL

23 3398521, *3 (N.D. Cal. Aug. 27, 2010)).  In *Lee*, for example, the pending motion was one for

24 class certification, which is the same context as here.  *See* ECF No. 66, 70 (this letter brief was

25 filed eight days before Young's class certification motion is due).  And in *Lewis* and *Teleshuttle*

26 *Techs. LLC v. Microsoft Corp*., No. 04-cv-2927 JW (HRL), 2005 WL 3259992 (N.D. Cal. Nov.

27 29, 2005), the courts ruled on free-standing motions to strike deposition errata, not connected to an

28

underlying substantive motion.[1]

The Court turns, then, to the specific corrections. As noted, Cree challenges eight of them. Strikeouts show deletions, and underlines show additions.

**First correction.** Page 34, line 23 to page 35, line 12.

Mr. Richter: Q: I am going to ask the question again just so we are clear.

In other words, when you see a warranty for a product you buy and say it is a ten-year, let's just say a 100,000 mile power train warranty, you don't understand and expect that every single car lasts 100,000 miles in the power train, some of them are going to break. And what happens then is the manufacturer fixes it, right?

Mr. Woods: Calls for speculation. Object to form. You can answer.

The Witness: I can answer?

Mr. Woods: Yes.

The Witness: Yes, I would expect that it would just be fixed. <u>And I would expect it to last that long.</u>

**Court's ruling:** Simply looking at the transcript, this correction appears legitimate. The question consists of a factual assertion (you don't expect every car to last 100,000 miles) and then a question about something slightly different (manufacturer repairs it, right?) that presumes the factual assertion. The witness answered the question, but since the answer begins with a "yes," it could be interpreted as Young agreeing with everything the attorney said. The correction addresses the presumed factual assertion and – importantly – is the same as the answer he previously gave when asked about it directly on lines 2-3 of page 34 ("I would have expected it to, yes…"). If changes to the transcript were limited to correcting misspellings and transcription errors, then this first correction would not be legitimate. But Rule 30(e) does allow corrections to

---

[1] Nonetheless, not every court has adopted this view. *See Ochoa v. McDonald's Corp.*, No. 14-cv-2098 JD, 2016 WL 13079032, \*1-2 (N.D. Cal. June 2, 2015) (noting the split in authority). In the class certification context – unlike in summary judgment – "the Court may resolve any factual disputes necessary to determine whether there [is] a common pattern and practice that could affect the class as a whole." *Id*. at \*2 (citation, quotation marks and emphasis omitted). Thus, the Court "can give altered testimony the weight it deserves." *Id*. That can be a preferable alternative to the "back-breaking task of evaluating more than 100 transcript changes . . ." *Id*. Here, there are only eight transcript changes being challenged, and it is not a back-breaking task to evaluate them.

the "substance" of an answer, and *Hambleton* does not limit that to misspellings and transcription errors.

Of course, the Court is not supposed to look only at the transcript to determine if the correction is legitimate. Rule 30(e) provides that the deponent must "sign a statement listing the changes and the reasons for making them." The Ninth Circuit has explained that "[a] statement of reasons explaining corrections is an important component of errata submitted pursuant to FRCP 30(e), because the statement permits an assessment concerning whether the alterations have a legitimate purpose." *Hambleton*, 397 F.3d at 1224-24. Here, Young's statement of reasons says:

> To Whom It May Concern,
>
> On September 18, 2018, my deposition was taken in this matter. After reviewing the transcript, I determined that the transcript did not reflect my true testimony in several ways. Thus, on or around October 23, 2018, I submitted errata through my counsel to more accurately reflect my true testimony.
>
> The reasons for the changes included, but were not necessarily limited to: To correct typos (e.g. p. 20), to clarify answers that were not fully accurate and/or where my memory failed me in the moment (e.g., p. 35, 51, 53, 58, 59, 64, 66, 68, 80, 81, 89, 117), to make my testimony consistent (e.g., p. 101, 103, 107, 110), and to correct testimony where I misspoke or otherwise did not understand the question (e.g., p. 123, 124, 126, 127), or a combination of all categories. The errata represent the most accurate statement of my testimony.

ECF No. 74, Ex. A.

This statement of reasons is not helpful. It doesn't claim to list all the reasons for the changes ("not necessarily limited to") and is evasive about the reasons for any particular change ("or a combination of all categories"). Accordingly, this statement of reasons does not aid the Court's review.

