1  MICHAEL MCSHANE (SBN: 127944)
   mmcshane@audetlaw.com
2  S. CLINTON WOODS (SBN: 246054)
   cwoods@audetlaw.com
3  **AUDET & PARTNERS, LLP**
   711 Van Ness Avenue, Suite 500
4  San Francisco, CA 94102-3275
   Telephone: (415) 568-2555
5  Facsimile: (415) 568-2556

6  MELISSA S. WEINER (Admitted *Pro Hac Vice*)
    mweiner@pswlaw.com
7  JOSEPH C. BOURNE (SBN: 308196)
    jbourne@pswlaw.com
8  **PEARSON, SIMON & WARSHAW, LLP**
   800 LaSalle Avenue, Suite 2150
9  Minneapolis, MN 55402
   Telephone: (612) 389-0600
10 Facsimile:  (612) 389-0610

11 *Attorneys for Plaintiffs*

12 [Additional Counsel Listed in Signature Block]

13

14                **UNITED STATES DISTRICT COURT**

15               **NORTHERN DISTRICT OF CALIFORNIA**

16                      **OAKLAND DIVISION**

17 JEFF YOUNG, individually and on behalf of       CASE NO. 4:17-cv-06252-YGR
   all others similarly situated,
18                                                 **CLASS ACTION**

19            Plaintiff,

20      vs.                                        **PLAINTIFF'S MEMORANDUM OF LAW
                                                   IN SUPPORT OF MOTION FOR CLASS
21                                                 CERTIFICATION**

22 CREE Inc.,                                      **Redacted Filing**

23            Defendant.
                                                   Date:    May 28, 2019
24                                                 Time:    2:00 p.m.
                                                   Crtrm.:  1, 4th Floor, Oakland
25                                                 Complaint Filed:    October 27, 2017
                                                   Trial Date:         N/A
26

27

28

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................. 1

II.     FACTS ............................................................................................... 2

 A.      Development and Marketing of Cree Bulbs ............................... 2

 B.      Cree Employs a Pervasive Marketing Strategy That Touts Longevity and Energy/Cost Savings ................................................................. 2

  1.      Cree's Labels Uniformly Deliver its Marketing Message ........... 2

  2.      Cree's Non-Label Marketing Representations Reinforce its Uniform Labeling Strategy ................................................................. 3

 C.      Cree's Warranty Offer Emphasizes its Strategy of Touting Longevity and the Alleged Resulting Energy/Cost Savings ................................. 4

 D.      Sales ...................................................................................... 4

 E.      Price Premium ........................................................................ 5

 F.      The Lifetime of the Bulbs is a Common Question that Will be Determined with Common Evidence ...................................................... 5

 G.      Mr. Young's Experience .......................................................... 6

III.    LEGAL ARGUMENT ......................................................................... 6

 A.      Legal Standard ....................................................................... 6

 B.      This Case is Well Suited for Class Treatment ........................... 7

 C.      Fed. R. Civ. P. 23(a) is Satisfied ............................................ 7

  1.      The Class Is So Numerous That Joinder Is Impracticable .......... 8

  2.      Questions of Law or Fact Are Common to the Proposed Class ... 8

  3.      Plaintiffs' Claims Are Typical of Class Members' Claims ........ 10

  4.      Plaintiff and Counsel Will Adequately Represent The Classes ... 11

 D.      The Proposed Classes Satisfy the Requirements of Rule 23(b)(3) ... 12

  1.      Common Issues Predominate Over Individual Issues ............... 13

  2.      Plaintiff's Consumer Protection Claims .................................. 13

  3.      Fraudulent Misrepresentation and Concealment ..................... 15

  4.      Breach of Express and Implied Warranties ............................. 15

  5.      Unjust Enrichment ............................................................... 16

  6.      Common Evidence Can Prove Each Cause of Action ............... 16

i

E.      The Allocation of Damages Does Not Defeat Certification ....................................18

F.      A Class Action Is Superior to Individual Actions ...................................................21

IV.   RULE 23(b)(2) IS SATISFIED ........................................................................................21

V.    CONCLUSION...................................................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Alcantar v. Hobart Serv.*, 800 F.3d 1047 (9th Cir. 2015) .................................................7

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................13

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455 (2013) ..............................7, 13, 17

*Astiana v. Kashi Co.*, 291 F.R.D. 493 (S.D. Cal. 2013) ..............................14, 16, 18, 21

*Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010)....................................7

*Bias v. Wells Fargo & Co.*, 312 F.R.D. 528 (N.D. Cal. 2015) .................................13, 18

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975)..........................................................17

*Bowerman v. Field Asset Servs., Inc.*, 242 F. Supp. 3d 910 (N.D. Cal. 2017) .............................7

*Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531 (9th Cir. 2016)....................................20

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) .................................6, 18

*Broomfield v. Craft Brew Alliance, Inc.*,
        No. 17-cv-1027-BLF, 2018 WL 4952519 (N.D. Cal. Sept. 25, 2018) ...............................19

*Brown v. Hain Celestial Grp., Inc.*,
        No. 11-CV-03082-LB, 2014 WL 6483216 (N.D. Cal. Nov. 18, 2014)..............................13

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) ....................................21

*Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008) ....................................16

*Collins v. eMachines, Inc.*, 134 Cal. Rptr. 3d 588 (Cal. Ct. App. 2011) ..............................15

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) .......................................................18, 19

*Congdon v. Uber Techs., Inc.*, 291 F. Supp. 3d 1012 (N.D. Cal. 2018)..........................10

*Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ................................8

*Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326 (1980) .....................7

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ..............................8, 10, 11

*Erica P. John Fund, Inc. v. Haliburton Co.*, 563 U.S. 804 (2011)...................................13

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp. Inc.*,
        326 F.R.D. 592 (N.D. Cal. 2018)..................................................13, 14, 15, 19

*Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981).................................................................7

*Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084 (N.D. Cal. 2018) ..............................16, 19, 21

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ....................................................8, 11, 13

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)..........................................................10

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir. 1964.......................................8

*Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013) ....................................................................14

*Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258 (S.D. Cal. 1988)....................................................8

*In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334 (N.D. Cal. 2018) .......................passim

*In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919 (C.D. Cal. 2015)....................................................21

*In re Dial Mktg. & Sales Practices Litig.*, 320 F.R.D. 326 (D.N.H. 2017) ....................................19

*In re Ferrero Litig.*, 794 F. Supp. 2d 1107 (S.D. Cal. 2011)...........................................................15

