# EXHIBIT 5

```
 1              UNITED STATES DISTRICT COURT

 2            NORTHERN DISTRICT OF CALIFORNIA

 3                   OAKLAND DIVISION

 4                     ---oOo---

 5   JEFF YOUNG, individually    )

 6   And on behalf of all other  )

 7   Similarly situated,         )

 8              Plaintiffs,   )  No. 4:17-CV-06252-YGR

 9        vs.                    )

10   CREE, INC.,                 )

11              Defendants.   )

12   _____)

13                     ---oOo---

14            DEPOSITION OF JEFFRY YOUNG

15               September 18, 2018

16

17

18

19   Reported by:  DENNIS M. SOUZA, CSR #3893

20   - - - - - - - - - - - - - - - - - - - - - - - - - -

21

22

23

24

25
```

                                                    1

```
 1                       I N D E X

 2

 3                                              Page

 4

 5   Deposition of:  JEFFRY YOUNG

 6   Examination by:  Mr. Richter                  7

 7   Examination by:  Mr. Woods                  130

 8

 9                        - - -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

2

```
1              EXHIBITS MARKED FOR IDENTIFICATION

2

3    1     (Defendant Cree, Inc.'s Amended Notice

4           Of Deposition of Plaintiff Jeff Young)      19

5    2     (E-mail dated August 6, 2016 to Jeff

6           Young from Cree Customer Support)           21

7    3     (Class Action Complaint Jury Trial Demand)   63

8    4     (Amended Class Action Complaint Jury Trial

9           Demand)                                     80

10   5     (Colored photocopy)                          105

11

12                          - - -

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Network Deposition Services, Inc. ● networkdepo.com ● 866-NET-DEPO

```
 1              MR. WOODS:  No.                              10:44

 2              THE WITNESS:  I misunderstood.  I would have 10:44

 3    expected it to, yes; no, I don't understand that.     10:44

 4              MR. RICHTER:  Q.  But then that is what the  10:44

 5    warranty is for, right, because if it doesn't last    10:44

 6    100,000 miles you take it back to the dealer and they 10:44

 7    fix it, right?                                         10:44

 8        A.   A fair statement; that it will be fixed if it 10:44

 9    doesn't last.                                          10:44

10        Q.   That is what I am getting at, Mr. Young.      10:44

11        A.   I see.                                         10:44

12        Q.   You see what I am saying?                     10:44

13        A.   Now, yeah.                                     10:44

14        Q.   In other words, just because somebody says my 10:44

15    power train warranty is going to last 100,000 miles,  10:44

16    there may be some problems with the car or defect with 10:44

17    the car, not every car is perfect, but what the       10:45

18    manufacturer is saying is:  Hey, if it breaks, come   10:45

19    back, we will fix it, right?                           10:45

20        A.   I understand.                                 10:45

21              MR. WOODS:  Calls for speculation.  Objection 10:45

22    to form.  You can answer.                             10:45

23              MR. RICHTER:  Q.  I am going to ask the      10:45

24    question again just so we are clear.                  10:45

25              In other words, when you see a warranty for a 10:45
```

