MICHAEL MCSHANE (SBN: 127944)
  mmcshane@audetlaw.com
LING Y. KUANG (SBN: 296873)
  lkuang@audetlaw.com
**AUDET & PARTNERS, LLP**
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102-3275
Telephone: (415) 568-2555
Facsimile: (415) 568-2556

MELISSA S. WEINER (Admitted *Pro Hac Vice*)
  mweiner@pswlaw.com
JOSEPH C. BOURNE (SBN: 308196)
  jbourne@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
Telephone: (612) 389-0600
Facsimile:  (612) 389-0610

*Attorneys for Plaintiff*

[Additional Counsel Listed in Signature Block]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| JEFF YOUNG, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> CREE INC., <br><br> Defendant. | CASE NO. 4:17-cv-06252-YGR <br><br> **CLASS ACTION** <br><br> **PLAINTIFF'S RENEWED REPLY BRIEF IN SUPPORT OF RENEWED MOTION FOR CLASS CERTIFICATION** <br><br> Date:   TBD <br> Time:   TBD <br> Crtrm.:  TBD |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................. 1

II.  THE MATERIAL FACTS SUPPORT CLASS TREATMENT ........................... 2

    A.  Cree Made Uniform False and Misleading Statements About the Longevity and Energy Savings of Its Lightbulbs ................................................. 2

    B.  Common Evidence and Expert Testimony Confirm Cree's LED Lightbulbs Are Uniformly Prone to Premature Failure ................................................. 4

III.  PLAINTIFF HAS SATISFIED THE REQUIREMENTS OF FED. R. CIV. P. 23 ............. 5

    A.  Common Issues Are Central to the Validity of Class Members' Claims ................. 5

        1.  The longevity representations present a common question. ................. 5

        2.  Causation is a common question. ................. 5

        3.  The existence of a defect is a common question. ................. 6

    B.  Plaintiff's Claims Are Typical of Class Members' Claims ................. 8

    C.  Plaintiff Is an Adequate Representative ................. 9

    D.  Common Issues Predominate Over Individual Issues ................. 10

        1.  Mr. Boedeker's testimony will prove class-wide damages. ................. 10

        2.  The common issues of Cree's false representations predominate. ................. 11

            (a)  Common proof of exposure and materiality predominates ................. 11

            (b)  The existence of a defect predominates over any individual issues regarding use and manifestation ................. 12

        3.  The question of whether purchasers are consumers does not cause individual issues to predominate. ................. 14

    E.  The Court Should Not Consider Cree's Existing Warranties in Its Superiority Analysis ................. 15

IV.  CONCLUSION ................. 15

i

1

## TABLE OF AUTHORITIES

2

**Cases**                                                                                                          **Page(s)**

3 *Arabian v. Sony Elecs., Inc.*,  No. 05-CV-1741, 2007 WL 627977 (S.D. Cal. Feb. 22, 2007)....... 14

4 *Baker v. Microsoft Corp.*, 797 F.3d 607 (9th Cir. 2015).......................................................... 7

5 *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974 (9th Cir. 2007) .......................................... 9

6 *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017).......................................... 15

7 *Broomfield v. Craft Brew All., Inc.*,

8     No. 17-cv-1027-BLF, 2018 WL 4952519 (N.D. Cal. Sept. 25, 2018).................................. 5, 11

9 *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796 (7th Cir. 2013)....................................... 13

10 *Chamberlan v. Ford Motor Co.*,

11     No. 03-cv-2628-CW, 2003 WL 25751413 (N.D. Cal. Aug. 6, 2003)...................................... 14

12 *Darisse v. Nest Labs, Inc.*,

13     No. 14-cv-1363-BLF, 2016 WL 4385849 (N.D. Cal. Aug. 15, 2016) ...................................... 6

14 *Davidson v. Apple, Inc.*,

15     No. 16-cv-04942-LHK, 2018 WL 2325426 (N.D. Cal. May 8, 2018) .......................... 7, 11, 13

16 *Falco v. Nissan N. Am., Inc.*,

17     No. CV 13-00686 DDP (MANx), 2016 WL 1327474 (C.D. Cal. Apr. 5, 2016) ...................... 6

18 *Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK,

19     2014 WL 1410264 (C.D. Cal. Apr. 9, 2014)................................................................ 15

20 *Gonzalez v. Owens Corning*, 885 F.3d 186 (3d Cir. 2018) ........................................ 7, 13

21 *Grodzitsky v. Am. Honda Motor Co.*,

22     No. 12-cv-1142, 2017 WL 8943159 (C.D. Cal. Oct. 30, 2017)................................................ 8

23 *Gutierrez v. CarMax Auto Superstores Ca.*, 248 Cal. Rptr. 3d 61 (Cal. Ct. App. 2018)............... 12

24 *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919 (C.D. Cal. 2015) ............................. 6, 11

25 *In re First All. Mortg. Co.*, 471 F.3d 977 (9th Cir. 2006) ............................................ 9

26 *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013)....... 15

27 *In re Hitachi Television Optical Block Cases*,

28     No. 08-cv-1746, 2011 WL 4499036 (S.D. Cal. 2011) .............................................. 7, 14

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,

    722 F.3d 838 (6th Cir. 2013) ....................................................................... 7, 13, 14

*Johnson v. Harley-Davidson Motor Co. Grp., LLC*, 285 F.R.D. 573 (E.D. Cal. 2012) ................ 14

*Johnson v. Hartford Cas. Ins. Co.*,

    No. 15-CV-04138-WHO, 2017 WL 2224828 (N.D. Cal. May 22, 2017) ............................... 10

