Stuart M. Richter (SBN 126231)
stuart.richter@katten.com
Andrew J. Demko (SBN 247320)
andrew.demko@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone:  310.788.4400
Facsimile:  310.788.4471

Rebecca K. Lindahl (*pro hac vice*)
rebecca.lindahl@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
550 South Tryon Street, Suite 2900
Charlotte, NC 28202-4213
Telephone:  704.344.3141
Facsimile:  704.344.2277

Attorneys for Defendant Cree, Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| JEFF YOUNG, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>CREE, Inc.,<br><br>    Defendant. | Case No.   4:17-cv-06252-YGR<br><br>Hon. Yvonne Gonzalez Rogers<br><br>**DEFENDANT CREE, INC'S REPLY IN SUPPORT OF MOTION TO STRIKE**<br><br>Complaint Filed: October 27, 2017<br><br>Date: TBD<br>Time: TBD<br>Place: TBD |

# **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. PLAINTIFF'S RENEWED RESPONSE CONTAINS MULTIPLE FACTUAL INACCURACIES. ....................................................................................... 1

    A. Cree did not move to exclude Mr. Boedeker based upon his credentials or experience. ...................................................................... 1

    B. Dr. Steckel, not Dr. David, is Cree's conjoint analysis expert. ............ 1

    C. Dr. Steckel performed and billed more than five times the amount of work Plaintiff alleges in his Opposition. ............................. 2

    D. Dr. Steckel performed the analysis set out in his report. ...................... 3

III. BOEDEKER'S ARGUMENTATIVE SUPPLEMENTAL REPORT FAILS TO ADDRESS THE FUNDAMENTAL FLAWS IDENTIFIED AND EXPLAINED BY DRS. DAVID AND STECKEL. ................................................................................................................... 3

IV. PLAINTIFF FAILS TO DISTINGUISH CONTROLLING CASE LAW THAT REQUIRES BOEDEKER'S REPORT TO BE EXCLUDED. ................................................................................................................ 5

    A. Boedeker's opinions must be excluded because he tests loaded language that is inconsistent with Cree's packaging. ........................... 5

    B. Boedeker's opinions must be excluded because his testing is predicated on a theory that 100% of bulbs will fail prematurely. ........ 6

    C. Boedeker does not have personal knowledge regarding the design of his survey. ............................................................................. 8

    D. Boedeker's opinions must be excluded because he does not account for supply-side factors. ............................................................ 9

V. CONCLUSION ............................................................................................................ 10

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baker v. Microsoft Corp.*,
   797 F.3d 607 (9th Cir. 2015) ................................................................................................... 8

*Davidson v. Apple*,
   2018 WL 2325426 (N.D. Cal. May 8, 2018) ....................................................................... 7, 8

*Hadley v. Kellogg Sales Co.*,
   324 F. Supp. 3d 1084 (N.D. Cal. 2018) ................................................................................... 9

*In re Arris Cable Modem Consumer Litig.*,
   327 F.R.D. 334 (N.D. Cal. 2018) ............................................................................................. 7

*In re Dial Complete Mktg. & Sales Practs. Litig.*,
   320 FRD 326 (D.N.H. 2017) ................................................................................................. 10

*In re GM LLC Ignition Switch Litig.*,
   14-MD-2543, 2019 WL 6827278 (S.D.N.Y. Dec. 12, 2019) ........................................... 9, 10

*In re My Ford Touch Consumer Litig.*,
   291 F. Supp. 3d 936 (N.D. Cal. 2018) ................................................................................... 10

*Schechner v. Whirlpool Corp.*,
   No. 2:16-cv-12409, 2018 WL 6843305 (E.D. Mich. Oct. 30, 2018) ............................... 6, 7

*Townsend v. Monster Beverage Co.*,
   303 F. Supp. 3d 1010 (N.D. Cal. 2018) ................................................................................... 6

*Wolin v. Jaguar Land Rover N. Am., LLC,.*,
   617 F.3d 1168 (9th Cir. 2010) ................................................................................................. 8

I.  INTRODUCTION

Plaintiff's Opposition to Cree's Renewed Motion to Strike Report and Opinions of Mr. Stefan Boedeker—replete with material factual inaccuracies—does not rescue Mr. Boedeker's report or opinions in this matter.  Further, Mr. Boedeker's argumentative supplemental report—filed with Plaintiff's Renewed Motion for Class Certification—fails to address the fundamental flaws identified and explained by Drs. David and Steckel.  Mr. Boedeker has opined, based on fatally flawed analysis, that Cree's customers may theoretically have paid a price premium for certain Cree bulb attributes.  Cree's expert Dr. Lynne Weber conducted a robust survey of actual consumers and determined that Mr. Boedeker was wrong.  (ECF 120-9 ¶ 84.)  Tellingly, Plaintiff has made no attempt whatsoever, in any filing, to address Dr. Weber's report.  For the reasons set forth herein and in Cree's Motion, this Court should strike Mr. Boedeker's Report and exclude his opinions.

