Stuart M. Richter (SBN 126231)
stuart.richter@katten.com
Andrew J. Demko (SBN 247320)
andrew.demko@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone:  310.788.4400
Facsimile:  310.788.4471

Rebecca K. Lindahl (pro hac vice)
rebecca.lindahl@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
550 South Tryon Street, Suite 2900
Charlotte, NC 28202-4213
Telephone:  704.344.3141
Facsimile:  704.344.2277

Attorneys for Defendant Cree, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JEFF YOUNG, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>CREE, Inc.,<br><br>        Defendant. | Case No.      4:17-cv-06252-YGR<br><br>Hon. Yvonne Gonzalez Rogers<br><br>**DECLARATION OF STUART M. RICHTER IN SUPPORT OF DEFENDANT CREE INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>Complaint Filed: October 27, 2017<br>Date: September 7, 2021<br>Time: 2:00 PM PDT<br>Place: Courtroom 1 – 4th Floor |

1

## DECLARATION OF STUART M. RICHTER

I, Stuart M. Richter, hereby declare as follows:

1. I am an attorney licensed to practice in California and a partner of the law firm of Katten Muchin Rosenman LLP, counsel of record for defendant Cree, Inc. ("Defendant").

2. Attached hereto as **Exhibit A** are true and correct copies of excerpts of the deposition of Plaintiff Jeffry Young.

3. Attached hereto as **Exhibit B** is a true and correct copy of the errata sheet to the deposition of Plaintiff Jeffry Young.

4. Attached hereto as **Exhibit C** is a true and correct copy of CREE_000323652 which is a packaging file. Page 2 of Exhibit C is an enlargement of the portion of the packaging panel containing Cree's Limited Warranty. Exhibit C is a clearer version of the same warranty that is Exhibit 5 to Plaintiff's deposition, which is attached hereto as **Exhibit D** for reference.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed at Los Angeles, California on Friday, June 25, 2021.

_____
Stuart M. Richter

2

# EXHIBIT A

```
 1              UNITED STATES DISTRICT COURT

 2            NORTHERN DISTRICT OF CALIFORNIA

 3                   OAKLAND DIVISION

 4                      ---oOo---

 5   JEFF YOUNG, individually    )

 6   And on behalf of all other  )

 7   Similarly situated,         )

 8              Plaintiffs,   )  No. 4:17-CV-06252-YGR

 9         vs.                    )

10   CREE, INC.,                  )

11              Defendants.   )

12   _____)

13                      ---oOo---

14          DEPOSITION OF JEFFRY YOUNG

15             September 18, 2018

16

17

18

19   Reported by:  DENNIS M. SOUZA, CSR #3893

20   - - - - - - - - - - - - - - - - - - - - - - - - - -

21

22

23

24

25
```

1

```
 1                        I N D E X

 2

 3                                              Page

 4

 5     Deposition of:  JEFFRY YOUNG

 6     Examination by:  Mr. Richter                    7

 7     Examination by:  Mr. Woods                    130

 8

 9                         - - -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

2

```
 1              EXHIBITS MARKED FOR IDENTIFICATION

 2

 3    1    (Defendant Cree, Inc.'s Amended Notice

 4          Of Deposition of Plaintiff Jeff Young)      19

 5    2    (E-mail dated August 6, 2016 to Jeff

 6          Young from Cree Customer Support)            21

 7    3    (Class Action Complaint Jury Trial Demand)    63

 8    4    (Amended Class Action Complaint Jury Trial

 9          Demand)                                      80

10    5    (Colored photocopy)                          105

11

12                      - - -

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

| | | |
|---|---|---|
| 1 | Q.   Is this a document you printed off of your | 10:31 |
| 2 | computer and gave to your Counsel? | 10:31 |
| 3 | A.   I forwarded it to him. | 10:31 |
| 4 | Q.   Yeah.  You forwarded the E-mail to him? | 10:31 |
| 5 | A.   I forwarded the E-mail to him. | 10:31 |
| 6 | Q.   Thank you.  All right.  Let me briefly go | 10:31 |
| 7 | through these categories of documents, Mr. Young. | 10:31 |
| 8 | I just want to -- for the record -- | 10:31 |
| 9 | MR. WOODS:  Go back to Exhibit 1. | 10:31 |
| 10 | MR. RICHTER:  Q.  The attachment A, | 10:31 |
| 11 | Exhibit 1.  For the record I want to establish what | 10:31 |
| 12 | you've done to gather and produce the documents that | 10:31 |
| 13 | were requested here. | 10:31 |
| 14 | First of all, have you seen this document | 10:31 |
| 15 | before? | 10:31 |
| 16 | A.   It looks familiar. | 10:31 |
| 17 | Q.   Look at category 1.  It says, "Produce for | 10:31 |
| 18 | inspection all CREE light bulbs you have purchased | 10:31 |
| 19 | within the last five years." | 10:31 |
| 20 | A.   (Deponent nods head up and down). | 10:31 |
| 21 | Q.   And that is the bulb you brought with you | 10:31 |
| 22 | today? | 10:31 |
| 23 | A.   It is the only one I still have. | 10:31 |
| 24 | Q.   About how many CREE bulbs have you purchased | 10:31 |
| 25 | over the last five years? | 10:31 |

22

Jeffry L. Young                                                    September 18, 2018

| | | |
|---|---|---|
| 1 | A.   Exactly three including that one. | 10:31 |
| 2 | Q.   All at the same time? | 10:32 |
| 3 | A.   No. | 10:32 |
| 4 | Q.   No.  What happened to the others? | 10:32 |
| 5 | A.   They stopped working as well. | 10:32 |
| 6 | Q.   Where are they? | 10:32 |
| 7 | A.   I wish I knew.  I thought I had them, I | 10:32 |
| 8 | couldn't find them. | 10:32 |
| 9 | Q.   So when they stopped working you saved them? | 10:32 |
| 10 | A.   Yes. | 10:32 |
| 11 | Q.   Why did you save them? | 10:32 |
| 12 | A.   I was hoping to get new light bulbs in their | 10:32 |
| 13 | place. | 10:32 |
| 14 | Q.   All right.  You searched around your home and | 10:32 |
| 15 | couldn't find them? | 10:32 |
| 16 | A.   Correct. | 10:32 |
| 17 | Q.   They weren't with this bulb you brought | 10:32 |
| 18 | today? | 10:32 |
| 19 | A.   They were not. | 10:32 |
| 20 | Q.   The second category of documents here is all | 10:32 |
| 21 | packages and labels for any CREE light bulbs you | 10:32 |
| 22 | purchased within the last five years. | 10:33 |
| 23 |      Did you save the packages for the three bulbs | 10:33 |
| 24 | you bought? | 10:33 |
| 25 | A.   No. | 10:33 |