**Second correction.** Page 103, lines 9-13.

Mr. Richter: Q: Was there a deciding factor [whether to purchase Cree over competitors]?

A: ~~I don't recall. Something made me decide obviously, but what that exact thing was I don't remember.~~ <u>Yes, I recall that I decided to buy Cree because the length of the product life, warranty and cost savings.</u>

**Court's ruling:** This correction is improper. Young is changing his answer to nearly the

4

opposite of what he said. Also, context makes this correction worse because the testimony on lines 9-13 of page 103 follows several pages of questioning in which Young testified that he could not recall why he bought the Cree bulbs or what he was comparing them too. The original testimony is consistent with his previous answers, and the "corrected" testimony is not. *See Lee*, 2015 WL 6471186 at *2 ("changes from 'I don't know' to an affirmative 'yes' . . . are likewise contradictory").

**Third correction.** Page 110, lines 12-18:

Q: So is it a fair statement to say that as you sit here today you really don't remember what you read on the package that you—that was on the bulb that you purchased?

Mr. Woods: Objection, mischaracterizes the testimony. You can answer.

The Witness: ~~That is fair to say.~~ I remember things in general as I have previously testified.

**Court's ruling:** This correction is improper. Again, context is important. This question follows several pages of testimony in which Young testified that he did not remember what he read on the package, but he would have read the warranty. The original testimony is consistent with his prior answer. The correction is not and is also vague and arguably nonresponsive.

**Fourth correction.** Page 117, lines 11-14:

Q: I want to make sure, again, the record's clear. You don't have a recollection or you didn't see it [Cree Television Ad].

A: ~~I will go so far as unlikely.~~ I don't recall.

**Court's ruling:** The original and corrected answers are not all that different. The original answer was probabilistic ("unlikely" he saw the ad) but only slightly ("I will go so far as…"). The corrected answer is that he cannot recall one way or the other whether he saw the ad. The original answer is closer to Young's testimony on lines 23-25 of page 117, and the corrected answer is closer to his testimony on page 116, line 24 to page 117, line 10. That is, Young's initial answer was that he did not recall seeing the ad, and then through repeatedly asking the same question, Cree's counsel tried to push him to say he *probably* did not see it, which he eventually said. Since both versions of the answer remain in the transcript and were not corrected, it is unclear to the

Court why the correction at lines 11-14 of page 117 matters at all. Therefore, the Court declines to strike this correction.

**Fifth correction.** Page 123, lines 10-14:

Q: Do you know what it means to be a class representative?

A: ~~Not really, I know you have got to pay attention to what's going on, which I am not doing well.~~ <u>Yes.</u>

**Sixth correction.** Page 124, lines 3-5:

Q: Have you kept abreast of what is going on in this case?

A: ~~Not as well as I should have.~~ <u>Yes.</u>

**Seventh correction.** Page 126, lines 11-19:

Mr. Richter: Q: Do you have any understanding of what you are going to be required to do as a class representative going forward in this case?

A: ~~I have fear of what I am going to have to do.~~ <u>Yes.</u>

Q. What do you fear?

Mr. Woods: He is asking whether you have an understanding, just say yes or no.

The witness: Sorry, yes.

Mr. Richter: Q. What do you think you are going to have to do?

A. I will have to testify in court.

**Eighth correction.** Page 127, lines 9-15:

Mr. Richter: Q. In a lawsuit the parties can ask each other to produce documents, to answer written questions, things like that.

Do you have an understanding that you might be required to review things, pleadings and discovery responses?

A: ~~No.~~ <u>Yes.</u>

**Court's ruling:** The Court groups the fifth through eighth corrections together. They are part of a sequence of testimony in which Young is asked for his understanding of his role as a class representative and his understanding about the case. Here, the fifth, sixth and eighth corrections change his testimony mostly to the opposite of what he said, and context does not

6

suggest the revised testimony is what he meant to say.  *See Lewis*, 2010 WL 3398521 at *3 (striking "about-face reversals" in testimony).  The seventh correction is legitimate because the original answer was nonresponsive and the witness himself corrected his answer three lines later.

Accordingly, the Court **STRIKES** the corrections to page 103, lines 9-13; page 110, lines 12-18; page 123, lines 10-14; page 124, lines 3-5; and page 127, lines 9-15 of Young's deposition transcript.  The remainder of the motion is **DENIED**.

**IT IS SO ORDERED.**

Dated: January 18, 2019

THOMAS S. HIXSON
United States Magistrate Judge