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
    No. 09-CV-1967 CW, 2013 WL 5979327 (N.D. Cal. Nov. 8, 2013)................................21

*In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350–51 (N.D. Cal. 2005)............................8

*Just Film, Inc. v. Buono*, 847 F.3d 1108 (9th Cir. 2017) ................................................................17

*Kasky v. Nike, Inc.*, 45 P.3d 243 (Cal. 2002) ................................................................................14

*Kremens v. Bartley*, 431 U.S. 119 (1977) .......................................................................................12

*Kumar v. Salov N. Am. Corp.*,
    No. 14-CV-2411-YGR, 2016 WL 3844334 (N.D. Cal. July 15, 2016).............11, 13, 15, 19

*Leyva v. Medline Indus. Inc.*, 716 F.3d 510 (9th Cir. 2013).....................................................7, 18

*Lilly v. Jamba Juice Co.*, 308 F.R.D. 231 (N.D. Cal. 2014)..............................................................6

*Nat'l Fed'n of Blind v. Target Corp.*, 582 F. Supp. 2d 1185 (N.D. Cal. 2007)..............................12

*Opperman v. Path, Inc.*,
    No. 13-cv-00453-JST, 2016 WL 3844326 (N.D. Cal. July 15, 2016)................................21

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) .................................................................................7

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) ................................................................8, 11, 21

*Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466 (C.D. Cal. 2012).........................................12

*Trazo v. Nestlé USA, Inc.*, 113 F. Supp. 3d 1047 (N.D. Cal. 2015) ...............................................19

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) ......................................................13, 18

*Vasquez v. Superior Court*, 484 P.2d 964 (Cal. 1971)..................................................................14

*Wahl v. Am. Sec. Ins. Co.*, No. 08-CV-00555 RS, 2010 WL 1881126 (N.D. Cal. May 10, 2010) .13

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ..............................................................6, 9

*Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658 (C.D. Cal. 2009) ......................................................12

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010)...............................9, 17

*Wolph v. Acer Am. Corp.*, 272 F.R.D. 477 (N.D. Cal. 2011) ..........................................................6

**Statutes**

Cal. Com. Code § 231.....................................................................................................................15

Cal. Com. Code § 2314...................................................................................................................15

Fed. R. Civ. P. 23....................................................................................................................passim

# I.  **INTRODUCTION**

In this case, Defendant Cree ("Defendant" or "Cree") has undertaken a common and pervasive marketing and labeling strategy whereby it lures consumers to purchase LED lightbulbs[1] based on promises of longevity as compared to the competitor lightbulbs, which allegedly results in energy and cost savings, with a performance warranty. It is these promises that allow Cree to command a premium price for the Bulbs.

However, Cree's labeling and marketing representations are false and deceptive. The LED Lightbulbs do not last as long as promised, and thus, consumers do not enjoy the promised energy and cost savings benefits. Accordingly, consumers overpaid on a class-wide basis for LED Lightbulbs. The analysis undertaken by Plaintiff's expert Stefan Boedeker of Berkeley Research Group shows that the economic loss suffered by Class members as a result of Cree's false advertising of the LED Lightbulbs is ███████ of the purchase price Class members paid for the LED lightbulbs. *See* Expert Report of Stefan Boedeker, ¶ 163, 165 ("Boedeker Report"), attached as Exhibit 1 to the Declaration of Melissa S. Weiner ("Weiner Decl.").

Plaintiff seeks certification of the following class:

All persons in California who purchased Cree LED Lightbulbs for end use, and not resale, during the period from March 2013 to the present (the "Class").[2]

This matter is well suited for class certification and satisfies the requirements outlined in Federal Rule of Civil Procedure 23. Plaintiff's interests are aligned with and typical of those of the Class. Questions common to all Class members will predominate at the trial of this matter. The uniformity in labeling and marketing of the LED Lightbulbs allows a trier of fact to utilize common evidence to answer the common questions detailed below and assess damages on a class-wide basis. Finally, a class action is the best means of fairly and efficiently adjudicating this matter. Accordingly, Plaintiff respectfully requests that the Court grant the motion for class certification.

---

[1] This case concerns all Cree LED lamps sold for consumer use throughout the Class period. Said lamps are hereinafter referred to as "LED Lightbulbs" or the "Bulbs."

[2] Excluded from the Class are Defendant, Defendant's affiliates, subsidiaries or co-conspirators; employees of Defendant, including its officers and directors; and the Court to which this case is assigned.

## II.   FACTS

### A.   Development and Marketing of Cree Bulbs

████████████████████████████████████. *See* Deposition of Scott Schwab ("Schwab Dep."), Weiner Decl., Ex. 2, at 13:6-8. However, it was as early as 2006, that Cree acknowledged that "opportunity exists to 'own' this space." Weiner Decl., Ex. 4, CREE_00049176. The LED Lighbulbs Cree ultimately brought to market promised in the marketing and advertising to have certain distinguishing qualities from traditional, competing brands: ████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████ Cree's marketing strategy is confirmed in its own marketing research, which indicated that, ████████████ ████████████████████████████████ *See* Weiner Decl., Ex. 6, CREE_00050252. ██████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ████████████ Weiner Decl., Ex. 7, CREE_00059264 (2013 study indicating that 43% of bulb purchasers indicate cost savings and efficiency as the most important driver and 20.4% list long lifespan); Weiner Decl., Ex. 8, CREE_00049050-51 (2014 study citing "longevity of the bulb" and "cost savings from energy saved over the life of the bulb" as primary drivers); Schwab Dep.at 56:9-17 ████████████████████████████████████ ████████████████████████████ This market research gave Cree the foundation for its marketing platform, which would emphasize longevity and the corresponding cost and energy savings.

### B.   Cree Employs a Pervasive Marketing Strategy That Touts Longevity and Energy/Cost Savings

#### 1.   Cree's Labels Uniformly Deliver its Marketing Message

████████████████████████████████████████████████████ ████████████████████████████████. *See* Schwab Dep. at 38:25-39:13;

1  39:18-40:2.