34

1   product you buy and say it is a ten-year, let's just      10:45

2   say a 100,000-mile power train warranty, you don't        10:45

3   understand and expect that every single car lasts         10:45

4   100,000 miles in the power train, some of them are        10:45

5   going to break.  And what happens then is the             10:45

6   manufacturer fixes it, right?                             10:45

7           MR. WOODS:  Calls for speculation.  Object to     10:45

8   form.  You can answer.                                    10:45

9           THE WITNESS:  I can answer?                       10:45

10          MR. WOODS:  Yes.                                  10:45

11          THE WITNESS:  Yes.  I would expect that it        10:45

12  would just be fixed.                                      10:45

13          MR. WOODS:  Sorry, unless I tell you not to       10:45

14  answer, you can answer.                                   10:45

15          THE WITNESS:  Okay.                               10:45

16          MR. RICHTER:  Q.  Yeah.  I forgot to go over      10:45

17  that.                                                     10:46

18      A.   Oh, boy, that is not what they do -- that is     10:46

19  right.  We don't have a judge here.  Why don't you        10:46

20  speak up.                                                 10:46

21      Q.   He can't rule on client's objections.            10:46

22      A.   Oh, come on.                                     10:46

23      Q.   Let's go back to --                              10:46

24          So your practice is with light bulbs and not      10:46

25  just CREE light bulbs, but LED light bulbs that you       10:46

| | | |
|---|---|---|
| 1 | middle at line 13 called Individual Plaintiff Facts. | 11:31 |
| 2 | Do you see that? | 11:31 |
| 3 | A.  Yes. | 11:31 |
| 4 | Q.  Is this the section that you read about you? | 11:31 |
| 5 | A.  Yes. | 11:31 |
| 6 | Q.  It is three sentences, right? | 11:31 |
| 7 | A.  Okay.  Yeah. | 11:31 |
| 8 | Q.  Did you read this to make sure it was | 11:31 |
| 9 | accurate? | 11:31 |
| 10 | A.  Yes. | 11:31 |
| 11 | Q.  It says here:  Plaintiff -- | 11:32 |
| 12 | A.  It wasn't accurate. | 11:32 |
| 13 | Q.  It what? | 11:32 |
| 14 | A.  It was not accurate. | 11:32 |
| 15 | MR. WOODS:  Wait for him to ask the question. | 11:32 |
| 16 | THE WITNESS:  Okay, sorry. | 11:32 |
| 17 | MR. RICHTER:  Q.  Yeah, this isn't accurate, | 11:32 |
| 18 | is it? | 11:32 |
| 19 | A.  No. | 11:32 |
| 20 | Q.  Did you tell -- did you make a change? | 11:32 |
| 21 | A.  I didn't -- no.  I didn't. | 11:32 |
| 22 | Q.  Did you tell anybody:  This is isn't | 11:32 |
| 23 | accurate? | 11:32 |
| 24 | A.  I can't -- I don't think I should answer | 11:32 |
| 25 | that. | 11:32 |

65

| | | |
|---|---|---|
| 1 | it. | 11:33 |
| 2 | Oh, no, I could be wrong.  Sorry, I have got | 11:33 |
| 3 | to wing it here a little bit. | 11:33 |
| 4 | I didn't remember where I bought the bulbs, | 11:33 |
| 5 | that was the problem.  I didn't know if I bought them | 11:33 |
| 6 | at Home Depot or I bought them at Walmart. | 11:33 |
| 7 | I hadn't reinspected the fine print on that. | 11:33 |
| 8 | I know I am winging it but that's how it | 11:33 |
| 9 | occurred, that is why the error occurred. | 11:33 |
| 10 | I thought that I bought it at Walmart or | 11:33 |
| 11 | could have bought it at Walmart as opposed to | 11:33 |
| 12 | Home Depot. | 11:33 |
| 13 | MR. RICHTER:  Q.  So at the time you reviewed | 11:33 |
| 14 | this complaint before it was filed, you thought you | 11:33 |
| 15 | could have bought it at Walmart? | 11:33 |
| 16 | A.  Yeah.  I thought it might have been accurate | 11:33 |
| 17 | back then. | 11:33 |
| 18 | Q.  Is it accurate that you purchased three | 11:34 |
| 19 | 100-watt standard A-type bulbs on or about April 15th? | 11:34 |
| 20 | A.  I bought them at different times. | 11:34 |
| 21 | Q.  So you didn't buy three in April of 2015, did | 11:34 |
| 22 | you? | 11:34 |
| 23 | MR. WOODS:  Objection.  Mischaracterizes the | 11:34 |
| 24 | testimony, argumentative, you can answer. | 11:34 |
| 25 | THE WITNESS:  No.  I did not, no.  I bought | 11:34 |

67

| | | |
|---|---|---|
| 1 | A.   I used to. | 11:44 |
| 2 | Q.   When? | 11:44 |
| 3 | A.   Years ago. | 11:44 |
| 4 | Q.   Did you buy any of these three bulbs on-line? | 11:44 |
| 5 | A.   No. | 11:44 |
| 6 | Q.   So you bought these three bulbs in a store? | 11:44 |
| 7 | A.   Yes, for sure. | 11:45 |
| 8 | Q.   And you don't recall where?  You recall one | 11:45 |
| 9 | was Home Depot, right? | 11:45 |
| 10 | A.   I don't recall that.  I am going because it | 11:45 |
| 11 | says "Home Depot."  I don't have any specific | 11:45 |
| 12 | recollection of buying any of these bulbs. | 11:45 |
| 13 | Q.   Then it goes on to say here within months all | 11:45 |
| 14 | three bulbs burned out.  Right? | 11:45 |
| 15 | A.   Yes. | 11:45 |
| 16 | Q.   Well, was it months or was it a year? | 11:45 |
| 17 | A.   Don't know. | 11:45 |
| 18 | Q.   Did you remember writing an E-mail to CREE on | 11:45 |
| 19 | their web site and complaining about the bulbs? | 11:45 |
| 20 | A.   I actually don't remember it. | 11:45 |
| 21 | Q.   Do you remember filling out information on | 11:45 |
| 22 | the web site that caused you to get Exhibit 2 in | 11:45 |
| 23 | response? | 11:45 |
| 24 | A.   No recollection of that at all. | 11:45 |
| 25 | Q.   We will go into that later. | 11:46 |