*Keegan v. Am. Honda Motor Co., Inc.*,  284 F.R.D. 504 (C.D. Cal. 2012) ............................... 7, 13

*Korolshteyn v. Costco Wholesale Corp.*,

    No. 15-cv-709, 2017 WL 1020391 (S.D. Cal. Mar. 16, 2017) .................................. 15

*Kramer v. Toyota Motor Corp.*, 668 F. App'x 765 (9th Cir. 2016) .................................. 8

*Lara v. LG Elecs. U.S.A., Inc.*, No. 17-cv-5222, 2018 WL 3748177 (D. Minn. Aug. 7, 2018) ..... 14

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,

    244 F.3d 1152 (9th Cir. 2001) ...................................................................... 10

*Martin v. Monsanto Co.*,

    No. ED-CV-16-2168-JFW, 2017 WL 1115167 (C.D. Cal. Mar. 24, 2017).............................. 15

*Mendez v. C-Two Grp., Inc.*,

    No. 13-CV-05914-HSG, 2015 WL 8477487 (N.D. Cal. Dec. 10, 2015).................................. 10

*Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017) ...................................................... 7

*Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861 (N.D. Cal. 2012) .................................. 5

*Pella Corp. v. Saltzman*, 606 F.3d 391 (7th Cir. 2010)................................................. 13

*Peterson v. Alaska Commc'ns Sys. Grp., Inc.*, 328 F.R.D. 255 (D. Alaska 2018).......................... 9

*Peterson v. Costco Wholesale Co., Inc.*, 312 F.R.D. 565 (C.D. Cal. 2016) ............................... 7, 13

*Racies v. Quincy Bioscience, LLC*,

    No. 15-cv-00292-HSG, 2017 WL 6418910 (N.D. Cal. Dec. 15, 2017)................................... 15

*Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011) ...................................... 8

*Stuart v. RadioShack Corp.*, No. C-07-4499 EMC, 2009 WL 281941 (N.D. Cal. Feb. 5, 2009) ... 10

*Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466 (C.D. Cal. 2012) ...................................... 14

*Wisdom v. Easton Diamond Sports, LLC*,

    No. 18-cv-4078, 2019 WL 580670 (C.D. Cal. Feb. 11, 2019)................................................. 8

*Wolin v. Jaguar Land Rover North Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) .......................... 6, 12

*Zeisel v. Diamond Foods, Inc.*,

    No. 10-cv-1192-JWS, 2011 WL 2221113 (N.D. Cal. June 7, 2011) ......................... 9

**<u>Statutes</u>**

Cal. Civ. Code § 1761(d) ........................................................................................... 14

**<u>Rules</u>**

FRCP 23(a) ................................................................................................................. 1

FRCP 23(a)(2) ............................................................................................................ 5

FRCP 23(b)(2) ...................................................................................................... 1, 15

FRCP 23(b)(3) ...................................................................................................... 1, 15

# I.      INTRODUCTION

In this consumer fraud class action, Plaintiff's and the absent Class members' claims arise out of the same substantially similar, material misrepresentations on the packaging on Cree's LED Lightbulbs.[1] Cree touts the longevity, energy and cost savings, and warranty coverage of its Lightbulbs but Plaintiff's experts have demonstrated that (1) the common design of the Lightbulbs causes them to overheat such that every Lightbulb is prone to premature failure and (2) damages can be calculated on a class-wide basis.

Although Cree has moved to exclude the testimony of Plaintiff's design expert, Gary Allen, Ph.D., Cree's arguments do not defeat certification as they are based on mischaracterizations of the facts, Dr. Allen's analysis, and the legal standard applicable to expert testimony, as explained in more detail in Plaintiff's contemporaneously filed *Daubert* opposition brief. Cree's fact witnesses Jonathan Vollers and Yuan Frank Fang attack Dr. Allen's thorough testing and conclusions. But as Dr. Allen explains in his rebuttal report, Vollers' and Fang's arguments are based on misapprehensions of Energy Star guidelines and miscalculations of the impact of foldback circuitry. *See* Rebuttal Report of Gary R. Allen, Ph.D. ("Allen Rebuttal Report," ECF No. 126-1 at 4-51) ¶¶ 6-37, 80-89.[2]

Moreover, Cree's attacks on Plaintiff's adequacy and typicality as a class representative would impose a far higher burden on the class representative than the case law requires.[3]

As discussed in more detail below, Cree's arguments are without merit and certification pursuant to Federal Rules of Civil Procedure ("Rules") 23(b)(2) and 23(b)(3) is appropriate.

---

[1] "Lightbulbs" refers to the Cree LED lightbulbs identified in the chart previously submitted with Plaintiff's renewed motion for class certification and in Dr. Allen's report. *See* December 23, 2019 Declaration of Melissa S. Weiner in Support of Plaintiff's Renewed Motion for Class Certification ("Renewed Weiner Decl.," ECF No. 116-1), Ex. 1 attached thereto (ECF No. 116-2 at 2-6); *see also*, Expert Report of Gary R. Allen, Ph.D. (hereafter, "the Allen Report," ECF No. 115-6, filed provisionally under seal) at ¶ 2 & Table 2.

[2] The Allen Rebuttal Report was submitted as Exhibit 1 to the Declaration of Melissa S. Weiner in Support of Plaintiff's Opposition to Defendant's Motion to Strike Testimony of Dr. Gary Allen. *See generally*, ECF No. 126-1.

[3] Cree does not challenge the requirements of 23(b)(2) or the numerosity or adequacy of counsel requirements of 23(a).