II. **PLAINTIFF'S RENEWED RESPONSE CONTAINS MULTIPLE FACTUAL INACCURACIES.**

Cree briefly corrects several factual inaccuracies in Plaintiff's Renewed Response:

**A.    Cree did not move to exclude Mr. Boedeker based upon his credentials or experience.**

Plaintiff appears to believe that Cree moved to exclude Mr. Boedeker based upon his lack of experience or credentials.  This is not so; rather, Cree moved to exclude Mr. Boedeker based upon Mr. Boedeker's faulty design and implementation of this particular conjoint survey.

**B.    Dr. Steckel, not Dr. David, is Cree's conjoint analysis expert.**

Apparently in response to an argument that Plaintiff perceived Cree to have made, Plaintiff contends that Dr. David, Cree's economics expert, has "paltry qualifications" in the field of conjoint analysis and that Cree nevertheless "does not hesitate to offer Dr. David as an expert on conjoint studies and their application to

damages." Opp. at 4:20-21. Cree did not, however, offer Dr. David as a conjoint expert. Dr. Steckel is Cree's expert on conjoint analyses. Dr. David—an economist—focuses his opinions on economic analysis and does not offer opinions on Mr. Boedeker's conjoint methodology.[1]

### C. Dr. Steckel performed and billed more than five times the amount of work Plaintiff alleges in his Opposition.

Plaintiff's Renewed Response alleges that Dr. Steckel "could only definitely say he billed 3.75 hours prior to submitting his opinions." Opp. at 5:5-7. This statement is inaccurate. Dr. Steckel actually testified that he billed 3.75 hours <u>for the period ended February 28, 2019</u>, which was almost a month before his report was due. In response to extensive questioning from Plaintiff's counsel about his time entries, Dr. Steckel continued that he performed and billed over twenty hours of work total before he submitted his opinions on March 22, 2019. (Steckel 90:25-91:8).

Presumably, Plaintiff intends his inaccurate snapshot of the amount of work Dr. Steckel performed to normalize the minimal time Mr. Boedeker invested in developing and implementing a conjoint analysis. But even if Plaintiff's recitation of Dr. Steckel's billed hours were accurate, it would have no bearing on the question of whether the time Mr. Boedeker spent on his opinions renders them more likely to assist a trier of fact. Dr. Steckel was not hired to design a reliable conjoint study, as Mr. Boedeker was—rather, he was hired to point out the critical deficiencies underlying Mr. Boedeker's attempt at a conjoint analysis. (Steckel 97:21-98:9, 125:25-126:11, 156:21-157:20). These two tasks are fundamentally different. In

---

[1] In an attempt to justify an inaccurate claim that Cree offered Dr. David as an expert in conjoint analysis, Plaintiff's Response points to three paragraphs in Dr. David's report and claims they constitute "extensive musings" on conjoint analysis. (Opp. at 4 n.2). Dr. David does not purport in these paragraphs (or any paragraphs for that matter) to offer opinions on conjoint methodology. Rather, from his perspective as an economist, he appropriately cautions against using conjoint surveys to make specific predictions about consumer demand.

fact, Dr. Steckel testified that putting together a reliable conjoint analysis would cost approximately half a million dollars, reflecting a significant time investment. (Steckel 97:21-98:9, 118:3-21, 127:6-15, 128:7-12). Plaintiff's statement on Dr. Steckel's billed time thus suffers from the twin distinctions of being false and irrelevant to his argument.

### D. Dr. Steckel performed the analysis set out in his report.

In a similar attempt to compare Mr. Boedeker's and Dr. Steckel's time investment in their separate reports, Plaintiff argues that Dr. Steckel "performed very little of the analysis he relied on in submitting his own report" and points to Dr. Steckel's testimony concerning the work Analysis Group performed to recreate Mr. Boedeker's work, a step they were forced to take due to the lack of detail in Mr. Boedeker's report. (Opp. at 3 n.1; Steckel 221:5-11). This argument conflates the work Analysis Group performed to recreate Mr. Boedeker's calculations with the analysis of those opinions that Dr. Steckel performed, and is simply incorrect.

## III. BOEDEKER'S ARGUMENTATIVE SUPPLEMENTAL REPORT FAILS TO ADDRESS THE FUNDAMENTAL FLAWS IDENTIFIED AND EXPLAINED BY DRS. DAVID AND STECKEL.