23

Jeffry L. Young                                    September 18, 2018

1        Q.   The third category is all receipts or proofs      10:33

2    of purchase for any CREE light bulbs you have              10:33

3    purchased within the last five years?                      10:33

4        A.   I had saved them.                                 10:33

5        Q.   Couldn't find them?                               10:33

6        A.   Couldn't find them.                               10:33

7        Q.   And, specifically, what did you save?             10:33

8        A.   Just the receipt, yeah.                           10:33

9        Q.   So from the store?                                10:33

10       A.   The receipt from the store.                       10:33

11       Q.   All right.  Do you recall for these three         10:33

12   light bulbs how you bought them?  In other words,          10:33

13   cash?  Credit card?  Debit card?                           10:33

14       A.   I always pay cash.                                10:33

15       Q.   Why is that?                                      10:33

16       A.   That is how I operate.                            10:34

17       Q.   Isn't a debit card the same as cash?              10:34

18       A.   Not to me.                                        10:34

19       Q.   All right.  Number 4 is all documents that        10:34

20   reflect, refer or relate to communications with CREE       10:34

21   within the last five years.                                10:34

22            Did you look for those documents?                 10:34

23       A.   I did a search on my E-mail.                      10:34

24       Q.   And what you found is the document that is        10:34

25   marked as Exhibit 2?                                       10:34

                                                            24

| 1 | Q. New ones, used ones, what? | 10:36 |
| 2 | A. Almost all new. At this moment in time I | 10:36 |
| 3 | would -- there are some used ones, but as far as I | 10:36 |
| 4 | know, they all work except for the CREE. | 10:36 |
| 5 | Q. The one that you've labeled bad? | 10:36 |
| 6 | A. Yes. | 10:36 |
| 7 | Q. Any other CREE bulbs in there? | 10:36 |
| 8 | A. No. Definitely not. | 10:36 |
| 9 | Q. So this cabinet is just for storing light | 10:36 |
| 10 | bulbs? | 10:36 |
| 11 | A. Yes. | 10:36 |
| 12 | Q. When these other two CREE light bulbs stopped | 10:37 |
| 13 | working, do you recall when you put them in that | 10:37 |
| 14 | cabinet? | 10:37 |
| 15 | A. I do not. | 10:37 |
| 16 | Q. When they stopped working your intent was to | 10:37 |
| 17 | save them to try and get a new bulb, right? | 10:37 |
| 18 | A. Yes. | 10:37 |
| 19 | Q. But you don't recall putting them in that | 10:37 |
| 20 | cabinet? | 10:37 |
| 21 | A. No. | 10:37 |
| 22 | Q. When you save the receipts for the bulbs, you | 10:37 |
| 23 | testified earlier you initially saved the receipts, | 10:37 |
| 24 | the store receipts. | 10:37 |
| 25 | A. Yes. | 10:37 |

27

Jeffry L. Young                                                    September 18, 2018

```
 1        Q.   Where did you put those?                    10:37

 2        A.   I don't remember.  A couple typical places I  10:37

 3   would put them -- and they weren't there.  And I saved  10:37

 4   them -- well, I guess never mind.                      10:37

 5        Q.   How long did you save them?                  10:37

 6        A.   Some time before I gave up.                  10:37

 7        Q.   When you say you "gave up," what do you mean?  10:37

 8        A.   I gave up trying to get the bulbs replaced.  10:37

 9        Q.   So when you gave up trying to get the bulbs  10:37

10   replaced, did you throw the receipts away?             10:38

11        A.   Not intentionally, but -- no.  I shouldn't   10:38

12   say that.  I don't remember what I did with the        10:38

13   receipts.  I thought I had them.                       10:38

14        Q.   These three bulbs, did they all burn out at  10:38

15   the same time?                                         10:38

16        A.   No.                                          10:38

17        Q.   How long did you try to get each one         10:38

18   replaced?                                              10:38

19        A.   It would be pure speculation, I mean more    10:38

20   than a week, less than six months.                     10:38

21        Q.   Okay.  I don't want you to speculate.        10:38

22        A.   Well, then I don't know.                     10:38

23        Q.   I am entitled to a best estimate.            10:38

24        A.   More than a week, less than six months.      10:38

25        Q.   Very good.  You said that each of the bulbs  10:38
```

28

| | | |
|---|---|---|
| 1 | A.    No, I do not have a specific recollection. | 10:40 |
| 2 | MR. WOODS:  I don't mean to get you off track | 10:40 |
| 3 | but I am a little bit concerned with the way that you | 10:40 |
| 4 | are holding that that there is some -- | 10:40 |
| 5 | MR. RICHTER:  I will rub it off? | 10:40 |
| 6 | MR. WOODS:  Yeah. | 10:40 |
| 7 | MR. RICHTER:  Got it.  Actually, I will stop | 10:40 |
| 8 | holding it -- I might drop it and break it. | 10:40 |
| 9 | Q.    The writing on the bottom of this bulb on | 10:40 |
| 10 | the white part above the screw, when did you put that | 10:40 |
| 11 | on the bulb? | 10:40 |
| 12 | A.    Almost certainly when I installed it -- | 10:40 |
| 13 | shortly after I would have purchased it. | 10:40 |
| 14 | Q.    Why would you put writing on a bulb when you | 10:40 |
| 15 | install it? | 10:40 |
| 16 | A.    To make sure it lasts as long as they claim. | 10:40 |
| 17 | Q.    Why do you do that? | 10:41 |
| 18 | A.    I don't trust advertising claims. | 10:41 |
| 19 | Q.    And that is not specific to CREE.  That is to | 10:41 |
| 20 | general? | 10:41 |
| 21 | A.    Yes, yeah. | 10:41 |
| 22 | Q.    So your practice is when you replace a bulb | 10:41 |
| 23 | you write on the bulb the date that you bought it or | 10:41 |
| 24 | put it in? | 10:41 |
| 25 | A.    Not every time but mostly, yeah.  Certainly | 10:41 |

30

```
 1    on LED bulbs.                                    10:41

 2         Q.   So you do that on LED bulbs?           10:41

 3         A.   Yes.                                    10:41

 4         Q.   Why?                                    10:41

 5         A.   To keep track of how long they last.   10:41

 6         Q.   Why?                                    10:41

 7         A.   Because I am concerned they won't last as   10:41

 8    long as they are supposed to.                    10:41

 9         Q.   Again, that is not specific to CREE.  That is   10:41

10    just generally for LED bulbs?                    10:41

11         A.   Yes.                                    10:41

12         Q.   Why do you have this, for lack of a better   10:41

13    word, suspicion about LED bulbs?                 10:42

14         A.   Just a general suspicion of what I consider   10:42

15    over the top or -- not outrageous, but excessive   10:42

16    advertising claims.                              10:42

17         Q.   What caused you to have that suspicion?   10:42

18         A.   Born with it.  I --                     10:42

19         Q.   Well, do you have that suspicion about any   10:42

20    other products?                                  10:42

21         A.   Yeah.  I am always concerned with warranty   10:42

22    information and how -- if they stand up at least --   10:42

23    whatever I buy lasts as long as the warranty period.   10:42

24         Q.   Why are you concerned about warranty periods?  10:42

25    Explain that to me.                              10:42
```

31

| | | |
|---|---|---|
| 1 | MR. WOODS:  No. | 10:44 |
| 2 | THE WITNESS:  I misunderstood.  I would have | 10:44 |
| 3 | expected it to, yes; no, I don't understand that. | 10:44 |
| 4 | MR. RICHTER:  Q.  But then that is what the | 10:44 |
| 5 | warranty is for, right, because if it doesn't last | 10:44 |
| 6 | 100,000 miles you take it back to the dealer and they | 10:44 |
| 7 | fix it, right? | 10:44 |
| 8 | A.  A fair statement; that it will be fixed if it | 10:44 |
| 9 | doesn't last. | 10:44 |
| 10 | Q.  That is what I am getting at, Mr. Young. | 10:44 |
| 11 | A.  I see. | 10:44 |
| 12 | Q.  You see what I am saying? | 10:44 |
| 13 | A.  Now, yeah. | 10:44 |
| 14 | Q.  In other words, just because somebody says my | 10:44 |
| 15 | power train warranty is going to last 100,000 miles, | 10:44 |
| 16 | there may be some problems with the car or defect with | 10:44 |
| 17 | the car, not every car is perfect, but what the | 10:45 |
| 18 | manufacturer is saying is:  Hey, if it breaks, come | 10:45 |
| 19 | back, we will fix it, right? | 10:45 |
| 20 | A.  I understand. | 10:45 |
| 21 | MR. WOODS:  Calls for speculation.  Objection | 10:45 |
| 22 | to form.  You can answer. | 10:45 |
| 23 | MR. RICHTER:  Q.  I am going to ask the | 10:45 |
| 24 | question again just so we are clear. | 10:45 |
| 25 | In other words, when you see a warranty for a | 10:45 |