2  ██████████████████████████████████████████████

3  ████████████████████████████████████. Schwab Dep. at 41:20-42:4; 43:7-9;

4  45:5-25; Weiner Decl., Exs. 9-28, CREE_00032364, 32386, 32398, 32399, 32402, 32478, 32634,

5  32814, 32815, 32817, 32825, 32827, 32917, 32919, 32960, 32965, 32971, 32977, 32983, 32985,

6  32987 (Weiner Decl., Exs. 9-28 are hereinafter referred to as the "Cree Label Guidelines"). ████

7  ████████████████████████████████████████████████

8  ████████████████████████████████████████████████

9  Accordingly, all language is uniform—and the marketing strategy consistent—across the Class period.

10  *See id.*

11  While Cree's LED Lightbulbs vary in shape, use, wattage and other factors, all Cree LED

12  Lightbulbs, regardless of any other factor, are marketed and labeled to highlight the following

13  characteristics focused on longevity of the Bulbs: (1) a promise that they will last longer than the

14  comparative incandescent bulb, which therefore results in energy and cost savings; and (2) a warranty

15  for performance, which reinforces the longevity representations. *See*, *e.g.*, Weiner Decl., 29-45; 53,

16  CREE_00032359, 32360, 32361, 32362, 32369, 32379, 32381, 32383, 32385, 32391, 32415, 32418,

17  32431, 32432, 32446, 32448, 32483. This core marketing strategy is tied to specific representations

18  on every LED Lightbulb label and is separate and distinct from the EnergyStar or Lighting Facts

19  panels.

20         2.  Cree's Non-Label Marketing Representations Reinforce its Uniform Labeling

21            Strategy

22  Cree's non-label marketing representations reinforce the strategy to tout longevity, which

23  claim is printed on every single LED Lightbulb label. Specifically, the non-labeling marketing touts

24  that the Bulbs have a lifespan that vastly exceeds that of incandescent competing bulbs. The following

25  are examples of the marketing promises:

26      •  "save money now and save money later" by purchasing the "100-watt Cree LED bulb [that]

27         looks and lights like a traditional incandescent bulb, but uses 82% less energy and is

28         designed to last 25 times longer." Weiner Decl., Ex. 46, CREE_000004.

3

- The bulbs "look and light like an incandescent, while using up to 85% less energy and lasting 25 times longer," which are "Built to light and last… Covered by Cree's industry-leading 10-year limited warranty." Weiner Decl., Ex. 47, CREE_00032357.

Cree's website reinforces this strategy as well, asserting with respect to its 100-Watt Replacement Standard A-Type bulbs that "Unlike some others, Cree doesn't compromise" and "Long LED lifetime lasts 22+ years (25,000 hours), up to 2x as long as the cheap LED bulbs." Weiner Decl, Ex. 56. Furthermore, Cree claims with respect to its 40/60/75-Watt Standard A-Type LED bulbs that "Longer LED lifetime lasts 22+ years (25,000 hours), up to 6x as long as the cheap LED bulbs." Weiner Decl., Ex. 57.

**C.    Cree's Warranty Offer Emphasizes its Strategy of Touting Longevity and the Alleged Resulting Energy/Cost Savings**

This promise to consumers ties in perfectly with Cree's overall marketing strategy of focusing on longevity in conjunction with cost and energy savings—as a warranty or "satisfaction guarantee" reinforces the longevity promises in the labeling and marketing.

This warranty representation allows Cree to command a premium price for the Bulbs. *See* Boedeker Report.

**D.    Sales**

Weiner Decl. Exh. 56.

Cree sells hundreds of thousands of Bulbs per month nationwide through THD alone.

4

Although discovery has yet to reveal the number of California sales, California ranks first in population in the United States, representing approximately 12% of the nation's population, meaning that the number of sales for just the time period noted will be in the hundreds of thousands. *See* https://www.census.gov/search-results.html?searchType=web&cssp=SERP&q=california%20state%20population (last viewed Jan. 17, 2019).

### E.  Price Premium

Plaintiff and the Class members paid a price premium for the LED Lightbulbs because of the false representations regarding longevity that were uniformly found on the labeling and in the marketing of the Bulbs during the Class period. Performing a conjoint analysis using data gathered from scientifically conducted survey research, expert Stefan Boedeker determined that each purchaser who bought the LED bulbs with the false longevity claims overpaid by

### F.  The Lifetime of the Bulbs is a Common Question that Will be Determined with Common Evidence

Plaintiff has alleged that the front of label representations, which are reinforced in the overall marketing strategy, promise longevity far longer that the Bulbs actually last. *See* Am. Compl., Dkt. No. 48, ¶2. Specifically, Plaintiff alleged "to the detriment of the consumer, Cree's claims regarding the longevity of the LED Lightbulbs are false. The LED Lightbulbs do not last nearly as long as advertised." *Id.* at ¶7. "Long lifespan, and the reduced power used to create the same amount of light, is what . . . induces consumers to purchase LED Lightbulbs." *Id.* at ¶16.  The Amended Complaint alleges that consumers are promised that they will save money (and energy) in the long term despite the high purchase price point due to the lifetime representations. *Id.* at ¶17. This overall marketing strategy "overpromises the longevity of the Lightbulbs." *Id.* at ¶19. The exact cause of the defect is a

merits issue that will be determined with common evidence and will be applied across the Class as a whole.

### G.    Mr. Young's Experience

On or around April of 2015, Mr. Young purchased three 100W replacement dimmable LED bulbs from THD in Windsor, California. Weiner Decl., Ex. 3, Dep. of Jeffry Young ("Young Dep.") at 98:2-99:21. He paid approximately $15-20 per bulb. *Id*. at 76:15-25. Prior to purchasing the bulbs, Mr. Young reviewed the representations on the label, which included representations about longevity, cost savings, and warranty. *Id.* at 82:10-25; 84:15-85:10. He may have also viewed television advertisements regarding Cree LED bulbs, which contained representations regarding longevity. *Id*. at 85:11-86:23.

As is his custom and practice, before he inserted them into his home wall sconces, he wrote the date of purchase on each bulb before beginning to use the bulbs. *Id*. at 20:12-21:6; 37:21-25. Despite the fact that all three bulbs were warranted to last for 10 years and contained label representations that indicated they would last over 20 years, all three bulbs burned out within 6 months to a year of use. Weiner Decl., Ex. 52 at ¶7. In August of 2016, Mr. Young emailed Cree regarding the failed bulbs but never received a meaningful response. *Id.* at ¶8, Ex. A.

## III.   LEGAL ARGUMENT

### A.    Legal Standard

"Parties seeking class certification must satisfy each of the four requirements of Rule 23(a)— numerosity, commonality, typicality, and adequacy—and at least one of the requirements of Rule 23(b)." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017). The court should conduct a "rigorous analysis" to determine these requirements have been met, which may involve consideration of the merits of the underlying claim to the extent it bears on the suitability of the plaintiff's claims for class treatment. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). "The party seeking class certification bears the burden of demonstrating that by a preponderance of the evidence" these requirements are met. *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 236 (N.D. Cal. 2014). "Any doubts regarding the propriety of class certification generally should be resolved in favor of certification." *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 481 (N.D. Cal. 2011) (citation omitted).