79

Jeffry L. Young                                                    September 18, 2018

 1    the exact numbers.                                        11:51

 2        Q.    Representations that the bulb would perform     11:51

 3    better than less expensive LED and non-LED bulbs,        11:51

 4    right?                                                    11:51

 5        A.    Yeah.  Absolutely.                              11:52

 6        Q.    And representations that the bulbs were        11:52

 7    guaranteed and/or warranted for performance?             11:52

 8        A.    Right.                                          11:52

 9        Q.    You saw that?                                   11:52

10        A.    Yes.                                            11:52

11        Q.    Look at the next paragraph.  It says:  "In     11:52

12    addition, Mr. Young viewed some internet and             11:52

13    television advertisements by CREE prior to               11:52

14    purchasing."  Is that accurate?                          11:52

15        A.    I don't know that it was CREE.  I saw          11:52

16    advertisements representing LED light bulbs.             11:52

17        Q.    On TV?                                          11:52

18        A.    On TV.                                          11:52

19        Q.    What about internet?                           11:52

20        A.    Oh, yeah.                                       11:52

21        Q.    You saw ads on the internet?                   11:52

22        A.    Oh, yeah, yeah.                                 11:52

23        Q.    But I thought you testified earlier that you   11:52

24    don't recall any CREE ads on the internet?               11:52

25            MR. WOODS:  Objection, mischaracterizes the      11:52

                                                                    85

| | | |
|---|---|---|
| 1 | testimony.  You can answer. | 11:52 |
| 2 | THE WITNESS:  Yeah.  I don't remember if | 11:52 |
| 3 | CREE, specifically.  I don't remember any, | 11:52 |
| 4 | specifically, I just know I have seen them. | 11:52 |
| 5 | MR. RICHTER:  Q.  You've seen ads on the TV? | 11:52 |
| 6 | A.   And the internet for LED bulbs. | 11:52 |
| 7 | Q.   And you saw these ads before you bought the | 11:53 |
| 8 | CREE bulbs? | 11:53 |
| 9 | A.   Yes. | 11:53 |
| 10 | Q.   How long before? | 11:53 |
| 11 | A.   I have no idea, years maybe. | 11:53 |
| 12 | Q.   Years maybe? | 11:53 |
| 13 | A.   Yeah. | 11:53 |
| 14 | Q.   Did those ads contain any representations | 11:53 |
| 15 | about the length of time the bulbs would last or the | 11:53 |
| 16 | quality of the light or anything like that? | 11:53 |
| 17 | MR. WOODS:  Object to form.  You can answer. | 11:53 |
| 18 | THE WITNESS:  Yes. | 11:53 |
| 19 | MR. RICHTER:  Q.  They did? | 11:53 |
| 20 | A.   Yes. | 11:53 |
| 21 | Q.   And you remembered that when you bought the | 11:53 |
| 22 | CREE bulbs? | 11:53 |
| 23 | A.   Yes. | 11:53 |
| 24 | Q.   Even though you don't remember that those ads | 11:53 |
| 25 | had anything to do with CREE? | 11:53 |