## II.     THE MATERIAL FACTS SUPPORT CLASS TREATMENT

### A.     Cree Made Uniform False and Misleading Statements About the Longevity and Energy Savings of Its Lightbulbs

This case involves a readily identifiable category of Lightbulbs that were uniformly marketed, labeled, and suffered from a common design defect—making this case perfectly suited for class treatment. Variations in the shape, color, size, or wattage of Cree's Lightbulbs do not adversely impact the analysis as to the class-wide treatment of the uniform statements regarding longevity at issue in this litigation, nor do they change the failure mechanism with each and every Lightbulb.

Dr. Allen confirms that the Lightbulbs have a common thermal design within each of the basic architectures, and that is where the most likely failure of an LED lightbulb will occur. *See id.* ¶¶ 12-16, 17-19. And based on his testing of temperatures at critical locations (the LED junction, electrolytic capacitor, and heat sink), Dr. Allen concluded that the Lightbulbs share a common design defect of poor thermal management, which results in the Lightbulbs operating too hot, causing the Lightbulbs to fail prematurely.[4] *See id.* ¶ 3.

Plaintiff's damages expert, Stefan Boedeker, confirms through the use of the well-established and accepted conjoint analysis that consumers are willing to pay a premium price for Lightbulbs marketed to possess enhanced performance. Cree makes the same, or substantially similar, material misrepresentations with respect to all the Lightbulbs at issue in this litigation on its packaging: they last longer than other bulbs, offer cost and energy savings, and are covered by a Cree 'satisfaction guarantee' warranty, which supports the longevity claim. For example, the packaging for every Lightbulb at issue makes longevity and performance claims in at least one of three areas: (1) energy and cost savings, such as "82% Less Energy Consumption" and "$226 Lifetime Energy Savings"; (2) longevity and performance comparisons to other LED bulbs, such as "Our LED bulbs work better and last longer"; and (3) "100% Satisfaction Guarantee." *See* Renewed Weiner Decl., Ex. 1 (ECF No. 116-2 at 2-6). While these statements may vary slightly, they are

---

[4] Home Depot customer reviews produced by Cree suggest a high failure rate and corroborate Dr. Allen's conclusion that the Lightbulbs fail prematurely. *See* Allen Rebuttal Report ¶¶ 75-79.

1    substantially similar such that class treatment is appropriate.

2         Plaintiff has repeatedly demonstrated that all of Cree's Lightbulbs sold in California have

3    packaging that consistently labels and markets them for (1) longevity with (2) cost and energy

4    savings or (3) a warranty that corroborates longevity. Although Cree notes a comparison to "cheap

5    LED bulbs" has never been on the packaging, the packaging of several Lightbulbs make a similar

6    claim that compares their quality and longevity to other LED bulbs: "Our LED bulbs work better

7    and last longer." *See* Excerpts of Philip A. Primato Dep. at 55:15-56:2, 59:14-16, 64:19-23 (ECF

8    No. 91-3 at 8-9, 12, 15); Primato Decl., Exs. 21-23, 30 (ECF No. 86-2) at 102, 105, 112, 116, 122,

9    125, 184, 187, 193, 196, 217. These statements are substantially similar and reinforce the uniform

10   claims: longevity and cost and energy savings.

11        The fact that Cree manufactures different lines of Lightbulbs with varying bulb designs is of

12   no consequence. As Dr. Allen concluded based on an examination of the thermal design and internal

13   components of the Lightbulbs, there are four fundamental lamp architectures across the Lightbulbs.

14   *See* Allen Report ¶¶ 12-16. Their thermal design and internal components are sufficiently similar to

15   assess for a design defect. *See id.* Cree admits that once a product is launched "the packaging that it

16   was launched in would be the packaging that it stayed in throughout the life of that product until it

17   was pulled off the marketplace." *See* Excerpts of Scott Schwab 30(b)(6) Dep. at 49:13-16 (ECF No.

18   116-2 at 189). While there may be some cosmetic variations between the packaging of different

19   Lightbulbs, Cree has not offered any evidence to contradict the material fact that *separate and apart*

20   *from the Energy Star or Lighting Facts labels*, all Lightbulbs are marketed and labeled to advise

21   consumers that the promised longevity results in energy and costs savings. *See* Pl.'s Renewed Mot.

22   for Class Certification (ECF No. 116) at p. 3. Cree's purported inability to track the specific

23   generation of a bulb a consumer purchased is inconsequential when Cree's promises concerning

24   longevity and energy savings are uniform across the universe of Lightbulbs.

25        It is appropriate to characterize the Lightbulbs by fundamental architecture as there is no

26   industry standard nor peer-reviewed nomenclature that applies. Dr. Allen appropriately grouped the

27   Lightbulbs according to thermal characteristics in order to demonstrate the existence of the common

28   defect. *See* Allen Report ¶¶ 12-16.

**B.**   **Common Evidence and Expert Testimony Confirm Cree's LED Lightbulbs Are Uniformly Prone to Premature Failure**

The documents Cree produced in this litigation provide common evidence of widespread failure. For example, Cree recorded ██████████ customer service inquiries from California consumers (including complaints, information requests, and warranty claims) from only ██████ ████████████. *See* Excerpts of Amy Soens Dep. at 66:7-71:17 (ECF No. 116-4 at 47-52); *see also*, CREE_00058448 (ECF No. 115-22, filed provisionally under seal). In addition, Home Depot customer reviews demonstrate that the Lightbulbs exhibited widespread premature failure. *See* Allen Rebuttal Report ¶¶ 75-79.