In his argumentative rebuttal report, Mr. Boedeker attempts to distract from the critiques posed by Drs. David and Steckel, rather than directly and substantively addressing them. By way of illustration, Boedeker's rebuttal report fails to explain how, if it all, he has taken into consideration supply side economics, what justifies his failure to complete a market simulation, and what, if anything the microeconomic explanation in Section 2 of his initial report has to do with the sparse summary of conjoint survey analysis in Section 3.

Focusing on Boedeker's consumer surveys, his rebuttal report fails entirely to justify the "pre-test" his staff conducted, or explain how, if at all, the results of that pretest were used to inform the second survey discussed in his report. Boedeker's "pre-test" has no meaningful similarity to conjoint surveys in general, or to

3
REPLY IN SUPPORT OF MOTION TO STRIKE                                                    4:17-cv-06252-YGR

Boedeker's conjoint survey in particular. The academic source he cites in an attempt to assert the validity of his "pre-test" expressly states that a conjoint pretest should be used to evaluate the effectiveness of a questionnaire, and should be a "dress rehearsal" of the actual conjoint survey, used to detect potential problems. (*See* Boedeker Rebuttal Report, Docket No. 116-2, Ex. 4, at ¶ 98 ("Boedeker Rebuttal")). Boedeker's "pre-test" is obviously nothing of the sort.

Further, even if it was a suitable dress rehearsal for the conjoint survey, the overlapping characteristics in Boedeker's "pre-test" would render any result totally unusable. In his rebuttal report, Boedeker nonsensically asserts that he can disentangle respondents' evaluation of redundant or overlapping characteristics, without explaining how he could achieve that feat. (*See* Boedeker Rebuttal at ¶ 112.)

Boedeker fares no better in trying to address Dr. Steckel's critiques of the conjoint survey itself. Unable to avoid the observation that his conjoint survey screens are confusing and contradictory, Boedeker offers shifting explanations for why he is untroubled by this defect. For example, he asserts that a conjoint survey is meant to analyze individual attributes, rather than the combination of them. (*See* Boedeker Rebuttal at ¶ 138.) However, in making this statement, Mr. Boedeker misapprehends an elemental trait of conjoint analysis: that it is a technique whereby consumer responses to *combinations* of characteristics can be analyzed in order to assign values to individual product components.[2]

---

[2] "[T]he adjective 'conjoint' derives from the verb 'to conjoin,' meaning 'joined together.' The key characteristic of conjoint analysis is that respondents evaluate product profiles composed of multiple conjoined elements (attributes or features). Based on how respondents evaluate the combined elements (the product concepts), we deduce the preference scores that they might have assigned to individual components of the product that would have resulted in those overall evaluations." Orme, B., "A Short History of Conjoint Analysis," in Getting Started with Conjoint Analysis: Strategies for Product Design and Pricing Research, Second Edition, 2010, Madison: Research Publishers, LLC, available at https://www.sawtoothsoftware.com/download/techpap/cahistory.pdf, at p. 29.

Boedeker also attempts to explain away clear contradictions in his conjoint screens by suggesting that a lower relative price for a superior product could occur in the marketplace because the superior product might be "on sale." (Boedeker Rebuttal at ¶¶ 140-141.) There is no mention of a sale anywhere in either of Boedeker's surveys or initial report. Introducing this new pricing concept only muddies the waters, and cannot undo the contradiction and confusion in his surveys.

Boedeker attempts to convince the Court that survey respondents were not confused based on their answers to self-evaluation of their own rate of confusion. (Boedeker Rebuttal at Table 1, ¶ 173.) As Dr. Steckel set forth in his report and deposition, this method of evaluating survey respondent confusion is deeply flawed, as it relies on questions that elicit yeasaying or self-protective responses and does nothing to statistically analyze consumer confusion in the substantive survey responses themselves.

Boedeker's rebuttal report does not adequately address the well-founded critiques of Drs. David and Steckel, and cannot, after the fact, convert Boedeker's flawed conjoint survey and report into an acceptable methodology.

## IV. PLAINTIFF FAILS TO DISTINGUISH CONTROLLING CASE LAW THAT REQUIRES BOEDEKER'S REPORT TO BE EXCLUDED.

### A. Boedeker's opinions must be excluded because he tests loaded language that is inconsistent with Cree's packaging.

Plaintiff argues that *Townsend v. Monster Beverage Co.*, 303 F. Supp. 3d 1010 (N.D. Cal. 2018), does not apply to Mr. Boedeker's tested attributes because, though he did not use statements from Cree's labels, the statements he did choose "var[ied] only slightly, if at all, from Cree's labeling." Opp. at 9:28-10:1. In the same breath, Plaintiff argues that even if the statements Mr. Boedeker tested *are* too far removed from the statements on Cree's labels, Plaintiff can simply replace them with Cree's actual label statements later. Opp. at 12:7-9. Neither argument is compelling under this Court's precedent or Rule 702. Here, as in *Townsend*, Plaintiff hired Mr.