34

| | | |
|---|---|---|
| 1 | product you buy and say it is a ten-year, let's just | 10:45 |
| 2 | say a 100,000-mile power train warranty, you don't | 10:45 |
| 3 | understand and expect that every single car lasts | 10:45 |
| 4 | 100,000 miles in the power train, some of them are | 10:45 |
| 5 | going to break.  And what happens then is the | 10:45 |
| 6 | manufacturer fixes it, right? | 10:45 |
| 7 | MR. WOODS:  Calls for speculation.  Object to | 10:45 |
| 8 | form.  You can answer. | 10:45 |
| 9 | THE WITNESS:  I can answer? | 10:45 |
| 10 | MR. WOODS:  Yes. | 10:45 |
| 11 | THE WITNESS:  Yes.  I would expect that it | 10:45 |
| 12 | would just be fixed. | 10:45 |
| 13 | MR. WOODS:  Sorry, unless I tell you not to | 10:45 |
| 14 | answer, you can answer. | 10:45 |
| 15 | THE WITNESS:  Okay. | 10:45 |
| 16 | MR. RICHTER:  Q.  Yeah.  I forgot to go over | 10:45 |
| 17 | that. | 10:46 |
| 18 | A.  Oh, boy, that is not what they do -- that is | 10:46 |
| 19 | right.  We don't have a judge here.  Why don't you | 10:46 |
| 20 | speak up. | 10:46 |
| 21 | Q.  He can't rule on client's objections. | 10:46 |
| 22 | A.  Oh, come on. | 10:46 |
| 23 | Q.  Let's go back to -- | 10:46 |
| 24 | So your practice is with light bulbs and not | 10:46 |
| 25 | just CREE light bulbs, but LED light bulbs that you | 10:46 |

35

| | | |
|---|---|---|
| 1 | A.   No specific recollection. | 11:56 |
| 2 | Q.   But you got Exhibit 2 sent back to you? | 11:56 |
| 3 | A.   So it is pretty safe that -- | 11:56 |
| 4 | Q.   Right? | 11:56 |
| 5 | A.   Right. | 11:56 |
| 6 | Q.   And you also considered returning the bulbs | 11:56 |
| 7 | to Walmart. | 11:56 |
| 8 | A.   Yeah. | 11:56 |
| 9 | Q.   That is not accurate, is it? | 11:56 |
| 10 | A.   No.  It was Home Depot. | 11:56 |
| 11 | Q.   You tried to return them to Home Depot? | 11:56 |
| 12 | A.   Actually, I knew it was past their return | 11:56 |
| 13 | policy date.  You can't return to the store after 30 | 11:56 |
| 14 | to 90 days or something like that. | 11:56 |
| 15 | Q.   Really?  My understanding is Home Depot takes | 11:56 |
| 16 | anything back no matter what.  Did you try to return | 11:56 |
| 17 | them? | 11:56 |
| 18 | MR. WOODS:  Objection, calls for speculation. | 11:56 |
| 19 | THE WITNESS:  You are wrong. | 11:56 |
| 20 | MR. RICHTER:  Q.  Did you try to take them | 11:56 |
| 21 | back to Home Depot? | 11:56 |
| 22 | A.   No.  I did not. | 11:56 |
| 23 | Q.   You didn't even try? | 11:56 |
| 24 | A.   No.  I knew it was too late.  There was no | 11:56 |
| 25 | point. | 11:56 |

89

1    Q.   So this sentence here that you were told by    11:56

2  Walmart that it was too late to return them to the     11:56

3  store, that is not accurate?                           11:56

4    A.   I just knew it was.                             11:56

5    Q.   But nobody told you from Walmart?               11:57

6    A.   No.  No.                                        11:57

7    Q.   And you would have never said that to your      11:57

8  lawyers?                                               11:57

9        MR. WOODS:  Objection.                           11:57

10        THE WITNESS:  There might have been some        11:57

11  miscommunication --                                   11:57

12        MR. WOODS:  Objection, it invades               11:57

13  attorney-client privilege.  Don't answer it.          11:57

14        MR. RICHTER:  Q.  Let's make sure the record    11:57

15  is clear.  You never even tried to take them back to  11:57

16  Home Depot, right?                                     11:57

17    A.   I did not.                                      11:57

18    Q.   You never talked to anybody at Home Depot?     11:57

19    A.   No.                                             11:57

20    Q.   You never tried to take them back to Walmart?  11:57

21    A.   No.                                             11:57

22    Q.   The only thing you did to try to get your      11:57

23  money back was doing these searches on the web and you 11:57

24  eventually sent an E-mail or got on to a web site for  11:57

25  CREE, right?                                           11:57

90

| | | |
|---|---|---|
| 1 | A.   Exactly. | 11:57 |
| 2 | Q.   Did you ever talk to anybody from CREE? | 11:57 |
| 3 | A.   I don't -- no.  I don't recall, but I would | 11:57 |
| 4 | say it is not likely. | 11:57 |
| 5 | Q.   No one from CREE called you to follow up from | 11:58 |
| 6 | this E-mail? | 11:58 |
| 7 | A.   I have no recollection of anybody contacting | 11:58 |
| 8 | me from CREE other than this guy and then -- | 11:58 |
| 9 | Q.   Other than receiving this E-mail? | 11:58 |
| 10 | A.   Right. | 11:58 |
| 11 | Q.   Let me make sure we are clear, you don't | 11:58 |
| 12 | recall one way or the other. | 11:58 |
| 13 | You are not saying no one called you? | 11:58 |
| 14 | Do you understand the difference? | 11:58 |
| 15 | A.   I understand the difference, but my point | 11:58 |
| 16 | would be that is something I would have remembered | 11:58 |
| 17 | because that would have been important. | 11:58 |
| 18 | Q.   So your testimony is no one called you from | 11:58 |
| 19 | CREE? | 11:58 |
| 20 | A.   Yes.  I have never heard any -- I would be | 11:58 |
| 21 | almost certain that CREE never contacted me to resolve | 11:58 |
| 22 | the issue. | 11:58 |
| 23 | I would have acted on it. | 11:58 |
| 24 | Q.   When you contacted CREE, did you ever attempt | 11:58 |
| 25 | to send these bulbs back to CREE? | 11:58 |

91

Jeffry L. Young                                                    September 18, 2018

```
 1        A.    Oh, no.                                    11:58

 2        Q.    So you didn't attempt to take them back to  11:58

 3   Home Depot and you didn't attempt to send the bulb    11:58

 4   back to CREE, right?                                   11:58

 5        A.    Correct.                                    11:58

 6        Q.    All right.                                  11:59

 7              MR. RICHTER:  Do you want to break for a half 11:59

 8   hour?                                                  11:59

 9              MR. WOODS:  Sure.  Well, shall we go off the 11:59

10   record?                                               11:59

11              MR. RICHTER:  Yeah.  Let's go off the record. 11:59

12              THE VIDEO OPERATOR:  The time is 12:00 p.m.  11:59

13              We are off the record.                      11:59

14              (Discussion off the record).               11:59

15              (Noon recess).                              12:32

16                                                         12:32

17

18

19

20

21

22

23

24

25
```

92

| | | |
|---|---|---|
| 1 | AFTERNOON SESSION | 12:32 |
| 2 | THE VIDEOGRAPHER:  The time is 12:34 p.m.  We | 12:32 |
| 3 | are back on the record. | 12:32 |
| 4 | MR. RICHTER:  Q.  Mr. Young do you recognize | 12:32 |
| 5 | or you realize you are still under oath? | 12:32 |
| 6 | A.  Yes, I do. | 12:32 |
| 7 | Q.  I want to clarify something before we went | 12:32 |
| 8 | off the record. | 12:32 |
| 9 | A.  Okay. | 12:32 |
| 10 | Q.  Now, I want to make sure we are clear.  With | 12:32 |
| 11 | respect to that CREE bulb, the three CREE bulbs that | 12:32 |
| 12 | you purchased? | 12:32 |
| 13 | A.  Yes. | 12:33 |
| 14 | Q.  All right.  When you bought those bulbs, did | 12:33 |
| 15 | you have in your mind anything you heard on a TV | 12:33 |
| 16 | advertisement? | 12:33 |
| 17 | A.  Absolutely. | 12:33 |
| 18 | Q.  You did? | 12:33 |
| 19 | A.  Yes. | 12:33 |
| 20 | Q.  What did you have in mind from the TV | 12:33 |
| 21 | advertisement? | 12:33 |
| 22 | A.  Inexpensive to operate; long life -- that is | 12:33 |
| 23 | pretty much it -- good warranty. | 12:33 |
| 24 | Q.  So you remember from a TV ad it was | 12:33 |
| 25 | inexpensive to operate, long life and what else? | 12:33 |