The district court has broad discretion to certify a class, but a grant of class certification is accorded more deference than a denial. *Parsons v. Ryan*, 754 F.3d 657, 673 (9th Cir. 2014). The district court abuses its discretion when it makes an error of law or a clear error in judgment. *See Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712, 724 (9th Cir. 2010) (reversing denial of class certification). For instance, individualized damages are not a bar to class certification, so a court abuses its discretion by not certifying a class because of possible individualized damages inquiries. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013). Similarly, "'[m]anageability concerns must be weighed against the alternatives and will rarely, if ever, be sufficient to prevent certification of a class.'" *Bowerman v. Field Asset Servs., Inc.*, 242 F. Supp. 3d 910, 933 (N.D. Cal. 2017) (quotation omitted). The plaintiff need not show that he will prevail on the merits of the claims. *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015). Instead, the merits should be examined only to the extent needed to examine Rule 23's requirements. *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013).

**B.     This Case is Well Suited for Class Treatment**

The United States Supreme Court has recognized that "[c]lass actions serve an important function in our system of civil justice. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981). This holds true especially for small value consumer cases like the present matter. Without the Rule 23 vehicle, individual claims such as Plaintiff's would be dwarfed by the cost of litigation: "Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class action device." *Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339 (1980).

**C.     Fed. R. Civ. P. 23(a) is Satisfied**

Plaintiff seeks to certify the following class: All persons in California who purchased Cree LED Lightbulbs for end use, and not resale, during the period from March 2013 to the present.[3]

---

[3] Excluded from the Class are Defendant, Defendant's affiliates, subsidiaries or co-conspirators; employees of Defendant, including its officers and directors; and the Court to which this case is assigned.

1.   The Class Is So Numerous That Joinder Is Impracticable

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is "impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticable" does not mean impossible, only that it would be difficult or inconvenient to join all members of the class. *See Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). To satisfy this requirement, "[p]laintiffs do not need to state the "exact" number of potential class members or be specific as to the number, as long as general knowledge and common sense indicate that the class is sufficiently numerous. *See In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350–51 (N.D. Cal. 2005). Courts have found joinder impracticable in cases involving as few as forty class members. *See Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (stating that numerosity is "presumed at a level of 40 members"); *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) ("As a general rule, …classes of 40 or more are numerous enough.").

Here, Defendants cannot reasonably dispute that joinder of all members of the Class is impracticable. While discovery has not produced evidence of the exact number of potential Class members, as noted herein it has produced evidence establishing that the potential class is sufficiently numerous warranting class treatment. ████████████████████████████ ███████████████. Weiner Decl., Exs. 48-51, CREE_00049124,_00049110, 49122, 55743.  Surely there are far more than 40 Class members, and thus the Class is sufficiently numerous.[4]

2.   Questions of Law or Fact Are Common to the Proposed Class

The commonality requirement has "'been construed permissively' and '[a]ll questions of fact and law need not be common to satisfy the rule.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (alteration in original) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)); *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) ("common" does not

---

[4] Should Cree contest numerosity, Plaintiff has subpoenaed both nationwide and California sales numbers for Cree from Home Depot, The Nielsen Company, LLC and IRI Worldwide and will be able to provide the Court with exact numbers at trial if necessary. Indeed, internet research indicates that as of 2017, there were over 200 Home Depot locations in California alone, further evidencing numerosity. *See, e.g.*, "U.S. states with the most Home Depot stores in 2017," located at https://www.statista.com/statistics/240023/leading-20-us-states-with-the-most-home-depot-stores/ (last viewed January 18, 2019).

mean "complete congruence"). Commonality is thus satisfied where the claims of all class members "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

As detailed in Section II.F. above, Plaintiff has alleged that the Bulbs do not last nearly as long as advertised. Am. Compl., Dkt. No. 48, ¶¶7; 33. Plaintiff need only identify common questions apt for common resolution. *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (internal citation omitted) (holding commonality "easily satisfy[ied]" where common questions included allegations of the same defect with the same product, the defendant's knowledge of the defect, the defendant's obligations under its express and implied warranties, and whether the defendant's conduct violated various laws).

This case presents several common questions which are central to resolving the validity of the claims in one stroke, including whether: (1) Defendant misrepresented, omitted or concealed information regarding the characteristics, quality, or longevity of the Bulbs?; (2) Defendant marketed, designed, manufactured and sold Bulbs that do not last as long as their represented and warranted life span and do not provide the promised energy and cost savings?; (3) the Bulbs uniformly prematurely fail such that they do not last as long as promised?; (4) Defendant knew and failed to disclose that the Bulbs were not capable of lasting as long as promised and/or warranted and as such a consumer would not realize the promised energy and cost savings?; (5) Defendant's marketing and labeling of the Bulbs was misleading to a reasonable consumer?; (6) As a result of Defendant's actions, omissions, and/or misrepresentations of material facts, Plaintiff and members of the Class suffered an ascertainable loss?; (7) Plaintiff and the members of the Class paid a price premium for the Bulbs that they would not have paid but for the false labeling and marketing of the Bulbs? *See id* at 1173-76 (identifying similar common questions).

The resolution of each of these questions is driven by common legal and factual issues, which will dictate the ultimate resolution of this action in a single broad stroke. Specifically, common evidence regarding the marketing and labeling of the Bulbs will answer whether the Bulbs are uniformly marketed to promise longevity and the resulting cost and energy savings with a performance

9

warranty. *See* Weiner Decl., Ex. 53. Common evidence will also answer whether Defendant's labeling and marketing of the Bulbs was misleading and false. Further, common evidence will allow a trier of fact to determine whether the Bulbs failed prematurely, and uniformly, in one fell swoop. Finally, the price premium charged can be determined on a class-wide basis as detailed in the Boedeker Report. *See* Boedeker Report.

Here, Plaintiff alleges that the Bulbs were marketed and sold using common misrepresentations: they promise longevity, and therefore energy and cost savings, for far longer than every Bulb can actually last. Compl., Dkt. 48, ¶2; Weiner Decl., Ex. 54. The truthfulness of the marketing and labeling of the Bulbs with regard to longevity, cost and energy savings, with a performance warranty, and the uniformity of the alleged inability of the Bulbs to meet the standards promised in the advertising and marketing, can, and should be decided as to all consumers class-wide as the evidence is the same as to every consumer who made a purchase during the Class period. Therefore, the proposed Class satisfies the commonality requirement.