86

1      A.   Yes.   Sorry.                                      11:53

2      Q.   This sentence goes on to say that prior to         11:53

3   purchasing you saw internet and television ads that        11:53

4   contain representations that the bulbs, and these are      11:53

5   ads by CREE, that the bulbs would last 25 times longer     11:53

6   than incandescent bulbs and use a fraction of the          11:53

7   energy of incandescent bulbs.                              11:53

8           Do you remember seeing any television or           11:53

9   internet ads that said that?                               11:53

10      A.   I don't remember the specifics.  Like I say,      11:53

11   don't know if it said 25 years times longer or lasted     11:54

12   10 years.  I don't remember the specifics.                11:54

13      Q.   It says in the next sentence you relied on        11:54

14   these representations and in doing so decided to buy       11:54

15   the CREE bulbs.                                            11:54

16           Is that accurate?                                 11:54

17      A.   Yeah.                                             11:54

18      Q.   Well, but you said you don't even remember if     11:54

19   they were CREE advertisements, right?                     11:54

20           MR. WOODS:  Objection, mischaracterizes the       11:54

21   testimony.  You can answer.                               11:54

22           THE WITNESS:  I read the package on the CREE.     11:54

23           MR. RICHTER:  Q.  No.  I am focused here on       11:54

24   these internet and TV ads, just on those.                 11:54

25      A.   Sure.                                             11:54

87

| | | |
|---|---|---|
| 1 | Q.   And again, let me go back now to make sure we | 11:54 |
| 2 | are on the same page. | 11:54 |
| 3 | A.   Okay. | 11:54 |
| 4 | Q.   It says representations that the bulbs would | 11:54 |
| 5 | last up to 25 times longer than incandescent bulbs. | 11:54 |
| 6 | Do you remember ever seeing that in a television or an | 11:54 |
| 7 | internet ad? | 11:54 |
| 8 | A.   Not specifically, not those numbers. | 11:54 |
| 9 | Q.   Did you rely on anything like that from a | 11:54 |
| 10 | television or internet ad in purchasing the CREE | 11:54 |
| 11 | bulbs? | 11:55 |
| 12 | A.   No.  Just in purchasing LEDs in general. | 11:55 |
| 13 | Q.   What you relied on for purchasing the CREE | 11:55 |
| 14 | bulbs is you looked at the -- | 11:55 |
| 15 | A.   Sorry. | 11:55 |
| 16 | Q.   No worries.  What you relied on you said in | 11:55 |
| 17 | purchasing the CREE bulbs is you looked at the | 11:55 |
| 18 | package, right? | 11:55 |
| 19 | A.   Right. | 11:55 |
| 20 | Q.   All right.  It says next that you attempted | 11:55 |
| 21 | to contact CREE to request replacement but you were | 11:55 |
| 22 | unsuccessful through their web site. | 11:55 |
| 23 | A.   Yes. | 11:55 |
| 24 | Q.   So you did contact CREE eventually through | 11:55 |
| 25 | their web site, right? | 11:56 |

88

| | | |
|---|---|---|
| 1 | A.   Okay. | 01:21 |
| 2 | Q.   So I am asking for your understanding. | 01:21 |
| 3 | A.   Okay. | 01:21 |
| 4 | Q.   All right?  So you understand that you are | 01:21 |
| 5 | the class representative, right? | 01:21 |
| 6 | A.   Yes. | 01:21 |
| 7 | Q.   Do you have an understanding of what duties | 01:21 |
| 8 | you have to the class? | 01:22 |
| 9 | A.   No, not particularly -- some duties. | 01:22 |
| 10 | Q.   Do you know what it means to be a class | 01:22 |
| 11 | representative? | 01:22 |
| 12 | A.   Not really, I know you have got to pay | 01:22 |
| 13 | attention to what's going on, which I am not doing | 01:22 |
| 14 | well. | 01:22 |
| 15 | Q.   Do you, as a class representative do you | 01:22 |
| 16 | expect to receive any kind of compensation? | 01:22 |
| 17 | A.   I think it is a possibility. | 01:22 |
| 18 | Q.   What do you understand you might receive? | 01:22 |
| 19 | A.   I have no dollar amount in mind.  I think | 01:22 |
| 20 | whatever the law finds appropriate. | 01:22 |
| 21 | Q.   As a class representative, what have you done | 01:22 |
| 22 | so far in this litigation? | 01:22 |
| 23 | A.   Discussions with the attorney and come here. | 01:22 |
| 24 | Q.   You have reviewed pleadings, right? | 01:22 |
| 25 | A.   I don't even -- I don't understand pleadings. | 01:22 |

123

Jeffry L. Young                                                September 18, 2018

| | | |
|---|---|---|
| 1 | Q.   In other words, a complaint is a pleading. | 01:22 |
| 2 | A.   Oh, yeah, I have reviewed complaints, yes. | 01:22 |
| 3 | Q.   Have you kept abreast of what is going on in | 01:23 |
| 4 | this case? | 01:23 |
| 5 | A.   Not as well as I should have. | 01:23 |
| 6 | Q.   Do you know where this case was filed in | 01:23 |
| 7 | court? | 01:23 |
| 8 | A.   No.  I know it is filed in a court. | 01:23 |
| 9 | Q.   Do you know which court? | 01:23 |
| 10 | A.   In San Francisco.  I could be wrong. | 01:23 |
| 11 | Q.   Do you know if it is Federal or State Court? | 01:23 |
| 12 | A.   I do not. | 01:23 |
| 13 | Q.   Were you consulted about where this case | 01:23 |
| 14 | should be filed? | 01:23 |
| 15 | MR. WOODS:  Objection. | 01:23 |
| 16 | MR. RICHTER:  Q.  Yes or no. | 01:23 |
| 17 | MR. WOODS:  Objection.  Invades | 01:23 |
| 18 | attorney-client privilege.  Don't answer. | 01:23 |
| 19 | MR. RICHTER:  Q.  Okay.  Do you know that | 01:23 |
| 20 | there were motions to dismiss the complaint in this | 01:23 |
| 21 | case? | 01:23 |
| 22 | A.   I heard something about that. | 01:23 |
| 23 | Q.   Do you know what the rulings were? | 01:23 |
| 24 | A.   I assume -- it wasn't dismissed because we | 01:23 |
| 25 | are here but no, I do not know.  Sorry. | 01:23 |

124