This evidence is consistent with the findings of Plaintiff's expert, Dr. Allen, who opines that the Lightbulbs all share a common design defect — "they operate too hot and because of this will experience premature failure." Allen Report ¶ 3. Thus, Dr. Allen's testimony will establish both the design defect and the failure mode of the Lightbulbs.

In addition, Cree's suggestion that its claimed 2% warranty return rate is meaningful evidence of the actual failure rate of the Lightbulbs is belied by the fact that Cree's warranty has always been written with requirements that make it burdensome for consumers to file a claim, and thus less likely that they will, such as a limitation of hours of use, UPC proof of purchase, and register receipt. *See* Schwab Decl., Ex. 5.[5] According to Scott Schwab, Cree never held consumers to the warranty's requirement to track the usage of their LED Lightbulbs, but he also did not recall Cree ever notifying consumers that they would not be required to comply with the terms of the warranty. *See* Excerpts of Scott Schwab Individual Dep. at 23:22-24:14 (ECF No. 116-4 at 64-65). Of course, consumers often may not keep receipts and proof of purchase for relatively small consumer purchases, let alone track the number of hours they use their LED Lightbulbs. *See id.* at 27:11-20, ECF No. 116-4 at 66 (noting he personally keeps receipts of only some consumer purchases and there is no "rhyme or reason" to which receipts he keeps). And as Cree's witnesses

---

[5] All versions of Cree's warranty, at minimum, "may require a purchase receipt," and virtually all of them explicitly require at least the register receipt and UPC proof of purchase. *See* Schwab Decl. Ex. 5, ECF 86-1 at 46-49 (listing text of all versions of consumer warranty).

Schwab and Primato testified, they have no information about consumers who are unhappy with their Lightbulbs but do not make a warranty claim, return, or complaint. *See id.* at 14:14-15:17 (ECF No. 116-4 at 62-63); Primato Dep. 20:19-21:17 (ECF No. 116-4 at 73-74).

**III.    PLAINTIFF HAS SATISFIED THE REQUIREMENTS OF FED. R. CIV. P. 23**

   **A.    Common Issues Are Central to the Validity of Class Members' Claims**

      **1.    The longevity representations present a common question.**

Cree argues that the representations on the packaging varied, which makes them incapable of class treatment. But this Court has already concluded Plaintiff can assert claims for absent class members based on Lightbulbs he did not purchase when the "products and alleged misrepresentations are substantially similar." Order re Mot. to Dismiss 16, ECF 42 (quoting *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012)).

Courts have certified consumer classes in cases involving multiple products when those products' packaging evokes a common theme or shares substantial similarities. *See Broomfield v. Craft Brew All., Inc.*, No. 17-cv-1027-BLF, 2018 WL 4952519, at *1-2, 6 (N.D. Cal. Sept. 25, 2018) (holding thematically similar representations on packaging of beer, each variety of which had different Hawaii-related imagery, were sufficient to "satisfy the low threshold of Rule 23(a)(2)").

In this case, all of the packaging on the LED Lightbulbs that Class members purchased contained comparative longevity claims. Renewed Weiner Decl., Ex. 1 (ECF No. 116-2 at 2-6). The longevity claims all evoke a common theme, so there is no impediment to commonality.

      **2.    Causation is a common question.**

Cree argues causation is not capable of common proof because of variations in the packaging and the existence of non-actionable statements in the Lighting Facts label. But cosmetic variations in the packaging do not defeat commonality, and Cree's labels are substantially similar with regard to the comparative longevity claims at issue in this case.

Nor is commonality precluded by the existence of both actionable and non-actionable representations on product packaging. Cree cites a case finding too much variation in the representations class members saw where: (1) some packaging said Nest thermostats could result in up to 20% energy savings (which was false); (2) some said programmable thermostats in general

5

1    can save up to 20% (which was true); and (3) some did not mention the 20% energy savings at all.

2    *See Darisse v. Nest Labs, Inc.*, No. 14-cv-1363-BLF, 2016 WL 4385849, at *6 (N.D. Cal. Aug. 15,

3    2016). But that case says nothing about preemption. And in contrast to *Darisse* where not all

4    products contained the challenged representations, here, all the packaging of the Lightbulbs at issue

5    made comparative longevity claims.

6         Causation, or reliance, can be inferred when the challenged representations are material

7    when judged by the objective "reasonable person" standard, an inquiry that is the same for every

8    class member. *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 983 (C.D. Cal. 2015). And as

9    discussed below regarding the predominance inquiry, the expert testimony of Stefan Boedeker will

10   establish that Plaintiff and Class members paid a premium price for the comparative longevity

11   representations that Plaintiff challenges, a price premium that is *not* based on the representations in

12   the Lighting Facts panel.

13              **3.      The existence of a defect is a common question.**

14        The existence of a common defect presents a common issue that will materially advance the

15   litigation and is all that is required for class certification. Dr. Allen's testimony establishes that there

16   is a design defect, it can be analyzed on a class-wide basis based on the similar thermal design of

17   the Lightbulbs, and the defect causes the Lightbulbs to fail prematurely, in advance of the promised

18   longevity representations on the packaging of every Lightbulb. *See* Allen Report ¶ 3; Allen Rebuttal

19   Report §§ I-II, V.

20        *Wolin v. Jaguar Land Rover North Am., LLC*, 617 F.3d 1168 (9th Cir. 2010), is instructive.

21   The plaintiffs alleged their vehicles were defective because they had an alignment defect that caused

22   uneven and premature tire wear. *See id.* at 1170. The court held that common issues predominated

23   when all class members alleged that they were affected by the same defect. *See id.* at 1172.