5

Boedeker to "develop an economic loss model to quantify the damages, if any, suffered by the proposed class." *Id.* at 1019. Under *Townsend*, "[t]he exact wording of each statement is [] critical" because "the exact words matter in false advertising claims" under a Rule 23(b)(3) predominance analysis. *Id.* at 1023-24. Accordingly, for Boedeker's analysis to be relevant, "the words he [was] evaluating must in fact be the words on Defendants' labels." *Id.* at 1023. Plaintiff's Renewed Response admits that the attributes Mr. Boedeker tested are not those present on Cree's product packaging, and as explained in the expert report of Dr. Steckel, the attributes and combinations Mr. Boedeker chose to include are loaded with biased connotations and create nonsensical hypothetical products. These unhelpful—and, as Plaintiff concedes, unnecessary—deviations from Cree's label statements render his analysis irrelevant.

Neither does *Schechner v. Whirlpool Corp.*, an out-of-circuit case, help Plaintiff's argument. In *Schechner*, the proffered conjoint expert used hypotheticals created after he "researched advertising samples for ovens" and "conducted interviews with consumers who had recently shopped for Whirlpool-branded ovens." No. 2:16-cv-12409, 2018 WL 6843305 at *3 (E.D. Mich. Oct. 30, 2018). In other words, the *Schechner* expert took steps to ensure the relevance and helpfulness of the attributes he included in his conjoint analysis. In contrast, Mr. Boedeker testified that he did not review Cree's packaging to determine what attributes to include, did not conduct any independent research, and in fact included label statements and attributes that he could "imagine" a manufacturer might put on a label. (Boedeker 67:9-68:2, 72:22-23, 164:2-11). His opinions are irrelevant, unhelpful, and should be excluded.

**B. Boedeker's opinions must be excluded because his testing is predicated on a theory that 100% of bulbs will fail prematurely.**

Plaintiff does not dispute that Mr. Boedeker's damages model assumes a 100% failure rate. *See* Opp. at 12. Nor does Plaintiff argue that a 100% failure rate

matches his theory of liability in this case. *Id.* Rather, Plaintiff simply responds that any issues with Mr. Boedeker's methodology can only go to the merits of his damages calculation rather than to its admissibility. *Id.* Tellingly, Plaintiff does not attempt to address this Court's opinion in *Davidson v. Apple*, 2018 WL 2325426 (N.D. Cal. May 8, 2018), which held that a previous conjoint analysis by Mr. Boedeker, suffering from an identical deficiency, was "fatally flawed." *Id.* at *22. Instead, Plaintiff cites *In re Arris Cable Modem Consumer Litig.*, in which this Court noted that where a conjoint analysis becomes "untethered from the facts of the case," it is "non-helpful" under *Daubert*. 327 F.R.D. 334, 372 (N.D. Cal. 2018). Although Plaintiff argues that any criticism of a conjoint study's methodology can only go to its merits or weight, both *In re Arris* and *Davidson* counsel that a conjoint model that is removed from the facts underlying the plaintiff's case should be excluded under Rule 702.

In his Renewed Response, Plaintiff attempts to explain away the fundamental defect in Mr. Boedeker's sweeping assumption by claiming that Cree somehow "misunderstands" Plaintiff's injury. *See* Opp. at 12:15-17. Plaintiff attempts to distinguish his injury as "pay[ing] for attributes that the LED Lightbulbs did not possess because of Cree's longevity representations," not as whether or when the bulbs actually failed. *Id.* Plaintiff misses the mark entirely. He does not, and cannot, justify the mismatch between Mr. Boedeker's 100% failure assumption and Plaintiff's allegations in this case, which are not premised on a 100% failure rate. Tellingly, Plaintiff cites both *Baker v. Microsoft Corp.* and *Wolin v. Jaguar Land Rover N. Am., LLC*. These cases confirm that—contrary to Mr. Boedeker's 100% failure assumption—Plaintiff's case is premised on an assumption that not all bulbs will fail. 797 F.3d 607, 614 (9th Cir. 2015) (acknowledging Microsoft's argument that defect in Xboxes "may never manifest"); 617 F.3d 1168, 1171 (9th Cir. 2010) (no evidence that "even a majority of class members' vehicles experienced premature tire wear").