93

```
 1        A.    A good warranty.                              12:33

 2        Q.    Those ads weren't -- you don't remember if    12:33

 3   those were CREE or not, do you?                          12:33

 4        A.    That is right.  I do not remember whose --     12:33

 5   what brand they were.                                    12:33

 6        Q.    So the representations had to do with LED      12:33

 7   bulbs, in general?                                       12:33

 8        A.    Correct.                                      12:33

 9        Q.    But the things that you had in your mind from  12:33

10   these TV ads were that they were inexpensive to          12:34

11   operate, long life and good warranty?                    12:34

12        A.    Correct.                                      12:34

13        Q.    Anything else?                                12:34

14        A.    No.  Oh, they were nice, bright lights, too.  12:34

15   I heard they were bright lights.                         12:34

16        Q.    So a good quality light?                      12:34

17        A.    Yeah, yeah, that is fair.                     12:34

18        Q.    And then do you remember seeing, before you   12:34

19   purchased the three bulbs, anything on the internet?     12:34

20        A.    The same general idea.                        12:34

21        Q.    The ads you saw could have been the internet, 12:34

22   they could have been TV or both?                         12:34

23        A.    Might have been both.                         12:34

24        Q.    Both.  And again, these internet ads, were    12:34

25   they ads or was it article --                            12:34
```

94

Jeffry L. Young                                                    September 18, 2018

```
1          Q.   By the way, the 100-watt bulb was it a        12:38

2     three-way or was it straight 100-watt?                   12:38

3          A.   It was straight 100-watt dimmable.             12:38

4          Q.   Dimmable?                                       12:38

5          A.   Yeah.  I made sure I got the dimmable.         12:38

6          Q.   Do you usually buy your bulbs at Home Depot?   12:38

7          A.   Usually, Home Depot or Walmart.  I go both     12:39

8     places.  I have no -- I don't prefer one over the        12:39

9     other.                                                   12:39

10         Q.   Oh, is there a Home Depot in Guerneville?      12:39

11         A.   No.                                            12:39

12         Q.   Where is it?                                   12:39

13         A.   It's in Windsor and there is one in Rohnert    12:39

14    Park.                                                    12:39

15         Q.   What is that one?                              12:39

16         A.   Rohnert Park.                                  12:39

17         Q.   Rohnert Park.                                  12:39

18         A.   And there is also one in Santa Rosa.  So they  12:39

19    are all over.                                            12:39

20         Q.   Which one do you usually go to?                12:39

21         A.   Usually Windsor.                               12:39

22         Q.   Where is your Walmart you go to?               12:39

23         A.   The same.  There is no Walmart in Santa Rosa   12:39

24    but there is a Walmart next door to the Windsor          12:39

25    Home Depot and there is a Walmart next to the Rohnert    12:39
```

                                                                    99

| | | |
|---|---|---|
| 1 | Park Home Depot, as well.  I go to all four of them | 12:39 |
| 2 | regularly, but usually Windsor. | 12:40 |
| 3 | Q.   Do you remember ever buying an LED bulb at | 12:40 |
| 4 | Walmart? | 12:40 |
| 5 | A.   No specific recollection.  It is safe to say | 12:40 |
| 6 | I did, though, at some point buy a LED at Walmart. | 12:40 |
| 7 | Q.   Because I thought you said that -- | 12:40 |
| 8 | Well, you didn't remember how many LED bulbs | 12:40 |
| 9 | you bought, right? | 12:40 |
| 10 | A.   Yeah.  No, I don't remember a specific | 12:40 |
| 11 | number -- more than what we've discussed. | 12:40 |
| 12 | Q.   So on the day you purchased the bulbs, the | 12:40 |
| 13 | three bulbs, and I think you said you bought one, the | 12:40 |
| 14 | first one, and then the other two maybe together, | 12:40 |
| 15 | maybe separate, right? | 12:40 |
| 16 | A.   Yes, correct. | 12:40 |
| 17 | Q.   And you are looking at other bulbs, LED | 12:40 |
| 18 | products at the same time, right? | 12:40 |
| 19 | A.   Yes. | 12:40 |
| 20 | Q.   And you looked at the packaging on those | 12:40 |
| 21 | products at the same time, right? | 12:41 |
| 22 | A.   Yeah, I'm sure. | 12:41 |
| 23 | Q.   All right.  What on the CREE package caused | 12:41 |
| 24 | you to buy the CREE product versus the other products? | 12:41 |
| 25 | A.   I don't remember the specifics.  They either | 12:41 |

100

```
 1    lasted longer or their warranty was better or -- I     12:41

 2    don't remember the specifics.                          12:41

 3         Q.   You don't remember?                          12:41

 4         A.   No.                                          12:41

 5         Q.   And you don't remember what product you were 12:41

 6    comparing it to, right?                                12:41

 7         A.   No.  I don't.                                12:41

 8         Q.   As you sit here do you remember what you saw 12:41

 9    on the CREE package?                                   12:41

10         A.   No.                                          12:41

11         Q.   You have no recollection?                    12:41

12         A.   None at all.                                 12:41

13         Q.   Let me break it down.  Do you remember, and  12:42

14    again, we are talking about a 100-watt replacement     12:42

15    bulb, right?                                           12:42

16         A.   Yes.                                         12:42

17         Q.   Do you remember looking at the warranty?     12:42

18         A.   Not specifically.                            12:42

19         Q.   Do you remember looking at how long the bulb 12:42

20    was supposed to last?                                  12:42

21         A.   I can positively say I am sure I did but I do 12:42

22    not have a specific memory of that.                    12:42

23         Q.   Are you aware of something called a lighting 12:42

24    facts box?                                             12:42

25         A.   Yeah.  Oh, it talks about lumens, stuff like 12:42
```

| | | |
|---|---|---|
| 1 | that. | 12:42 |
| 2 | Q.   How long the bulb lasts and things like that? | 12:42 |
| 3 | A.   I don't -- I just guess that is what you are | 12:42 |
| 4 | talking about.  I don't really know the term, I am not | 12:42 |
| 5 | familiar with the term. | 12:42 |
| 6 | Q.   But every LED bulb has to have a lighting | 12:42 |
| 7 | facts box on it.  Do you remember looking at the | 12:42 |
| 8 | information in that box and comparing one product to | 12:43 |
| 9 | the other based upon what was in that box? | 12:43 |
| 10 | A.   I don't have a specific recall of that, no. | 12:43 |
| 11 | Q.   Oh, the 100-watt bulbs you were buying, were | 12:43 |
| 12 | you looking for soft white or daylight? | 12:43 |
| 13 | A.   Didn't really care. | 12:43 |
| 14 | Q.   You didn't care? | 12:43 |
| 15 | A.   Yeah.  I am searching my memory.  I think I | 12:43 |
| 16 | would have wanted daylight but I don't really think it | 12:43 |
| 17 | was that important to me. | 12:43 |
| 18 | Q.   When you compared the bulbs did you compare | 12:43 |
| 19 | the price? | 12:43 |
| 20 | A.   Sure. | 12:43 |
| 21 | Q.   You said you -- | 12:43 |
| 22 | Do you remember you looked at how much energy | 12:43 |
| 23 | the bulbs would use? | 12:44 |
| 24 | A.   I don't have -- | 12:44 |
| 25 | MR. WOODS:  Objection.  Ambiguous.  You can | 12:44 |