### 3.   Plaintiffs' Claims Are Typical of Class Members' Claims

"'The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Id.* at 1175 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). Typicality exists when the class representatives and class members are subjected to and injured by the same course of conduct. *See Ellis*, 657 F.3d at 984. "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought.'" *Id.* (quoting *Hanon*, 976 F.2d at 508); *see also Congdon v. Uber Techs., Inc.*, 291 F. Supp. 3d 1012, 1027-28 (N.D. Cal. 2018) (rejecting defendant's typicality arguments based on standing and deposition testimony and recognizing that, "for purposes of typicality, it is enough to find that plaintiffs' theory of their injury is the same theory of injury for the entire class"); *Hatamian v. Advanced Micro Devices, Inc.,* No. 14-CV-00226 YGR, 2016 WL 1042502, at *5 (N.D. Cal. Mar. 16, 2016) ("'[T]ypicality is a "permissive" standard and "the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff."'").

Therefore, "[l]ike the commonality requirement, the typicality requirement is 'permissive' and

requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez*, 591 F.3d at 1124 (quoting *Hanlon*, 150 F.3d at 1020). As Plaintiff purchased three 100W replacement dimmable LED bulbs from THD in Windsor, California (the Bulbs at issue here), *see* Young Dep. at 98:2-99:21, reviewed the representations on the label, which included representations about longevity, cost savings, and warranty, *see id.* at 82:10-25; 84:15-85:10, and alleged paid a premium price, Plaintiff's claims are typical of Class members.

### 4.   Plaintiff and Counsel Will Adequately Represent The Classes

The adequacy requirement is satisfied when the class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To make this determination:

> [C]ourts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?' Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees."

*Ellis*, 657 F.3d at 985 (quotations omitted). In considering the adequacy of plaintiffs' counsel, the court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

As described above, Plaintiff's claims are typical, and he satisfies the requirements of Rule 23. Whether the testimony shows that Plaintiff was misled by the alleged misrepresentations in the Bulbs' marketing and labeling is not cause for defeating adequacy. *See Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 WL 3844334, at *3 (N.D. Cal. July 15, 2016) (testimony whether the plaintiff was misled by the "Imported from Italy" statement on the front of the bottle and questions regarding disclaimers leave "an open question whether those differences lend to or detract from the credibility of Kumar's testimony, and not a question that the Court must answer in order to find that she is an adequate representative.").

Furthermore, to the extent the Court deems a class representative either atypical or inadequate,

11

the court may still certify the class conditioned upon the substitution of another named plaintiff. *See Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 476–77 (C.D. Cal. 2012) (collecting cases finding it appropriate to allow the plaintiffs the opportunity to locate a class representative to represent the Illinois Class as the named representative was found atypical); *see also Nat'l Fed'n of Blind v. Target Corp.*, 582 F. Supp. 2d 1185, 1209 (N.D. Cal. 2007) (giving plaintiffs leave to locate a class representative to replace the person initially proposed as the class representative); *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 673 (C.D. Cal. 2009) (giving plaintiff who failed to satisfy typicality requirement "leave to substitute in an appropriate class representative"); *Kremens v. Bartley*, 431 U.S. 119, 134–35 (1977) (ordering "substitution of class representatives with live claims" where named plaintiffs' claims were determined to be moot).

Plaintiff has already shown that he will vigorously pursue these claims on behalf of class members. He has produced documents, been deposed, and supplied his attorneys with information. Weiner Decl., Ex. 52, ¶9-11, Ex. B. Further, because he has experienced the failure of the Bulb at issue, Plaintiff has no conflicts with other members of the Class.

Furthermore, Plaintiff is represented by qualified and competent counsel who have the experience and resources necessary to competently and vigorously pursue this action on behalf of the Class Members. *See* Weiner Decl., ¶¶ 68-75; Exs. 66-70. Plaintiff's counsel have devoted a significant amount of time to this case and will continue to commit the resources necessary to represent the class. *See id.* Plaintiff and his counsel have demonstrated their commitment to prosecuting this case on behalf of all class members, and, as such, the adequacy retirement is satisfied.

### D.   The Proposed Classes Satisfy the Requirements of Rule 23(b)(3)

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiff meets both the predominance and superiority prongs, which "encompasses 'those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Wahl v. Am. Sec. Ins. Co.*, No. 08-CV-00555 RS, 2010 WL 1881126, at

*8 (N.D. Cal. May 10, 2010) (quoting Fed. R. Civ. P. 23 1966 advisory committee's note).

### 1.    Common Issues Predominate Over Individual Issues

"The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quotation omitted). This does not require every element of the plaintiff's claims to be "susceptible to class-wide proof." *Amgen Inc.*, 568 U.S. 455 at 469 (quotation omitted). The focus of the predominance inquiry is on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). This "inquiry is pragmatic and qualitative and focuses on whether common questions present the overriding issues in a suit." *Brown v. Hain Celestial Grp., Inc.*, No. 11-CV-03082-LB, 2014 WL 6483216, at *15 (N.D. Cal. Nov. 18, 2014). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (quotation omitted). Further, the existence of individualized affirmative defenses does not defeat predominance.  *Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 542 (N.D. Cal. 2015).

"'Considering whether '"questions of law or fact common to class members predominate"' begins, of course, with the elements of the underlying cause of action.'" *Id.* at 540 (quoting *Erica P. John Fund, Inc. v. Haliburton Co.*, 563 U.S. 804, 809 (2011)). In this case, Plaintiff asserts claims for violations of California's consumer protection statutes (the UCL, FAL, and CLRA) and for fraudulent misrepresentation and concealment, unjust enrichment, and breach of implied and express warranties. FAC ¶¶ 49-113. As shown below, common issues predominate for each claim.