24        The purchasing of different models from a manufacturer does not defeat commonality when

25   the alleged defect is common to all the models. *See Falco v. Nissan N. Am., Inc.*, No. CV 13-00686

26   DDP (MANx), 2016 WL 1327474, at *2, 4-5 (C.D. Cal. Apr. 5, 2016). When a component or system

27   is present in all models that is alleged to be the source of the defect, minor variances in different

28   models do not defeat commonality. *See id.*

Furthermore, alleged differences in use do not defeat commonality. *See Peterson v. Costco Wholesale Co., Inc.*, 312 F.R.D. 565, 576 (C.D. Cal. 2016); *see also Baker v. Microsoft Corp.*, 797 F.3d 607, 614 (9th Cir. 2015) (explaining "plaintiffs' breach of express warranty claim presents a common factual question—is there a defect?" even though only 0.4% of owners reported manifestation), *rev'd on other grounds sub nom*, *Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017); *Davidson v. Apple, Inc.*, No. 16-cv-04942-LHK, 2018 WL 2325426, at *12 (N.D. Cal. May 8, 2018) (finding existence of defect common question regardless of manifestation).

As the Sixth Circuit explained in holding commonality was satisfied by questions of the existence of a design defect, it did not matter if all class members experienced a mold problem because they all "were injured at the point of sale upon paying a premium price for the [washing machines] as designed." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 857 (6th Cir. 2013). Indeed, the argument that manifestation of a defect defeats commonality is "based on a misapprehension of what commonality demands." *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 523 (C.D. Cal. 2012). That exact misapprehension animates Cree's argument.

Cree relies heavily on the out-of-circuit *Gonzalez v. Owens Corning*, 885 F.3d 186 (3d Cir. 2018). But *Gonzalez* held there was no Article III case or controversy because the plaintiffs sought a class-wide declaration that Owens Corning could not raise a bankruptcy discharge defense, when it had already represented it would not. *See id.* at 193-95. That was the sole reason the court gave to find commonality lacking. *See id.* at 192-95.

Cree's argument fundamentally confuses the commonality and predominance inquiries. The court's reasoning in *Gonzalez* relates to *predominance*. *See id.* at 197-99. The same is true for Cree's citation to *Hitachi*, where the court found individual questions predominated. *See In re Hitachi Television Optical Block Cases*, No. 08-cv-1746, 2011 WL 4499036, at *4-5 (S.D. Cal. 2011). This mistake matters, because commonality asks whether there are common questions capable of common answers; predominance asks whether those common questions predominate over individual questions.

Cree's other cases fare no better, since they involved no evidence supporting the existence of a defect or else premised liability on individual variation rather than the existence of a common

7

defect. *See Kramer v. Toyota Motor Corp.*, 668 F. App'x 765, 766 (9th Cir. 2016) (unpublished) (finding lack of commonality *after granting summary judgment* in favor of defendant); *Wisdom v. Easton Diamond Sports, LLC*, No. 18-cv-4078, 2019 WL 580670, at *6 (C.D. Cal. Feb. 11, 2019) (defining class as purchasers of baseball bats "where such bats . . . were labeled as being a lighter weight than they actually were," but not alleging any common defect); *Grodzitsky v. Am. Honda Motor Co.*, No. 12-cv-1142, 2017 WL 8943159, at *6 (C.D. Cal. Oct. 30, 2017) (finding commonality lacking *after excluding plaintiffs' liability expert*).

Plaintiff's expert, Dr. Allen, confirms that the Lightbulbs are prone to failure earlier than advertised under ordinary use conditions. *See* Allen Report ¶ 3. Contrary to Cree's assertion, Dr. Allen directly addresses causation by discussing, in detail, where excessive temperatures occur, why they occur, and how that causes the Lightbulbs' premature failure. *See id.* ¶¶ 18-19, 21, 24, 47-68. In rebuttal, Dr. Allen also explains that the tests Cree seeks to rely on do not produce accurate lifetime estimates. Allen Rebuttal Report ¶¶ 24-34, 45, 52, 62. Under these circumstances, the existence of the defect presents a common question sufficient to establish commonality.

**B.    Plaintiff's Claims Are Typical of Class Members' Claims**

Cree argues Plaintiff is not typical as a class representative solely because he did not see all of Cree's misrepresentations about the Lightbulbs.

Cree relies on *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019-20 (9th Cir. 2011), which is inapposite. Typicality merely seeks "to assure that the interest of the named representative aligns with the interests of the class" and "is satisfied when each class member's claim arises from the same course of events." *Id.* (quotations omitted). Plaintiff's basis for this lawsuit is Cree's misrepresentations regarding the Lightbulbs' longevity, cost savings, and warranty. When Plaintiff purchased these Cree products, he saw these misrepresentations. *See* Excerpts of Jeffry Young Dep. at 82:10-85:10 (ECF No. 116-5 at 18-20). Plaintiff's and all Class members' claims arise from the same aggregate misleading representations, and because the Lightbulbs cannot live up to Cree's representations regarding longevity, costs savings, and warranty, Plaintiff's claims are typical.

Cree also argues Plaintiff lacks standing to pursue a claim based on those misrepresentations and therefore cannot represent a Class that does. But Plaintiff has standing because: (1) he purchased

8

a product sold not as advertised; (2) he paid a price premium for those advertised features due to Cree's conduct; and (3) his injury will be remedied both by economic damages and injunctive relief. *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (articulating test). In addition, this Court has confirmed Plaintiff has standing to pursue claims on behalf of class members who purchased Lightbulbs with substantially similar representations. *See* Order re Mot. to Dismiss 16-17, ECF 42.