7

In sum, Plaintiff does not attempt to argue that Mr. Boedeker's model matches Plaintiff's theory of liability, likely because Boedeker admitted at his deposition that his analysis does not and was not designed to. Boedeker 70:21-71:11. Plaintiff notably does not address this testimony in its Renewed Response. Boedeker's analysis is thus simply not relevant to the real-world circumstances of Plaintiff's case and should be excluded under *In re Arris*, *Davidson*, and Rule 702.

### C. Boedeker does not have personal knowledge regarding the design of his survey.

Mr. Boedeker testified that he did not perform any work on this matter, or even review the pre-test survey in this matter, until the day before the pre-test closed down. (Boedeker 126:16-127:12). As a result, Mr. Boedeker does not have personal knowledge of the foundation of his work. To ameliorate this testimony, Plaintiff points to testimony from Cree's expert Dr. David in which Dr. David agreed he sometimes performs work for which he does not bill, the inference being that if Dr. David performed work for which he did not bill, perhaps Mr. Boedeker did as well. The billing practices of Cree's experts are, however, completely irrelevant; the appropriate inquiry is Mr. Boedeker's actual work performed in this matter. The unrebutted truth is that Mr. Boedeker did not review or contribute to the pre-test survey on which his conjoint analysis is based. Mr. Boedeker's declaration underscores this fact and does not contradict his deposition testimony in which he admitted that his time records were accurate; though Mr. Boedeker says that he designed the pre-test survey "[o]ver the years," that the pre-test survey used here was done "according to specifications that [he] designed," and that he had "active input" in designing the pre-test survey, he does not testify that he performed any work in this matter for which he did not bill. (Docket No. 92-2 ¶ 4).

8

REPLY IN SUPPORT OF MOTION TO STRIKE                    4:17-cv-06252-YGR

### D. Boedeker's opinions must be excluded because he does not account for supply-side factors.

Finally, Mr. Boedeker's opinions must be excluded because his analysis fails to account in any way for supply-side factors. Mr. Boedeker's conjoint analysis was excluded on this basis just six months ago in *In re GM LLC Ignition Switch Litig.*, 14-MD-2543, 2019 WL 6827278 (S.D.N.Y. Dec. 12, 2019). His analysis should meet the same fate here.

Plaintiff cites to a number of cases for the premise that "conjoint analysis ***can*** adequately account for supply-side factors." *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1105 (N.D. Cal. 2018) (emphasis added). But he fails to reckon with the fact that Mr. Boedeker's analysis in this case does not even attempt to do so.

Plaintiff attempts unsuccessfully to distinguish this case from *General Motors* by claiming that, unlike here, the *General Motors* case involved "dangerous defects." Opp. at 14. That distinction had no bearing on the court's rejection of Mr. Boedeker's unreliable conjoint analysis, however. In *General Motors*, as in this case, Mr. Boedeker's conjoint analysis "was insufficient as a matter of law to support a claim for diminution-in-value damages" because it "focuse[d] entirely on consumers' willingness to pay and ignores producers' willingness to sell." 2019 WL 6827278 at *6. As here, Mr. Boedeker's analysis in *General Motors* was "insufficient evidence of market price because it entirely neglects the supply curve," and therefore "insufficient as a matter of law to support the essential element of damages." *Id.* at *9.

Mr. Boedeker's analysis is built on the false assumption that Cree and other market participants will sell their LED bulbs for whatever price the consumer is willing to pay.[3] *Id.* at *11 (citing *In re My Ford Touch Consumer Litig.*, 291 F. Supp.

---

[3] That may or may not be true for liquid handsoap (*see In re Dial Complete Mktg. & Sales Practices Litig.*, 320 FRD 326 (D.N.H. 2017)), but Plaintiff has not even attempted to show it is the case in the LED bulb market.

9

REPLY IN SUPPORT OF MOTION TO STRIKE                               4:17-cv-06252-YGR

3d 936, 970 (N.D. Cal. 2018)). This is a departure from reality that renders his conjoint analysis fundamentally unreliable and insufficient as a matter of California law. Accordingly, the Court should exclude it.

## V. CONCLUSION

For the reasons stated herein, and in Cree's Renewed Motion to Strike, including the expert reports incorporated therein, Cree respectfully requests that the Court exclude Mr. Boedeker's reports, opinions, and testimony.

Dated: May 8, 2020                Respectfully submitted,

**KATTEN MUCHIN ROSENMAN LLP**

By: /s/ Stuart M. Richter
    Stuart M. Richter
Attorneys for Defendant Cree, Inc.