102

Jeffry L. Young                                                    September 18, 2018

| | | |
|---|---|---|
| 1 | answer. | 12:44 |
| 2 | THE WITNESS:  I don't have a specific | 12:44 |
| 3 | recollection of that at all.  I know I was just, in | 12:44 |
| 4 | general, comparing the various aspects of the bulbs | 12:44 |
| 5 | and energy consumption was something that was on my | 12:44 |
| 6 | mind. | 12:44 |
| 7 | I don't know that that would have been a | 12:44 |
| 8 | deciding factor.  I think they are all pretty close. | 12:44 |
| 9 | MR. RICHTER:  Q.  Was there a deciding | 12:44 |
| 10 | factor? | 12:44 |
| 11 | A.  I don't recall.  Something made me decide, | 12:44 |
| 12 | obviously, but what that exact thing was I don't | 12:44 |
| 13 | remember. | 12:44 |
| 14 | Q.  Do you recall that the CREE bulbs were better | 12:44 |
| 15 | in some areas and the competing bulbs were better in | 12:44 |
| 16 | some areas, things like that? | 12:44 |
| 17 | A.  No specific recollection at all. | 12:44 |
| 18 | Q.  You don't recall what it was that caused you | 12:44 |
| 19 | to buy the CREE bulb versus Sylvania, Philips, Feit, | 12:44 |
| 20 | anything else? | 12:45 |
| 21 | A.  Not specifically. | 12:45 |
| 22 | Q.  Before you bought the bulbs you had an | 12:45 |
| 23 | understanding there was a difference between an LED | 12:45 |
| 24 | bulb and an incandescent bulb, right? | 12:45 |
| 25 | A.  A huge difference. | 12:45 |

103

Jeffry L. Young                                          September 18, 2018

```
1    attempted to blow up on the document in front of you,      12:49

2    all right?                                                 12:49

3           So what I want you to do is look at the             12:49

4    document in front of you, and this is a package for a      12:49

5    100-watt bulb.                                             12:49

6           And I will represent to you this was the           12:50

7    packaging in use in March of 2015.                        12:50

8           MR. WOODS:  I am going to just have a               12:50

9    standing objection that the document assumes facts not     12:50

10   in evidence.                                               12:50

11          MR. RICHTER:  Q.  Sure.  Now, why don't you         12:50

12   tell me, is this the package that you saw when you         12:50

13   bought the three CREE bulbs?                               12:50

14       A.   No recollection.                                 12:50

15       Q.   You don't know?                                  12:50

16       A.   No.  I don't.                                    12:50

17       Q.   All right.  Let's look at some specific          12:50

18   things on this and see if it helps you remember.          12:50

19          Do you see this box here, this white box that      12:50

20   says lighting facts per bulb?                             12:50

21       A.   Yep.                                             12:50

22       Q.   Do you remember looking at that?               12:50

23       A.   I do not.                                        12:50

24       Q.   Do you remember seeing a similar box on the     12:50

25   other bulbs that you looked at at the time you were       12:50
```

106

Jeffry L. Young                                          September 18, 2018

| | | |
|---|---|---|
| 1 | comparing to the CREE bulb? | 12:50 |
| 2 | A.   I don't remember anything specifically about | 12:50 |
| 3 | purchasing those bulbs so I don't remember. | 12:51 |
| 4 | Q.   Do you remember reading something on the | 12:51 |
| 5 | label that said there was a ten-year warranty? | 12:51 |
| 6 | A.   It looks extremely familiar; but, again, I | 12:51 |
| 7 | don't remember specifics of what -- of being, even in | 12:51 |
| 8 | the store or what store; so, no, I can't remember | 12:51 |
| 9 | that, specifically. | 12:51 |
| 10 | Q.   Do you remember reading something that said: | 12:51 |
| 11 | 82 percent less energy consumption? | 12:51 |
| 12 | A.   No. | 12:51 |
| 13 | Q.   Do you remember something that said:  $226 of | 12:51 |
| 14 | lifetime energy savings? | 12:51 |
| 15 | A.   No. | 12:51 |
| 16 | Q.   Do you have an understanding this 82 percent | 12:51 |
| 17 | energy consumption, do you know what that means? | 12:51 |
| 18 | A.   Very much so. | 12:51 |
| 19 | MR. WOODS:  Objection, it calls for improper | 12:51 |
| 20 | opinion.  You can answer. | 12:51 |
| 21 | THE WITNESS:  That means you can use | 12:51 |
| 22 | 82 percent less energy to get the same amount of | 12:51 |
| 23 | light. | 12:51 |
| 24 | MR. RICHTER:  Q.  Right.  So what it means is | 12:51 |
| 25 | that the CREE bulb only uses 18 watts and it is a | 12:51 |

107

Jeffry L. Young                                                      September 18, 2018

1    100-watt replacement, right?                          12:52

2              MR. WOODS:  Objection, it calls for improper    12:52

3    opinion, also assumes facts not in evidence; you can    12:52

4    answer.                                               12:52

5              THE WITNESS:  Yeah, that 18 watts right here    12:52

6    is really impressive.                                 12:52

7              MR. RICHTER:  Q.  So that is 82 percent less    12:52

8    than a hundred, right?                                12:52

9        A.    Yeah.                                        12:52

10       Q.    Pretty simple math.                          12:52

11       A.    Yeah.                                        12:52

12             MR. WOODS:  The same objections.             12:52

13             MR. RICHTER:  Q.  Did you read, do you       12:52

14   remember looking to see if it was dimmable?           12:52

15       A.    Not a specific recollection but I absolutely    12:52

16   would have.  I wouldn't have bought it if it wasn't.    12:52

17       Q.    Do you remember considering the brightness,    12:52

18   the lumens?                                           12:52

19       A.    Again, no recollection.                      12:52

20       Q.    Did you consider that because it is LED there    12:52

21   is no toxic mercury and it is good for the            12:52

22   environment?                                          12:52

23       A.    That is news to me right now.                12:52

24       Q.    So you didn't see, recall seeing that?       12:52

25       A.    I don't recall seeing any of it -- or that.    12:52

108

Jeffry L. Young                                                 September 18, 2018

```
 1   Inc. consumer warranty, and it gives an address in      12:54

 2   Durham, North Carolina.                                  12:54

 3           It also gives a phone number.  Do you            12:54

 4   remember reading that?                                   12:54

 5       A.   I do not.                                       12:54

 6       Q.   But this limited warranty would have been       12:54

 7   something that you would have read?                      12:54

 8       A.   I am pretty sure I would have.                  12:54

 9       Q.   Let's just look at the last page.  It is        12:54

10   just -- do you remember seeing a picture like that?      12:54

11       A.   No recollection.                                12:54

12       Q.   So is it a fair statement to say that as you    12:54

13   sit here today you really don't remember what you read   12:54

14   on the package that you -- that was on the bulb that      12:54

15   you purchased?                                           12:54

16           MR. WOODS:  Objection, mischaracterizes the      12:54

17   testimony.  You can answer.                              12:54

18           THE WITNESS:  That is fair to say.               12:54

19           MR. RICHTER:  Q.  Oh, the other LED bulbs        12:55

20   that you were looking at, they were dimmable, too, I     12:55

21   assume, right?                                           12:55

22       A.   Yes.                                            12:55

23       Q.   Thank you.  There is one more thing I wanted    12:55

24   to ask.  Sorry, let me scroll around here.               12:55

25           As you sit here today do you know what that      12:56
```

110

```
 1            MR. RICHTER:  I am going to -- I want to      01:03
 2   identify it for the record, but we need to get the    01:03
 3   volume up.  Hold on a second.  Let me just --         01:03
 4            (Discussion off the record).                 01:03
 5            MR. WOODS:  Are you going to just identify it 01:03
 6   for the record?                                       01:03
 7            MR. RICHTER:  Yeah.  I didn't realize it      01:03
 8   would start playing right away.  All right.           01:03
 9            So this first ad is called, for the record,  01:03
10   it is called Buck.                                    01:03
11            It is a CREE television ad from iSpot.tv      01:03
12   which covers all old adds on TV.  It is called Buck.  01:03
13            So we are going to --                        01:04
14            MR. WOODS:  I will interpose a standing       01:04
15   objection as to all of these.  They lack foundation.  01:04
16            MR. RICHTER:  Not really an objection at      01:04
17   deposition, but that is fine.                         01:04
18            (Whereupon, an ad was played).               01:04
19            MR. RICHTER:  Q.  Do you remember seeing      01:04
20   that?                                                 01:04
21       A.   The logo looked familiar, but the actor did  01:04
22   not.                                                  01:04
23       Q.   That actor did not look familiar to you?     01:04
24       A.   No, but I seen -- well, no.                  01:04
25       Q.   Do you remember ever seeing him in any       01:04
```