### 2.    Plaintiff's Consumer Protection Claims

"'Courts generally consider claims under [the UCL, FAL, and CLRA] together.'" *Fitzhenry-Russell v. Dr. Pepper Snapple Grp. Inc.*, 326 F.R.D. 592, 612 (N.D. Cal. 2018) (citation omitted). "The central question here is whether [the defendant's] labels were likely to deceive a reasonable consumer." *Kumar* 2016 WL 3844334, at *4. The UCL, FAL, and CLRA prohibit advertising that is actually false as well advertising that, ". . . although true, is either actually misleading or which has a

capacity, likelihood or tendency to deceive or confuse the public.'" *Id.* (quoting *Kasky v. Nike, Inc.*, 45 P.3d 243, 250 (Cal. 2002)). Because a plaintiff need only show that members of the public are likely to be deceived, "the answer to the reasonable consumer question [is] based on common facts, that is, identical statements on the labels of the products at issue." *Id.* Thus, "it is well-settled that where 'numerous consumers are exposed to the same dubious practice by the same seller . . . proof of the prevalence of the practice as to one consumer would provide proof for all.'" *Id.* (quoting *Vasquez v. Superior Court*, 484 P.2d 964, 968 (Cal. 1971)) (alteration in original).

These claims require a showing of materiality and reliance "based upon the reasonable consumer standard, not the subjective understandings of individual plaintiffs." *Id.* at *7. Proof of materiality requires showing that "'a reasonable consumer would attach importance'" to the representations at issue, *or* that "'the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action.'" *Id.* (quoting *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013)). The materiality of deceptive representations can be established *as a matter of law* without the need for expert testimony or consumer surveys. *See id.* at *8 (holding that a label that misleads consumers about the product's origin is material to the consumer's injury as a matter of law).

"'For this reason, courts have explained that CLRA and UCL claims are 'ideal for class certification because they will not require the court to investigate class members' individual interaction with the product.'" The FAL employs a similar objective standard for misrepresentations." *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 365 (N.D. Cal. 2018). "For the purposes of class certification, it is sufficient that the alleged material misstatement and omission was part of a common advertising scheme to which the entire class was exposed, and is a sufficiently definite representation whose accuracy has been legitimately called into question." *Astiana v. Kashi Co.*, 291 F.R.D. 493, 505 (S.D. Cal. 2013). "'As a general rule, materiality may be established by common proof "[b]ecause materiality is judged according to an objective standard," and so "[t]he alleged misrepresentations and omissions, whether material or immaterial, would be equally so for all consumers composing the class.'"" *Fitzhenry-Russell*, 326 F.R.D. at 613 (alterations in original) (citation omitted). This "standard requires only that the Court find there is a probability that reasonable consumers could be

misled, not that they all believed [the misrepresentation at issue] means the same thing." *Id.* "Materiality can be shown by a third party's, or defendant's own, market research showing the importance of such representations to purchasers." *Kumar*, 2016 WL 3844334, at *8.

Reliance is similarly susceptible to common proof because the relevant question is "[w]hether a reasonable consumer would have seen the phrase and been misled." *Id.* at *9. The plaintiff need not rely on consumer surveys or expert testimony as long as the language at issue is not "inherently ambiguous." *Id.*

### 3.   Fraudulent Misrepresentation and Concealment

"The elements of common law fraud in California are (1) a misrepresentation of material fact (false representation, concealment, or nondisclosure); (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Collins v. eMachines, Inc.*, 134 Cal. Rptr. 3d 588, 596 (Cal. Ct. App. 2011).

Common law fraud claims based on product labeling are well suited to class treatment. Courts employ a presumption of class-wide reliance "if the defendant's misrepresentations or omissions were material." *Fitzhenry-Russell*, 326 F.R.D. at 613. Courts have found predominance met when the language at issue is not vague, which may be determined as a matter of law, and that conclusion may find further support in consumer perception surveys. *See id.* Materiality also may be evinced through the defendant's internal documents showing the defendant's belief about consumer perceptions or the defendant's intent to influence consumer perceptions. *See id.* at 613-14.

### 4.   Breach of Express and Implied Warranties

An express warranty is created when the seller of goods makes a promise to the buyer, including the description of the goods or other statements on the product's labeling and advertising. *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1117 (S.D. Cal. 2011); Cal. Com. Code § 231. An implied warranty of merchantability is implied in the contract for the sale of goods. *Ferrero*, 794 F. Supp. 2d at 1118; Cal. Com. Code § 2314(1). Merchantability requires that the product "' . . . must "[conform] to the promises or affirmations of fact made on the container or label," and must be "fit for the ordinary purposes for which such goods are used."'" *Ferrero*, 794 F. Supp. 2d at 1118 (citations omitted). Vertical privity is not required when, as here, "the plaintiff relies on written labels or advertisements

15

of a manufacturer." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008).

A breach-of-warranty claim is susceptible to the same common proof as misrepresentation claims under the UCL, FAL, and CLRA. *See Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1118 (N.D. Cal. 2018). "Determinations of whether Defendant misrepresented its products and, as a result, whether warranties were breached, are common issues appropriate for class treatment." *Astiana*, 291 F.R.D. at 505. Reliance is not an element of express warranty claims under California law. *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 914-16 (N.D. Cal. 2018).

### 5.   Unjust Enrichment

"An individual who has been unjustly enriched at the expense of another may be required to make restitution." *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 353 P.3d 319, 326 (Cal. 2015); *see also Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) ("When a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'"). Like consumer fraud and breach-of-warranty claims, "quasi-contract claims are appropriate for class certification as they require common proof of the defendant's conduct and raise the same legal issues for all class members." *Astiana*, 291 F.R.D. at 505.

### 6.   Common Evidence Can Prove Each Cause of Action

Common proof will establish the elements of all the causes of action in this case. As a result, each claim is appropriate for class treatment. At its core, this is a case about Cree's alleged misleading labeling and marketing of the Bulbs for (1) longevity with (2) cost and energy savings and (3) a warranty that implies longevity. Common evidence demonstrates that the labeling of the Bulbs and corroborating marketing and advertising (which is substantially similar in wording and design and perpetuates Cree's pervasive marketing scheme of advertising for longevity) consistently center on a strategic marketing campaign touting longevity and the corresponding energy and cost savings. Weiner Decl., Ex. 53; *see In re Arris*, 327 F.R.D. at 366 (noting that existence of alleged misrepresentations on actual packaging that were substantially similar on all packaging during the class period was sufficient to satisfy predominance requirement and no individualized inquiry was needed into which class members read the box and warranty information). Accordingly, Plaintiff has demonstrated common labeling, marketing and advertising through a pervasive marketing scheme

sufficient to satisfy predominance: (1) Plaintiff has demonstrated the labeling of the LED Lightbulbs is uniform throughout the country; Weiner Decl., Ex. 53; (2) ████████████████████ ██████████████████████, *see* Schwab Dep. at 38:25-39:13; 39:18-40:2; (3) damages can be calculated as to the misrepresentations on a class-wide basis, *see* Boedeker Report; and (4) common expert evidence at trial will show for all Bulbs how the defect commonly manifests such that the representations cannot be true for all consumers.[5]