Absent class members who saw and relied on Cree's television ads or "100% Satisfaction Guaranteed" language have claims arising from the same overall fraud perpetrated by Cree. The television advertisements reemphasize Cree's longevity promises, and the "Guarantee" is just another warranty promise to that same end. The specific medium and exact language of the misrepresentations do not limit the Court's ability to certify this class. *See In re First All. Mortg. Co.*, 471 F.3d 977, 991 (9th Cir. 2006) (permitting class treatment in fraud cases where defendant employs "standardized sales pitch" and consistent "underlying scheme," even where oral misrepresentations varied in wording).

### C.  Plaintiff Is an Adequate Representative

Cree challenges Plaintiff's adequacy on the following grounds: (1) discrepancies between his deposition and errata; and (2) Plaintiff's knowledge of his claim and duties.

This case is similar to other cases in which courts have found that differences between deposition testimony and errata did not raise credibility concerns sufficient to jeopardize the absent class members' rights or to predominate the trial. *See, e.g.*, *Peterson v. Alaska Commc'ns Sys. Grp., Inc.*, 328 F.R.D. 255, 274 (D. Alaska 2018) (finding differences between deposition and errata not "so sharp as to jeopardize absent class members," nor "a flagrant case where credibility concerns are likely to predominate or preoccupy the litigation"); *Zeisel v. Diamond Foods, Inc.*, No. 10-cv-1192-JWS, 2011 WL 2221113, at *8 (N.D. Cal. June 7, 2011) (amended answers in errata did not mean plaintiff's "credibility is so open to question that it is likely to harm his case").

Plaintiff does not rely on the errata (which was stricken); he instead draws support from his declaration in support of class certification. *See generally* Decl. of Plaintiff Jeffry Young (ECF No. 116-5 at 30-37). For example, several changes Plaintiff made had to do with his understanding of

9

his role a class representative:

> In my deposition, I was confused and answered in the negative when Counsel for Cree asked me certain questions about whether I was aware of my duties as a class representative. In truth, I did understand that I had more work such as the work described above to do. I am willing and able to do so in order to represent myself and the class of purchasers. I signed a document acknowledging these duties at the outset of this litigation….

*See id.* ¶ 13. These types of changes are not so significant as to raise credibility concerns that would predominate at trial or jeopardize the Class members' rights.

Next, Plaintiff has enough knowledge to continue as a class representative. The required threshold for knowledge of a class representative is low; the representative must be "startlingly unfamiliar with the case." *Johnson v. Hartford Cas. Ins. Co.*, No. 15-CV-04138-WHO, 2017 WL 2224828, at *14 (N.D. Cal. May 22, 2017) (quotations omitted). Only a "basic understanding" of the claims is necessary. *Stuart v. RadioShack Corp.*, No. C-07-4499 EMC, 2009 WL 281941, at *11 (N.D. Cal. Feb. 5, 2009). Plaintiff understands he is suing Cree for selling LED Lightbulbs that do not live up to Cree's representations on the packaging, which is all that is required.

Finally, Cree argues Plaintiff has neglected his duties because he testified that he should pay better attention to this litigation. But that is an aspirational statement, not a legal admission. At bottom, Plaintiff is familiar enough with the case and willing to serve. *See Mendez v. C-Two Grp., Inc.*, No. 13-CV-05914-HSG, 2015 WL 8477487, at *6 (N.D. Cal. Dec. 10, 2015) (resolving doubts about understanding of duties in favor of adequacy); *see also Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (finding adequate representative who was "currently willing and able to perform" duties).

### D. Common Issues Predominate Over Individual Issues

#### 1. Mr. Boedeker's testimony will prove class-wide damages.

Cree's argument that Mr. Boedeker's testimony cannot demonstrate class-wide damages or restitution is based solely on its renewed motion to strike Mr. Boedeker's testimony. As discussed in more detail in Plaintiff's opposition to the motion to strike, that argument fails. Damages can be calculated on a class-wide basis pursuant to a price premium theory using a conjoint analysis that has been widely accepted by courts. *See* Opp. to Renewed Motion to Strike Boedeker Report at 1.

1   If the Court rules only certain representations are part of the case, Mr. Boedeker can calculate

2   damages attributable only to those representations. *See id.* at 8-9. His testimony is consistent with

3   Plaintiff's theory of liability, that Cree's marketing representations concerning the longevity, energy

4   and cost savings, and performance warranty of the Lightbulbs are false and misleading. Mr.

5   Boedeker's testimony will show those attributes have value to consumers and, but for Cree's

6   misrepresentations, the price Class members paid would have been lower. *See id.* at 12-13.

7            **2.        The common issues of Cree's false representations predominate.**

8                       (a)       Common proof of exposure and materiality predominates

9            Courts will "presume class members who purchased products with misleading packaging …

10  were exposed to misleading statements on that packaging." *Davidson*, 2018 WL 2325426, at *18.

11  That is because all the class members are "necessarily exposed" to the misleading statements or

12  omissions in the same way. *See id.* As set forth above, every Lightbulb at issue contains comparative

13  longevity claims on the packaging. *See* Renewed Weiner Decl., Ex. 1 (ECF No. 116-2 at 2-6). Thus,

14  all Class members were exposed to the same misleading statements.