115

| | | |
|---|---|---|
| 1 | television ad for a bulb? | 01:04 |
| 2 | A.   Yeah.  I got -- there was one on the internet | 01:04 |
| 3 | that I just saw yesterday but not prior to. | 01:04 |
| 4 | Q.   Prior to purchasing, do you ever remember -- | 01:04 |
| 5 | A.   No, no, prior to purchasing, no. | 01:05 |
| 6 | Q.   You don't ever remember seeing an ad with | 01:05 |
| 7 | that actor? | 01:05 |
| 8 | A.   No. | 01:05 |
| 9 | Q.   And again, I just want to make sure -- | 01:05 |
| 10 | You don't remember or you had never seen that | 01:05 |
| 11 | guy before in an ad? | 01:05 |
| 12 | A.   I just don't remember -- it is unlikely. | 01:05 |
| 13 | Q.   You don't remember but it is unlikely? | 01:05 |
| 14 | A.   That is the best I can do for you. | 01:05 |
| 15 | (Whereupon, another ad was played). | 01:05 |
| 16 | MR. RICHTER:  Q.  Again, do you remember | 01:05 |
| 17 | seeing that ad before you purchased the bulbs? | 01:05 |
| 18 | A.   I have no recollection of it. | 01:06 |
| 19 | Q.   Again, it is the same actor.  You just don't | 01:06 |
| 20 | remember seeing that guy? | 01:06 |
| 21 | A.   I don't remember, yeah. | 01:06 |
| 22 | Q.   Let me show you one more. | 01:06 |
| 23 | (Whereupon, another ad was played). | 01:06 |
| 24 | MR. RICHTER:  Q.  All right.  So for the | 01:07 |
| 25 | record, that was an ad called Eulogy, and it is the | 01:07 |

116

| | | |
|---|---|---|
| 1 | same actor.  Do you remember seeing that ad? | 01:07 |
| 2 | A.   No. | 01:07 |
| 3 | MR. WOODS:  Assumes facts. | 01:07 |
| 4 | THE WITNESS:  Sorry. | 01:07 |
| 5 | MR. WOODS:  That is all right. | 01:07 |
| 6 | THE WITNESS:  I do not remember seeing that. | 01:07 |
| 7 | MR. RICHTER:  Q.  And again, you don't | 01:07 |
| 8 | remember seeing that actor? | 01:07 |
| 9 | A.   And I have no recollection of seeing him or | 01:07 |
| 10 | that ad. | 01:07 |
| 11 | Q.   I want to make sure, again, the record's | 01:07 |
| 12 | clear.  You don't have a recollection or you didn't | 01:07 |
| 13 | see it? | 01:07 |
| 14 | A.   I will go so far as unlikely. | 01:07 |
| 15 | Q.   That you saw it? | 01:07 |
| 16 | A.   Yeah.  That I never saw it.  Yeah. | 01:07 |
| 17 | Q.   Well, I want to make sure because of that | 01:07 |
| 18 | last statement:  It is unlikely you ever saw it? | 01:07 |
| 19 | A.   Yeah.  We are on the same page.  I don't know | 01:07 |
| 20 | if we are getting it right.  But yeah. | 01:07 |
| 21 | Q.   But you said it is unlikely I never saw it? | 01:08 |
| 22 | A.   Okay.  I don't remember what I said. | 01:08 |
| 23 | Q.   What you meant to say is it is unlikely you | 01:08 |
| 24 | ever saw it, right? | 01:08 |
| 25 | A.   I probably have never seen that.  I got | 01:08 |

117

| | | |
|---|---|---|
| 1 | turned around on that one, man. | 01:08 |
| 2 | Q.   That is all right.  That is why we clear it | 01:08 |
| 3 | up.  This is a quick follow-up. | 01:08 |
| 4 | When you are comparing these light bulbs, | 01:08 |
| 5 | what did you compare, if you weren't looking at that | 01:08 |
| 6 | lighting facts box? | 01:08 |
| 7 | A.   Oh, I don't know; whatever information was | 01:08 |
| 8 | available. | 01:08 |
| 9 | Q.   On the package? | 01:08 |
| 10 | A.   Yes, and I might have been looking at the | 01:08 |
| 11 | lighting facts box.  I don't recall whether I was or | 01:08 |
| 12 | not. | 01:08 |
| 13 | Q.   All right. | 01:08 |
| 14 | MR. WOODS:  Is this a good time? | 01:09 |
| 15 | MR. RICHTER:  Sure.  I am winding -- I | 01:09 |
| 16 | probably got less than an hour, so let's take a break. | 01:09 |
| 17 | MR. WOODS:  Yeah. | 01:09 |
| 18 | THE VIDEO OPERATOR:  The time is 1:10 p.m., | 01:09 |
| 19 | we are off the record. | 01:09 |
| 20 | (Short recess). | 01:09 |
| 21 | MR. RICHTER:  Let's go back on the record, | 01:16 |
| 22 | please. | 01:16 |
| 23 | THE VIDEO OPERATOR:  The time is 1:18 p.m. | 01:17 |
| 24 | We are back on the record. | 01:17 |
| 25 | MR. RICHTER:  Q.  Mr. Young, you realize, | 01:17 |

118

Jeffry L. Young                                                September 18, 2018

```
 1    sir, you are still under oath?                        01:17

 2         A.    I do.                                      01:17

 3         Q.    Thank you.  Just one point of clarification. 01:17

 4    You said that you may have seen banner ads before you 01:17

 5    bought the three bulbs in question, right?            01:17

 6         A.    Yes.                                       01:17

 7         Q.    You don't recall what they were or what they 01:17

 8    said, right?                                          01:17

 9         A.    Correct.                                   01:17

10         Q.    But you didn't visit the CREE web site before 01:17

11    you bought the bulbs, right?                          01:17

12         A.    I don't think so, no.                      01:17

13         Q.    Now, when you testified earlier that you   01:17

14    eventually got, apparently got to the CREE web site   01:17

15    and you got Exhibit 2 in response to information you   01:18

16    provided on the web site, right?                      01:18

17         A.    Yeah.  Apparently is the key word there.   01:18

18         Q.    You don't remember what information you had 01:18

19    provided to CREE on the web site, though, do you?     01:18

20         A.    No.  It says I said something about a bulb 01:18

21    being bad.                                            01:18

22         Q.    Yeah.  I am sorry, here it is.  It says    01:18

23    subject:  Consumer bulb inquiry.                      01:18

24               I have a 100-watt LED bulb go bad under    01:18

25    normal use.                                           01:18
```

119

```
 1        A.   That sounds about right.  I don't recall       01:18

 2   doing it, but it is right there.                         01:18

 3        Q.   When you type E-mails do you typically put      01:18

 4   something in the subject line?                           01:18

 5        A.   Yeah, typically.                               01:18

 6        Q.   And so that came from you:  I have a 100 watt  01:18

 7   LED bulb go bad under normal use?                        01:19

 8        A.   I can only assume.  I have no recollection of  01:19

 9   doing it.                                                01:19

10        Q.   Do you recall in the information you provided  01:19

11   saying:  I have a 100-watt LED bulb go bad under         01:19

12   normal use in a little over a year?                      01:19

13        A.   No.  No specific recollection.                 01:19

14        Q.   Did these bulbs go bad within a matter of      01:19

15   months or was it a year?                                 01:19

16             MR. WOODS:  Objection.  Asked and answered,    01:19

17   objection to form.  Go ahead.                            01:19

18             THE WITNESS:  I would say it within a year.    01:19

19   It was a while.  They lasted quite a while.  I really    01:19

20   don't know how long.                                     01:19

21             MR. RICHTER:  Q.  That is why I asked,         01:19

22   because we have records of your E-mail coming in, and    01:19

23   in it it says a little over a year.                      01:19

24        A.   Okay.                                          01:19

25        Q.   And so I am asking you, I am not going to      01:19
```