Plaintiff will prove, through common evidence, that the labeling of the LED Bulbs was deceptive because the bulbs commonly fail and do not have the superior lifespan promised. Plaintiff will prove that this misrepresentation is material through Cree's own documents and testimony, ████ ████████████████████████████████████████████████████████████ ████████████████. *See, e.g.*, Schwab Dep. 55:25-56:17, 59:8-60:1, 61:11-62:11; Weiner Decl. at Ex. 7, *and* Ex. 54 at CREE_00068800.  The common question as to whether Defendant's marketing and labeling of the Bulbs was misleading to a reasonable consumer is likewise born out in Defendant's own documents or, at a minimum, can be assessed on a class-wide basis. Finally, as discussed in more detail below, Plaintiff will prove that he and the Class members paid a premium for the LED Lightbulbs as a result of Cree's misrepresentations. *See* Boedeker Report.

---

[5] "In order to satisfy the predominance requirement, the plaintiff need not prove the existence of the defect." *Edwards v. Ford Motor Co.*, 603 F. App'x 538, 540 (9th Cir. 2015) (citing *Amgen*, 568 U.S. at 459, 133 S.Ct. 1184); *In re Arris*, 327 F.R.D. at 361.  "Plaintiffs' position [on the existence of defects] may or may not prevail, but that is a merits question not appropriately addressed at the class certification stage." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1122 (9th Cir. 2017). This is because "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen*, 568 U.S. at 459, 133 S.Ct. 1184.Accordingly, the allegation that the Bulbs suffer from the same inability to meet the labeling and marketing promises is sufficient at the class certification stage to satisfy the predominance requirement. *See id.* To the extent Defendant argues that individual use of the Bulbs impacts longevity of the Bulbs, this argument was rejected in *Wolin*. *See*, 617 F.3d at 1170 (holding that "[a]lthough individual factors may affect premature tire wear, they do not affect whether the vehicles were sold with an alignment defect" and thus that "all of [the plaintiffs'] allegations are susceptible to proof by generalized evidence.). Accordingly, whether all Bulbs suffer from a common defect will be determined with common evidence and does not defeat predominance. *See Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975) ("[N]either the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis to certify a class which apparently satisfies the Rule.").

These common issues predominate over any individual issues because they will drive the litigation. *All* of the elements of Plaintiff's claims are capable of common proof. These issues—and methods of proof—satisfy the well-established predominance standard under Rule 23(b)(3). In one fell swoop, Cree's liability can be established with respect to Plaintiff and the Class members. So can the amount of damages it owes to the Class.

### E.   The Allocation of Damages Does Not Defeat Certification

To prove class-wide damages, plaintiffs must put forth a damages model seeking to measure the damages attributable to their damages theory. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). However, damages "[c]alculations need not be exact." *Id.* Predominance is satisfied even if ". . . other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods*, 136 S. Ct. at 1045 (quotation omitted). A damages model may be based on a sample of data and need not attempt to prove each class member's individual damages. *Id.* at 1046. Rather, the question is whether "the evidence is reliable in proving or disproving the elements of the relevant cause of action." *Id.*

As the Ninth Circuit explicitly recognized, "the need for individualized damages determinations after liability has been adjudicated does not preclude class certification." *Briseno*, 844 F.3d at 1131 (citing *Levya*, 716 F.3d at 513–14). Further, even if each class member's damages are individualized, "the Court cannot decline to certify a class simply because the damages inquiry will be individualized." *Bias*, 312 F.R.D. at 536 (citing *Levya*, 716 F.3d at 514). To satisfy predominance, plaintiffs "'must be able to show that their damages stemmed from the defendant's actions that created the legal liability.' The ultimate question with respect to damages, post-*Comcast*, is whether 'damages could be feasibly and efficiently calculated once the common liability questions are adjudicated.'" *Id.* at 542 (quoting *Levya*, 716 F.3d at 514). Courts must determine whether the damages model is consistent with the plaintiffs' theory of liability, not "[w]hether that theory will ultimately prove efficacious." *Id.* at 543. The damages model need not be final, as long as the plaintiff can "present a likely method for determining class damages" or has "a viable theory of how to calculate damages." *Astiana*, 291 F.R.D. at 506.

For claims under the UCL, FAL, and CLRA, damages or restitution may be proven on a class-

1   wide basis through "a diminution in value theory, i.e., the difference between what was paid and what

2   a reasonable consumer would have paid at the time of purchase without the fraudulent or omitted

3   information." *Kumar*, 2016 WL 3844334, at \*10. The same is true for breach-of-warranty claims. *See*

4   *In re Arris*, 327 F.R.D. at 368 (certifying class claims for breach of warranty in addition to consumer

5   protection claims, and approving price premium attributable to misrepresentations as measure of

6   damages for all claims). The proper measure of restitution for a quasi-contract or unjust enrichment

7   claim is the price premium. *Trazo v. Nestlé USA, Inc.*, 113 F. Supp. 3d 1047, 1052 (N.D. Cal. 2015).

8       Courts routinely certify consumer class actions under Rule 23(b)(3) when the plaintiff presents

9   expert testimony based on conjoint analysis designed to isolate the portion of the payment attributable

10   to the misrepresented product attribute. *See, e.g.*, *Hadley* 324 F. Supp. 3d at 1103-06 (discussing

11   proposed conjoint analysis and finding it satisfies *Comcast*); *Arris*, 327 F.R.D. at 366-70 (same);

12   *Fitzhenry-Russell*, 326 F.R.D. at 601, 614-16 (discussing price premium survey and choice-based

13   conjoint analysis and finding common issues predominate). Generally, a conjoint analysis asks survey

14   respondents to choose between different sets of product attributes, aggregates those responses, and

15   uses statistical methods to determine the value that consumers attach to each specific attribute. *Arris*,

16   327 F.R.D. at 367.

17       That is exactly what Plaintiff has done in this case by submitting the declaration of expert

18   Stefan Boedeker. Courts have certified classes in other cases where Mr. Boedeker proposed to measure

19   the class-wide damages or restitution based on a price premium theory pursuant to an appropriately

20   designed conjoint analysis. *Broomfield v. Craft Brew Alliance, Inc.*, No. 17-cv-1027-BLF, 2018 WL

21   4952519, at \*13-20 (N.D. Cal. Sept. 25, 2018); *In re Dial Mktg. & Sales Practices Litig.*, 320 F.R.D.