15         Cosmetic differences or minor variations in the packaging make no difference. In

16  *Broomfield*, the court rejected the defendant's argument that the "packaging meaningfully differ

17  between the beers and that consumers may have gotten conflicting information as to the brewing

18  location of the beers from other sources besides the packaging." 2018 WL 4952519, at *12. Instead,

19  the court reasoned that each package included a (different) scene relating to Hawaii, and therefore,

20  "[t]he packaging as a whole and the references to Hawaii made thereon are sufficiently comparable

21  to create common questions of fact about the nature of the alleged misrepresentation." *Id.* Similarly,

22  questions about whether class members were exposed to other information about the brewing

23  location were irrelevant because "the fundamental question that predominates is whether the

24  packaging was materially misleading to a *reasonable* consumer." *Id.*

25         Given the exposure to the misrepresentations by all Class members, questions of causation

26  or reliance also predominate. Because materiality is determined by the reasonable person standard,

27  the issue of causation is common to all class members and does not require individualized proof.

28  *See ConAgra*, 90 F. Supp. 3d at 983. This is inherently a common issue capable of class-wide

11

1   resolution as it is an objective standard. Cree's assertion that the survey of Dr. Lynne Weber can

2   prove that Cree's marketing statements were not material to consumers does not negatively impact

3   the commonality analysis; this evidence may be relevant to the merits (if credited by the fact-finder),

4   but it does not create individualized issues. And despite Cree's contentions, Plaintiff certainly

5   expects to prevail on the merits. A fact is material "if a reasonable consumer would deem it

6   important in determining how to act in the transaction at issue." *Gutierrez v. CarMax Auto*

7   *Superstores Ca.*, 248 Cal. Rptr. 3d 61, 93 (Cal. Ct. App. 2018). A reasonable consumer would attach

8   importance to the existence of a characteristic that changes the value of a product at the point of

9   sale. As Boedeker's testimony will demonstrate, Cree's comparative longevity representations

10  caused consumers to pay a premium price for those advertised attributes.

11              (b)        The existence of a defect predominates over any individual
12                          issues regarding use and manifestation

13      Dr. Allen's testimony confirms the existence of a latent design defect that causes the

14  Lightbulbs to fail prematurely. Allen Report ¶ 3. Dr. Allen's conclusion is reinforced by the

15  existence of other common evidence, including documents produced by Cree, showing widespread

16  premature failure of the Lightbulbs. *See supra* § II(B).

17      Case law adamantly supports a finding of predominance. For example, *Wolin* held common

18  issues in that automobile defect case (the existence of the defect, the defendant's knowledge, and

19  the legal implications of its conduct) predominated. 617 F.3d at 1173. The defendant argued there

20  was no common defect and that individual class members' vehicles suffered "tire wear due to

21  individual factors such as driving habits and weather." *Id.* The court rejected that argument, holding

22  that "proof of the manifestation of a defect is not a prerequisite to class certification." *Id.* The court

23  explained that the defendant's argument was really "whether class members can win on the merits,"

24  which is not an issue for class certification and "does not overlap with the predominance test." *Id.*

25  The same is true here. Plaintiff need not prove that the defect manifested in all Lightbulbs, rather,

26  Plaintiff demonstrates that the Lightbulbs all share a common design defect making them susceptible

27  to premature failure. Allen Report ¶¶ 3, 43-68.

28      Courts repeatedly conclude the existence of a common defect can be proved through

12

common evidence. *See Pella Corp. v. Saltzman*, 606 F.3d 391, 393 (7th Cir. 2010) (holding the single "common predominant issue of whether the windows suffer from a single, inherent design defect leading to wood rot is the essence of the dispute and is better resolved by class treatment"); *Davidson*, 2018 WL 2325426, at *20; *Peterson*, 312 F.R.D. at 579; *Keegan*, 284 F.R.D. at 531.

Courts also routinely reject defendants' arguments that "minor factual variations in individual consumption . . . are significant enough to overcome the significant common questions and defeat predominance." *Peterson*, 312 F.R.D. at 580; *accord Pella*, 606 F.3d at 393 (finding individual questions of proximate causation "affected by specific conditions such as improper installation" do not predominate); *Davidson*, 2018 WL 2325426, at *20 ("Individual factors may affect class members' iPhones' performance, but these individual factors do not affect the ultimate question whether the iPhones were sold with a defective touchscreen."); *Keegan*, 284 F.R.D. at 531 ("[E]ngaging in such an analysis exceed[s] the scope of the predominance inquiry.").

Cree relies heavily on *Gonzalez*, but that case does not support Cree's position. The court found predominance lacking where the plaintiffs defined the class as purchasers of certain shingles "where those shingles manifested any cracking . . . or deterioration during the warranty coverage period." *Gonzalez*, 885 F.3d at 189. The court distinguished latent defect cases "because there is a critical distinction between a latent defect and a non-existent one." *Id.* at 197. The plaintiffs did not "identify a particular defect that can be attributed to all Oakridge shingles"; they (and their expert) actually *admitted* many of the shingles were not defective because the shingles were defective only if they failed during the warranty period. *Id.* at 197, 199.

Liability in *Gonzalez* was premised on the manifestation of product failure; this case, however, is more like the latent defect cases the court distinguished.[6] That decision makes sense because the predominance inquiry "needs only to consider Plaintiffs' theory of the case and the type of evidence that Plaintiffs will use to prove this theory." *Davidson*, 2018 WL 2325426, at *20.