                                                                120

```
 1   mark this or show it to you, I am asking you:  Does     01:19

 2   that help you remember?                                 01:19

 3           MR. WOODS:  If you are asking him questions      01:19

 4   about a document, he should see it.                     01:20

 5           MR. RICHTER:  No, you don't.  He doesn't have    01:20

 6   to see it.                                              01:20

 7           MR. RICHTER:  Q.  But does that help you         01:20

 8   remember?                                               01:20

 9       A.  Not really, I have a general -- sorry.          01:20

10   Should I answer?                                        01:20

11           MR. WOODS:  That is fine, I mean --             01:20

12           THE WITNESS:  I have a general idea of the       01:20

13   time, a very general, of seeing a document one way or   01:20

14   another I don't think has changed much.                 01:20

15           MR. RICHTER:  Q.  And your very general idea     01:20

16   was a year or so?                                       01:20

17       A.  Yeah, I would say.                              01:20

18       Q.  That is fine.                                   01:20

19           I will ask you a couple questions about this    01:20

20   lawsuit, Mr. Young.                                     01:20

21           Do you know what a class action is?             01:20

22       A.  Yes, more or less.                              01:20

23       Q.  What is that to you?  What does it mean?        01:20

24       A.  To me it is when a law firm represents a        01:20

25   bunch of people, let's say something went wrong, it     01:20
```

                                                                 121

| | | |
|---|---|---|
| 1 | the bulb and we will keep it in our office and if for | 01:29 |
| 2 | some reason somebody wants to inspect it, if you want | 01:29 |
| 3 | to serve a -- ask to see it or serve a request, we can | 01:29 |
| 4 | certainly meet and confer with you with regard to | 01:29 |
| 5 | that. | 01:29 |
| 6 | MR. RICHTER:  I wanted to make sure it didn't | 01:29 |
| 7 | go back to the metal footlocker or cabinet. | 01:29 |
| 8 | THE WITNESS:  I don't want it. | 01:29 |
| 9 | MR. WOODS:  I will take care of it. | 01:29 |
| 10 | MR. RICHTER:  Other than that I have nothing | 01:30 |
| 11 | further. | 01:30 |
| 12 | | 01:30 |
| 13 | EXAMINATION BY | 01:30 |
| 14 | MR. WOODS:  Q.  I just want to clear up a | 01:30 |
| 15 | couple of things.  You testified earlier based on, | 01:30 |
| 16 | please correct me if I am wrong, based upon the | 01:30 |
| 17 | writing on this particular bulb, that you purchased it | 01:30 |
| 18 | at Home Depot and not Walmart; is that correct? | 01:30 |
| 19 | A.   Correct. | 01:30 |
| 20 | Q.   Do you recall where you bought the other two | 01:30 |
| 21 | bulbs? | 01:30 |
| 22 | A.   No.  I -- those could have been Walmart.  I | 01:30 |
| 23 | just don't remember. | 01:30 |
| 24 | Q.   It is possible that you could have bought the | 01:30 |
| 25 | other two bulbs at Walmart? | 01:30 |

130

Jeffry L. Young                                                     September 18, 2018

1   STATE OF CALIFORNIA         )

2                               )    ss.

3   OAKLAND DIVISION            )

4

5

6                    I hereby certify that the witness in

7   the foregoing deposition named

8                            JEFF YOUNG

9   was by me duly sworn to testify the truth, the whole

10  truth and nothing but the truth in the within-entitled

11  cause; that said deposition was taken at the time and

12  place therein named; that the testimony of the said

13  witness was reported by me, a duly Certified Shorthand

14  Reporter and disinterested person, and was thereafter

15  transcribed into typewriting under my direction.

16                    I further certify that I am not of

17  counsel or attorney for either or any of the parties

18  to said deposition, nor in any way interested in the

19  outcome of the cause named in said caption.

20

21                             WITNESS WHEREOF, I have
                               hereunto subscribed my
22                             hand this 24th day of
                               September, 2018
23

24                    _____
                      DENNIS M. SOUZA, CSR No. 3893
25

                                                                    135

# **EXHIBIT B**

Jeffry L. Young                                           September 18, 2018

1

2          I, the undersigned, declare under penalty of

3    perjury that I have read the foregoing transcript and

4    I have made any corrections, additions, or deletions

5    that I was desirous of making; that the foregoing is a

6    true and correct transcript of my testimony contained

7    therein.

8

9          Dated   10/23/18

10

11    _____
      JEFF YOUNG
12

13

14

15

16

17

18

19

20

21

22

23

24

25

133

Jeffry L. Young                                                    September 18, 2018

1                    WITNESS' CHANGES OR CORRECTIONS

2        NOTE:   If you are adding to your testimony, print the
         exact words you want to add.  If you are deleting from
3        your testimony, print the exact words you want to
         delete.  Specify with "Add" or "Delete" and sign
4        below.

5

6                Deposition of:   JEFF YOUNG

7                Case Title:  Young vs. Cree, Inc.

8                Date of Deposition:  September 18, 2018

9

10       I,  *Jeff Young*, have the following

11       corrections to make to my deposition.

12       PAGE      LINE      CHANGE, ADD, DELETE

13       20        23        "4/215" should be "4/2015"

14       35        12        add: And I would expect it to last that long

15       51        15        change to: Yes, I gave her my number

16       53        7         change to: Yes, I gave her my number

17       58        20        change to: Yes, I did.

18       59        12        change to: Yes, It was.

19       59        25        change to: Yes.

20       64        8         change to: Yes.

21       66        19        change to: Yes

22       68        7         change to: I don't remember, It could have
                             Been
23       74        2         Add: I had also read it Before yesterday

24       80        21        change to: Yes

25       81        21        change to: Yes

                                                                        134

Jeffry L. Young                                          September 18, 2018

```
 1              WITNESS' CHANGES OR CORRECTIONS

 2    NOTE:   If you are adding to your testimony, print the
      exact words you want to add.  If you are deleting from
 3    your testimony, print the exact words you want to
      delete.  Specify with "Add" or "Delete" and sign
 4    below.

 5

 6         Deposition of:   JEFF YOUNG

 7         Case Title:  Young vs. Cree, Inc.

 8         Date of Deposition:  September 18, 2018

 9

10    I,  _Jeff  Young_ , have the following

11    corrections to make to my deposition.

12    PAGE     LINE     CHANGE, ADD, DELETE

13     88       25      change to: Yes.

14     89        1      change to: Yes.

15    101       10      change to: Not other than what I've already
16     7                testified to.

17    101       18      change to: Yes

18    103       11      change to: Yes, I recall that I decided
19                      to buy Cree because the length
20                      of the product life, warranty, and
21                      cost savings.

22    107        6      change to: Yes, I remember generally

23    107       12      change to: Yes, I remember generally

24    107       15      change to: Yes, I remember generally

25    110        5      add: But I would have read it
```

                                                              134

Jeffry L. Young                                                September 18, 2018

```
 1              WITNESS' CHANGES OR CORRECTIONS

 2    NOTE:   If you are adding to your testimony, print the
       exact words you want to add.  If you are deleting from
 3    your testimony, print the exact words you want to
       delete.  Specify with "Add" or "Delete" and sign
 4    below.

 5

 6         Deposition of:    JEFF YOUNG

 7         Case Title:  Young vs. Cree, Inc.

 8         Date of Deposition:  September 18, 2018

 9

10    I,  ___Jeff Young___, have the following

11    corrections to make to my deposition.

12    PAGE     LINE     CHANGE, ADD, DELETE

13     110      18      Change to: I remember things in

14     ___      ___         general as I have previously

15                          testified

16     117      17      change to: I don't recall

17     123      12      change to: Yes.

18     123      25      Change to: Yes.

19     124       5      change to: Yes.

20     126      15      change to: Yes.

21     127      15      change to: Yes.

22     ___      ___

23     ___      ___

24     ___      ___

25     ___      ___
```

                                                              134

Michael A. McShane (CA #127944)
mmcshane@audetlaw.com
S. Clinton Woods (CA #246054)
cwoods@audetlaw.com
Ling Y. Kuang (CA #296873)
lkuang@audetlaw.com
AUDET & PARTNERS, LLP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102-3275
Telephone:   (415) 568-2555
Facsimile:   (415) 568-2556