22   326, 333-37 (D.N.H. 2017).

23       Plaintiff's theory of liability is that he and the other Class members paid a premium for Cree's

24   LED bulbs based on the material misrepresentations made by Cree on the bulbs' labeling, and

25   reinforced in its marketing, in particular, that the LED bulbs last longer than as compared to

26   incandescent bulbs and thus result in energy and cost savings to the consumer and that representation

27   is affirmed by a performance warranty.

28       Class members' damages are susceptible to calculation on a class-wide basis. The Boedeker

report demonstrates that aggregate class-wide damages can be calculated with common evidence. *See id.* Using advanced econometrics and statistical techniques, Boedeker employed conjoint analysis based on the results of a scientifically-conducted survey to calculate damages. As Boedeker explained, the conjoint analysis is a widely accepted economic model used, for example in several high-profile applications by large corporations and large public agencies such as (i) Microsoft for pricing newly released software products, (ii) Procter & Gamble for consumer-goods pricing and new product development, (iii) Marriott Corporation for the development of the Courtyard hotel brand, and (iv) T-Mobile for developing optimal cellular plans. Conjoint Analysis was also integral to the development of the EZPass electronic toll collection system by regional transit agencies in New York and New Jersey in the 1990s. *See* Boedeker Report, ¶45.

In the study performed by Boedeker, study participants are shown sets of product profiles (called "choice sets" or "choice menus") and are asked to choose the profile that they would prefer to purchase if the choice menu offered would describe the only products that were available to them. CBC survey methods closely mimic real-world purchase processes. *Id.* at ¶52. The economic model allowed Boedeker to determine the difference in value (both, measured in dollars or as a percentage of the purchase price) that customers place on a premium-priced LED Lightbulbs with and without particular label claims. *Id.* ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████

Accordingly, Plaintiff can calculate "the difference between the prices customers paid and the value of the [Bulbs] they bought—in other words, the 'price premium' attributable" to the alleged misstatements and omissions. *See Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016). "It is well-established that the "'price premium attributable to'" an alleged misrepresentation on product labeling or packaging is a valid measure of damages in a mislabeling

1   case under the FAL, CLRA, and UCL." *Arris*, 327 F.R.D. at 368 (citations omitted).

2     **F.** **A Class Action Is Superior to Individual Actions**

3      Rule 23(b)(3) requires that a class action be "superior to other available methods for fairly and

4   efficiently adjudicating the controversy." Courts find superiority when "it would not be economically

5   feasible to obtain relief for each class member given the small size of each class member's claim."

6   *Astiana*, 291 F.R.D. at 507; *see also Arris*, 327 F.R.D. at 374 ("This Court has previously recognized

7   that class actions are superior in cases such as this one, where many consumers have claims of

8   relatively little value, such that it would be inefficient to bring individual claims."). Superiority is not

9   defeated by any manageability concerns. *See Hadley*, 324 F. Supp. 3d at 1094.

10      A class action is superior in this case because there are numerous class members possessing

11   small individual claims that are likely worth only a few dollars each. The lack of any other actions

12   concerning the claims at issue in this case demonstrates that "'[t]he *realistic* alternative to a class

13   action is not 17 million individual suits, but zero individual suits, as only a lunatic sues for $30.'"

14   *Opperman v. Path, Inc.*, No. 13-cv-00453-JST, 2016 WL 3844326, at *17 (N.D. Cal. July 15, 2016)

15   (quoting *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004).

16   **IV.** **<u>RULE 23(b)(2) IS SATISFIED</u>**

17      Rule 23(b)(2) applies where a defendant has "acted or refused to act on grounds that apply

18   generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate

19   respecting the class as a whole." A class should be certified under Rule 23(b)(2) where "an injunction

20   would offer all class members 'uniform relief' from [the] harm." *In re NCAA Student-Athlete Name*

21   *& Likeness Licensing Litig.*, No. 09-CV-1967 CW, 2013 WL 5979327, at *7 (N.D. Cal. Nov. 8, 2013)

22   (quoting *Rodriguez*, 591 F.3d at 1125). Courts may certify separate classes seeking injunctive relief

23   and damages under Rules 23(b)(2) and 23(b)(3) as long each is independently appropriate. *In re*

24   *ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 977 (C.D. Cal. 2015).

25      These requirements are satisfied in this case. Through this lawsuit, Plaintiff seeks injunctive

26   and corresponding declaratory relief. Am. Compl., Dkt. No. 48, ¶44. The Court can declare Cree in

27   breach of its warranty because the LED bulbs do not conform to Cree's promises. The Court can also

28   order Cree to remove the deceptive or misleading statements from the labeling of LED bulbs. Further,

the Court can order Cree to engage in a corrective advertising campaign. While an injunction and declaratory relief will not alleviate the past injuries suffered by Class members, it will serve to prevent future harm. Thus, this case is appropriately suited for injunctive certification under Rule 23(b)(2).

## V.   **CONCLUSION**

Plaintiff respectfully requests that the Court enter an order certifying the proposed class, appointing Plaintiff to serve as class representative, appointing the undersigned attorneys to serve as co-lead class counsel, and directing Plaintiff to submit a proposed notice plan and form of notice within a reasonable time following entry of this order.

RESPECTFULLY SUBMITTED AND DATED this 18th day of January, 2019.

By: _____/s/ *S. Clinton Woods*_____

S. Clinton Woods (SBN 246054)
Michael McShane (SBN 127944)
Ling Y. Kuang (SBN 296873)
**AUDET & PARTNERS, LLP**

Melissa S. Weiner (Admitted *Pro Hac Vice*)
mweiner@pswlaw.com
Joseph C. Bourne (SBN: 308196)
 jbourne@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
Telephone: (612) 389-0600
Facsimile:(612) 389-0610

Charles J. LaDuca
claduca@cuneolaw.com
Alexandra C. Warren
 awarren@cuneolaw.com
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
Facsimile: (202) 589-1813

Charles E. Schaffer, Esq.
cschaffer@lfsblaw.com
**LEVIN SEDRAN & BERMAN**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663

Adam R. Gonnelli
gonnellia@thesultzerlawgroup.com
Jason P. Sultzer
sultzerj@thesultzerlawgroup.com
**THE SULTZER LAW GROUP**
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
Telephone: (845) 483-7100
Facsimile: (888) 749-7747

*Attorneys for Plaintiff*