Cree also cites *Hitachi*, where the court found that the existence of 43 models of the product

---

[6] *Gonzalez* distinguished cases involved a latent defect in washing machines. *See Whirlpool*, 722 F.3d at 859 (holding common liability questions predominate over individual questions of manifestation); *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (same).

at issue defeated predominance on the question of whether there was a design defect. *See id.*, 2011 WL 4499036, at *4-5. That case is distinguishable because the defendant submitted evidence of material design differences from model to model. *See id.* at *4. In addition, the weight of authority holds that numerous product models do not defeat commonality when the defect is materially similar across the models. *See Whirlpool*, 722 F.3d at 854. The evidence here does not support differences in design such that predominance is defeated; rather, Dr. Allen *confirms* that the design is common across the Lightbulbs. *See* Allen Report ¶¶ 3, 12-16; Allen Rebuttal Report ¶¶ 6-21.

> **3.    The question of whether purchasers are consumers does not cause individual issues to predominate.**

Plaintiff's proposed Class, consisting of persons who purchased the Lightbulbs "for end use, and not resale," satisfies the requirement that Class members be consumers. The CLRA defines a consumer as "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." Cal. Civ. Code § 1761(d). Businesses reselling Lightbulbs are excluded from the class definition, only end users remain. In light of the case law's broad interpretation of this definition designed to give effect to the CLRA's mandated liberal construction, every person within the proposed Class should be deemed to be a consumer. *See, e.g.*, *Lara v. LG Elecs. U.S.A., Inc.*, No. 17-cv-5222, 2018 WL 3748177, at *5 (D. Minn. Aug. 7, 2018) (defining "consumer" broadly); *Chamberlan v. Ford Motor Co.*, No. 03-cv-2628-CW, 2003 WL 25751413, at *7 (N.D. Cal. Aug. 6, 2003) (construing CLRA permissively). But if the Court disagrees, Plaintiff requests to redefine the proposed Class to substitute the language "for personal, family, or household purposes" in place of "for end use, and not for resale."

Cree cites two cases finding the question of whether class members are consumers requires an individualized inquiry and weighs against predominance. *See Johnson v. Harley-Davidson Motor Co. Grp., LLC*, 285 F.R.D. 573, 583 (E.D. Cal. 2012); *Arabian v. Sony Elecs., Inc.*, No. 05-CV-1741, 2007 WL 627977, at *14 (S.D. Cal. Feb. 22, 2007). But that reasoning would result in the bizarre outcome that CLRA claims generally cannot be certified even though such claims "are well-suited for class certification." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 474 (C.D. Cal. 2012). Cree's cases were also decided before the Ninth Circuit rejected an "ascertainability"

14

requirement. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123 (9th Cir. 2017). It is now clear that consumers may prove their class membership via affidavit at the claims administration stage. *See id.* at 1132. This simply does not impact the predominance analysis.

### E.   The Court Should Not Consider Cree's Existing Warranties in Its Superiority Analysis

In its opposition, Cree argues that since it already has warranties in place, a class action would provide nothing beneficial. *See* Cree's Opposition to Renewed Motion for Class Certification at p. 25 (ECF No. 119 at 32). However, even setting aside the real problems with Cree's warranty process, *see supra* § II(B), an available private remedy is nothing more than a red herring. Cree ignores the plain language of the Rule 23(b)(3) which, provides "[t]hat a class action is superior to other available methods for fairly and efficiently *adjudicating* the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added).

Courts routinely hold that a private remedy such as a refund program or warranty is not relevant to the superiority analysis; it is neither a superior method of "adjudication" to a class action nor a method of adjudication at all. *See Racies v. Quincy Bioscience, LLC*, No. 15-cv-00292-HSG, 2017 WL 6418910, at *5 (N.D. Cal. Dec. 15, 2017); *Martin v. Monsanto Co.*, No. ED-CV-16-2168-JFW, 2017 WL 1115167, at *9 (C.D. Cal. Mar. 24, 2017); *Korolshteyn v. Costco Wholesale Corp.*, No. 15-cv-709, 2017 WL 1020391, at *8 (S.D. Cal. Mar. 16, 2017); *Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK, 2014 WL 1410264, at *12 (C.D. Cal. Apr. 9, 2014); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 34–35 (D. Me. 2013). Accordingly, this Court should not consider Cree's existing warranty program in its superiority analysis.

## IV.   CONCLUSION

Based on the foregoing and the entire record, Plaintiff respectfully requests that the Court certify the proposed Class pursuant to Rules 23(b)(2) and 23(b)(3).

Dated: April 24, 2020          By:  ____ s/ *Michael McShane* _____

Michael McShane (SBN: 127944)
mmcshane@audetlaw.com
Ling Y. Kuang (SBN: 296873)

15

lkuang@audetlaw.com
Kurt D. Kessler (SBN: 327334)
  kkessler@audetlaw.com
**AUDET & PARTNERS, LLP**
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102-3275
Telephone: (415) 568-2555
Facsimile: (415) 568-2556

Melissa S. Weiner (Admitted *Pro Hac Vice*)
  mweiner@pswlaw.com
Joseph C. Bourne (SBN: 308196)
  jbourne@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
Telephone: (612) 389-0600
Facsimile:  (612) 389-0610

Michael Liskow
  liskowm@thesultzerlawgroup.com
**THE SULTZER LAW GROUP P.C.**
270 Madison Avenue, Suite 1800
New York, New York 10016
Telephone: (212) 969-7811
Facsimile: (888) 749-7747

Charles E. Schaffer
  cschaffer@lfsblaw.com
David Magagna
  dmagagna@lfsblaw.com
**LEVIN SEDRAN & BERMAN**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663

Charles J. LaDuca
  claduca@cuneolaw.com
Alexandra C. Warren
  awarren@cuneolaw.com
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
Facsimile: (202) 589-1813

*Attorneys for Plaintiff*