*Attorneys for Plaintiff Jeff Young, on behalf of himself and all others similarly situated*

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JEFF YOUNG, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Cree, Inc.,<br><br>Defendant. | Case No:       4:17-cv-06252-YGR<br><br>**CERTIFICATE OF SERVICE OF ERRATA TO DEPOSITION OF JEFF YOUNG'S ON SEPTEMBER 18, 2018**<br><br>Complaint Filed: October 27, 2017<br>FAC Filed: April 30, 2018<br>Trial Date: February 3, 2020 |

**CERTIFICATE OF SERVICE**

I, Harold Darling, declare that I am over the age of eighteen (18) and not a party to the entitled action. My business address is Audet & Partners, LLP, which is located at 711 Van Ness Avenue, Suite 500, San Francisco, California  94102-3229, hdarling@audetlaw.com, and on October 25, 2018, I caused to be served the following:

**ERRATA TO DEPOSITION OF JEFF YOUNG'S ON SEPTEMBER 18, 2018**

was delivered, in accordance with Federal Rules of Civil Procedure Rule 5, via electronic mail,  to the parties and their respective attorneys of record as indicated below:

Andrew John Demko
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East
Suite 2600
Los Angeles, CA 90067−3012
310−788−4462 / Fax: 310−788−4471
Email: andrew.demko@kattenlaw.com

*Attorney for Cree, Inc.*

Charles Allan DeVore
KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe St.
Chicago, IL 60661
312−902−5478
Email: charles.devore@kattenlaw.com

*Attorney for Cree, Inc.*

Rebecca K. Lindahl
KATTEN MUCHIN ROSENMAN LLP
550 S Tryon Street, Suite 2900
Charlotte, NC 28202
704−344−3141/ Fax: 704−344−2277
Email: rebecca.lindahl@kattenlaw.com

*Attorney for Cree, Inc.*

Stuart Matthew Richter
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067−3012
310−788−4400
Fax: 310−788−4471
Email: stuart.richter@kattenlaw.com

*Attorney for Cree, Inc.*

Melissa S. Weiner
mweiner@pswlaw.com
PEARSON SIMON & WARSHAW, LLP
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402

*Attorney for Plaintiff Jeff Young*

- 1 -

Charles Schaffer
cshaffer@lfsblaw.com
LEVIN, SEDRAN & BERMAN, LLP
510 Walnut Street
Suite 500
Philadelphia, PA 19106-1500
Phone: 215-592-1500 / Fax: 215-592-4663

*Attorney for Plaintiff Jeff Young*

Jason P. Sultzer
sultzerj@thesultzerlawgroup.com
Adam R. Gonnelli
gonnellia@thesultzerlawgroup.com
THE SULTZER LAW GROUP, PC
14 Wall Street, 20th Floor
New York, NY 10005

*Attorneys for Plaintiff Jeff Young*

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

Date: <u>October 25, 2018</u>   Signature: _____

Harold Darling

# EXHIBIT C









CREE_00032362

## LIMITED WARRANTY

If this bulb does not operate for 10 years (based on 6 hours per day / 7 days per week of normal consumer use) from date of purchase when used as directed, return the bulb with proof of purchase, register receipt and your name and address to Cree, Inc. (Consumer Warranty), 4600 Silicon Drive, Durham, NC 27703 USA. Cree will send you a replacement or at Cree's option refund the original purchase price. For warranty or other questions please call 1-866-924-3645.

REPLACEMENT OR REFUND IS CREE'S SOLE WARRANTY OBLIGATION. INCIDENTAL AND CONSEQUENTIAL DAMAGES ARE EXCLUDED.

Some states do not allow the exclusion or limitation of incidental or consequential damages, so the above limitation or exclusion may not apply to you. This warranty gives you specific legal rights and you may also have other rights which vary from state to state.

# **<u>EXHIBIT D</u>**

DEFENDANT'S
EXHIBIT
5
9-18-18
Young
PENGAD 800-631-6989




ENERGY STAR

Dimmable

## CREE

soft white **LED 100**W

replacement
**uses only 18 Watts**

| Brightness | Estimated Energy Cost |
|---|---|
| **1600** lumens | **$2.17** per year |

---

## CREE

LEARN MORE AT
creebulb.com



OPEN
FOR MORE
INFORMATION

**10 YEAR WARRANTY**
Garantía de 10 años

**82% LESS ENERGY CONSUMPTION**

**$226 LIFETIME ENERGY SAVINGS**

- **DIMMABLE WITH MOST DIMMERS**
  Visit www.cree.com/consumer/dimmers
  for a list of compatible dimmers.
  Intensidad graduable con atenuadores
- **INSTANT FULL BRIGHTNESS**
  Iluminación instantánea
  con brillo completo
- **OMNIDIRECTIONAL LIGHT**
  Distribución de luz uniforme
- **NO TOXIC MERCURY**
  Sin mercurio tóxico

* At $.11 per kWh, when compared to 100W incandescent. 25 kWh/year lifetime.

Manufactured by Cree, Inc.
Cree, Inc. 4600 Silicon Drive,
Durham, NC 27703 USA
Phone 919-313-5300
www.cree.com
Patent: www.cree.com/patents

### Lighting Facts Per bulb

| | |
|---|---|
| **Brightness** | **1600** lumens |
| **Estimated Yearly Energy Cost** | **$2.17** |
| Based on 3 hrs/day, 11¢/kWh Cost depends on rates and use | |
| **Life** Based on 3 hrs/day | **22.8** years |
| **Light Appearance** Warm | 2700 K |
| **Energy Used** | **18** watts |



8 00048 02913 6

c (UL) us LISTED

BA31-18QZ50MF-2DE26-1U/H0

PROOF OF PURCHASE

ASSEMBLED
IN USA





# CREE

**Cree LED Filament Tower™ Technology provides a compact, optically centered light source in real glass – so it looks and lights just like a traditional incandescent bulb.**

**LIMITED WARRANTY**

This bulb is not specified for 24 hours (based on 6 hours per day / 7 days per week) continuous operation. This limited warranty will not be extended. Cree reserves the right to inspect product, and at Cree's and at its sole option, replace bulb with product of similar features, regular product and product line are offered by Cree Inc. (Consumer Warranty). Valid only in United States. If you have questions about the Cree product or would like information regarding your original purchase price, for warranty or other questions please call 1-800-680-5064.

REPLACEMENT OR REFUND IS CREE'S SOLE WARRANTY OBLIGATION. INCIDENTAL AND CONSEQUENTIAL DAMAGES ARE EXCLUDED.

Some states do not allow the exclusion or limitation of incidental or consequential damages, so the above limitation or exclusion may not apply to you. This warranty gives you specific legal rights and you may also have other rights which vary from state to state.

**CAUTIONS & WARNINGS**

• Not intended for use with emergency exit fixtures or emergency lighting.
• Risk of electric shock or burns. Turn power off at switch and allow to cool before replacement or handling – do not handle when glass or base are hot. Bulb may become warm during use but is not a fire hazard.
• Do not use in totally enclosed luminaires. Enclosed fixtures may reduce bulb's life.
• Do not use in emergency lighting.
• Do not use on dimmer circuits.
• Suitable for use in most dry environments between -20°C and +40°C (-4°F and +105°F).
• Suitable for damp locations, but not in wet environments (directly in weather or water).
• This lamp complies with Part 15 of the FCC rules. Operation is subject to the following two conditions: (1) this device may not cause harmful interference, and (2) this device must accept any interference received, including interference that may cause undesired operation.

LPC001247

· 2700K · 1600 LUMENS ·

**CREE◆**

18W / 120 VAC / 60Hz / 150mA

**THIS CREE° LED
BULB DELIVERS A
BEAUTIFUL, WARM
INCANDESCENT-LIKE
LIGHT FOR THE
LIVING SPACES IN
YOUR HOME.**

Cree invented the lighting-class LED.
Cree has been the innovation inside the
world's leading LED lighting fixtures for years.
Now you can get proven Cree technology
for your home.

**TEAR
HERE**
TO OPEN

